**ORAL ARGUMENT HELD MARCH 15, 2024**

# United States Court of Appeals
# for the District of Columbia Circuit

## No. 23-1064

(Consolidated with 23-1074, 23-1077, 23-1129, 23-1130, 23-1137)

NEW JERSEY CONSERVATION FOUNDATION, *et al.*,

*Petitioners,*

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

*On Petition for Review of Orders of the Federal Energy Regulatory Commission*

## BRIEF OF THE PENNSYLVANIA CHAMBER OF BUSINESS AND INDUSTRY AS *AMICUS CURIAE* IN SUPPORT OF INTERVENOR TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC'S PETITION FOR PANEL REHEARING AND REHEARING *EN BANC*

JASON R. PARISH
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street NW, Suite 300
Washington, DC 20006
(202) 452-7900
jason.parish@bipc.com

*Counsel for Amicus Curiae
  Pennsylvania Chamber of
  Business and Industry*

September 20, 2024

 (800) 4-APPEAL • (332960)

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**Parties and *Amici*.**  Petitioners are New Jersey Conservation Foundation, New Jersey League of Conservation Voters, Aquashicola Pohopoco Watershed Conservancy, and Catherine Folio.  Respondent is the Federal Energy Regulatory Commission.  New Jersey Division of Rate Counsel intervened in support of Petitioners and Transcontinental Gas Pipe Line Company, LLC and Exelon Corporation intervened in support of Respondent.  The Institute for Policy Integrity at New York University School of Law, the State of New Jersey, and the State of Washington appeared as *amici* in support of Petitioners.  The American Gas Association, the American Petroleum Institute, and the Interstate Natural Gas Association of America appeared as *amici* in support of Respondent.  Intervenor Transcontinental Gas Pipe Line Company, LLC has stated that it anticipates additional *amici* in support of its Petition for Panel Rehearing and Rehearing *En Banc* (the "Petition").

**Rulings Under Review.**  References to the rulings at issue appear in the Petition.

**Related Cases.**  References to related cases, if any, appear in the Petition.

Dated:  September 20, 2024

/s/ Jason R. Parish

Jason R. Parish
BUCHANAN INGERSOLL & ROONEY P.C.
1700 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 452-7900
Email:  jason.parish@bipc.com

*Counsel for Amicus Curiae*
*Pennsylvania Chamber of Business and*
*Industry*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, the Pennsylvania Chamber of Business and Industry respectfully states as follows:

The Pennsylvania Chamber of Business and Industry (the "Pennsylvania Chamber") is a non-profit, tax-exempt organization incorporated in the Commonwealth of Pennsylvania.

The Pennsylvania Chamber is the largest, broad-based business association in Pennsylvania, representing nearly 10,000 businesses.  The Pennsylvania Chamber has no parent companies, subsidiaries, or affiliates that have issued publicly traded stock.  Certain members of the Pennsylvania Chamber are corporations with publicly traded stock.


Dated:  September 20, 2024

/s/ Jason R. Parish

Jason R. Parish
BUCHANAN INGERSOLL & ROONEY P.C.
1700 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 452-7900
Email:  jason.parish@bipc.com

*Counsel for Amicus Curiae*
*Pennsylvania Chamber of Business and*
*Industry*

iii

## STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING

Pursuant to Federal Rule of Appellate Procedure 29(b)(2), the Pennsylvania Chamber of Business and Industry (the "Pennsylvania Chamber") states that this *amicus* brief is lodged with a Motion for Invitation to Participate as *Amicus Curiae* (the "Motion") pursuant to D.C. Circuit Rule 35(f). The Pennsylvania Chamber contacted counsel for all parties regarding its desire to proceed as *amicus curiae*. Respondent FERC and Intervenor Transcontinental Gas Pipe Line Company, LLC consented to the relief requested by the Motion. Intervenor Exelon Corporation expressed no objection to the relief requested by the Motion. Petitioners New Jersey Conservation Foundation, New Jersey League of Conservation Voters, Aquashicola Pohopoco Watershed Conservancy, and Catherine Folio did not respond to the Pennsylvania Chamber. Intervenor New Jersey Division of Rate Counsel does not consent to the relief requested by the Motion.

Pursuant to D.C. Circuit Rule 29(d), counsel for *amicus curiae* Pennsylvania Chamber certifies that a separate brief is necessary to provide the unique perspective of the Pennsylvania Chamber and the businesses it represents. The Pennsylvania Chamber is the largest broad-based business association in Pennsylvania with nearly 10,000 members who collectively employ more than half the Commonwealth's private-sector workforce. The Pennsylvania Chamber is well-qualified to provide the Court with important context on the matters at issue in this appeal, including the

significant and disruptive impacts of vacatur on Pennsylvania's economy, businesses, and residents, and this separate brief will assist the Court in resolving this appeal.

Dated:  September 20, 2024

/s/ Jason R. Parish

Jason R. Parish
BUCHANAN INGERSOLL & ROONEY P.C.
1700 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 452-7900
Email:  jason.parish@bipc.com

*Counsel for Amicus Curiae*
*Pennsylvania Chamber of Business and*
*Industry*

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

DISCLOSURE STATEMENT ................................................................ iii

STATEMENT REGARDING CONSENT TO FILE
    AND SEPARATE BRIEFING.......................................................iv

TABLE OF AUTHORITIES ................................................. vii

INTEREST OF AMICUS CURIAE ......................................................1

INTRODUCTION ..........................................................................2

ARGUMENT ...............................................................................2

    I.    Vacatur Will Have Significant, Disruptive Consequences in
    Pennsylvania..........................................................................2

        A.    Vacatur is not supported by precedent and the Panel
        did not consider the full range of disruptive
        consequences..................................................................2

        B.    Vacatur will have significant, disruptive consequences
        for Pennsylvania businesses and residents..................................4

            1.    Natural gas—and robust pipeline
            infrastructure—is extremely important to
            Pennsylvania's economy ...................................................4

            2.    The Project delivers additional pipeline
            infrastructure for Marcellus Shale producers ..................6

            3.    Vacatur will have disruptive near-term
            consequences for Marcellus Shale producers,
            direct purchasers, and end users ......................................8

            4.    Vacatur will have disruptive longer-term
            consequences for Pennsylvania's economy and
            environment .................................................................11

    CONCLUSION ....................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Black Oak Energy v. FERC*,
  725 F.3d 230 (D.C. Cir. 2013)................................................................2

*Healthy Gulf v. FERC*,
  107 F.4th 1033 (D.C. Cir. 2024) ...........................................................3

*XO Energy Ma, LP v. FERC*,
  77 F.4th 710 (D.C. Cir. 2023) ...............................................................3


**Statutes & Other Authorities:**

Fed. R. App. P. 29(c)(5)............................................................................1

FERC, "Approved Major Pipeline Projects (1997-Present)"
  (Nov. 20, 2023).......................................................................................6

FERC/NERC, "Inquiry into Bulk-Power System Operations
  During December 2022 Winter Storm Elliot" (Oct. 2023) ...................10

FTI Consulting, "Economic and Fiscal Impact of Pennsylvania
  Shale Gas Development" (Aug. 2023) .....................................................5

Marcellus Shale Coalition, "Industry … at a Glance" (July 2024) .........4

Marcellus Shale Coalition, "Pennsylvania's Impact Fee".......................5

NERA Economic Consulting, "Analysis of U.S. Natural Gas Market Price
  Impacts from Increasing Natural Gas Supply Accessibility for Different
  Natural Gas Demand Outlooks" (Apr. 2023)...........................................6

New York Times, "Big Energy Issue in Pennsylvania Is Low Natural
  Gas Prices.  Not Fracking." (Sept. 16, 2024) .........................................7

PA DEP, "25 Year Site Level Emission Inventory Report"....................12

PA DEP, "Comment/Response Document" ............................................11

PA DEP, "Pennsylvania Climate Action Plan" .....................................12

PECO, "Company Information" ...............................................................9

PJM Inside Lines, "PJM Capacity Auction Secures Electricity
   Supplies at Competitive Prices" (June 21, 2022).................................................10

PJM, "Map of PJM Territory Served" ....................................................................10

United States Energy Information Administration,
   "Pennsylvania State Energy Profile"....................................................................4

## INTEREST OF *AMICUS CURIAE*[1]

The Pennsylvania Chamber of Business and Industry (the "Pennsylvania Chamber") is the largest broad-based business association in Pennsylvania, representing nearly 10,000 businesses that employ more than half the Commonwealth's private-sector workforce.  The Pennsylvania Chamber's mission is to foster public policy that will expand private-sector job creation, promote an improved business climate, and enhance economic development for all Pennsylvanians.  The Pennsylvania Chamber's membership includes:

- Companies involved in the extraction, processing, and transportation of natural gas, as well as local distribution companies that deliver natural gas to end users (*e.g.*, residences, businesses, schools, hospitals);

- Manufacturers that use natural gas as a fuel source to manufacture products like paper, glass, bricks, ceramics, steel, and iron; and

- Manufacturers that use natural gas as raw material to manufacture products like medicines, cosmetics, fertilizers, textiles, and plastics.

In addition, the Pennsylvania Chamber's members and their employees depend on natural gas to heat and power their businesses and homes.

---

[1]  Pursuant to Federal Rule of Appellate Procedure 29(c)(5), *amicus curiae* states that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparing or submitting this brief, and no person other than *amicus curiae*, its members, or its counsel contributed money intended to fund preparing or submitting this brief.

## INTRODUCTION

The Petition for Panel Rehearing and Rehearing *En Banc* ("Petition") filed by Intervenor Transcontinental Gas Pipe Line Company, LLC ("Transco") details multiple reasons why the Panel erred in vacating and remanding the Federal Energy Regulatory Commission's ("FERC") orders granting a certificate of public convenience and necessity for Transco's Regional Energy Access Expansion (the "Project").  The Pennsylvania Chamber submits this *amicus* brief in support of Transco's Petition to draw attention to the significant, disruptive consequences of vacatur on Pennsylvania and the Pennsylvania Chamber's members, none of which appear to have been considered by the Panel in its July 30, 2024 Opinion (the "Opinion").  Vacatur has "the potential to result in catastrophic events" in Pennsylvania and beyond.

## ARGUMENT

### I.    Vacatur Will Have Significant, Disruptive Consequences in Pennsylvania

#### A.    Vacatur is not supported by precedent and the Panel did not consider the full range of disruptive consequences

To determine if challenged agency action warrants vacatur, this Court applies a two-part test:  "We must evaluate (1) 'the likelihood that 'deficiencies' in an order can be redressed on remand' and (2) 'the 'disruptive consequences' of vacatur.'"  Opinion at 30-31 (quoting *Black Oak Energy v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013)).  Even when the agency's errors are serious, this Court typically remands

without vacatur where the disruptive consequences of vacatur would be severe. *See*, *e.g.*, *Healthy Gulf v. FERC*, 107 F.4th 1033, 1047-48 (D.C. Cir. 2024); *XO Energy Ma, LP v. FERC*, 77 F.4th 710, 719 (D.C. Cir. 2023).

The Panel departed from this well-established test to impose a stricter and more unpredictable standard, ordering vacatur based on "potentially consequential deficiencies" even while suggesting these "potential" deficiencies could be addressed on remand. *See* Opinion at 31. To the extent the Panel evaluated disruptive consequences, it additionally erred by limiting its assessment to "disruption … to the pipeline's operations" (*id*. at 32) rather than the disruptive consequences of the affected pipeline not being operational. Indeed, it is unclear whether the Panel appreciated that its decision would not only remove more than 800,000 dekatherms per day ("Dth/d") of incremental capacity but also more than 1,200,000 Dth/d of *existing* capacity.

To be sure, vacatur will have numerous and cascading disruptive consequences for Pennsylvania businesses and residents—particularly the natural gas producers, direct purchasers, royalty holders, and end users that rely upon the Project's continued operation—and ultimately increases the threat of unplanned power generation outages jeopardizing grid reliability and risking catastrophe. As such, the Panel's decision warrants reconsideration.

### B.     Vacatur will have significant, disruptive consequences for Pennsylvania businesses and residents

#### 1.     *Natural gas—and robust pipeline infrastructure—is extremely important to Pennsylvania's economy*

Pennsylvania produces 19.1% of natural gas in the United States.[2]  It is the second-largest producer in the country after Texas, with total marketed production of 7.5 trillion cubic feet in 2022.[3]  Pennsylvania has more than 11,100 producing natural gas wells spread across 36 of Pennsylvania's 67 counties.[4]

Pennsylvania's natural gas production has more than tripled in the last twelve years due largely to development of the Marcellus Shale formation.[5]  The Marcellus Shale extends under three-fifths of Pennsylvania as well as parts of West Virginia, Ohio, New York, and other states.[6]  The Marcellus Shale has the largest estimated proven reserves of any U.S. natural gas field, with more than 106 trillion cubic feet in expected future production.[7]

---

[2]  United States Energy Information Administration, "Pennsylvania State Energy Profile," https://www.eia.gov/state/print.php?sid=PA.

[3]  *Id.*

[4]  Marcellus Shale Coalition, "Industry … at a Glance" (July 2024) at 3, https://marcelluscoalition.org/wp-content/uploads/2024/07/Industry-at-a-Glance-July-24.pdf.

[5]  *Supra* n.2.

[6]  *Supra* n.2.

[7]  *Supra* n.2.

Natural gas is very important to Pennsylvania's economy.  In addition to the energy cost savings realized by Pennsylvania business and residents[8], the natural gas industry in Pennsylvania supports more than 123,000 jobs and more than $41 billion in economic activity.[9]  In 2022, the natural gas industry generated $6.3 billion in royalties as well as $3.2 billion in state and local tax revenues, including $279 million derived from Pennsylvania's Impact Fee and distributed to communities throughout the Commonwealth.[10]

Pennsylvania is one part of an interdependent regional and national market for natural gas.  Pennsylvania uses only about one-fourth of the natural gas it produces.[11]  Several pipeline infrastructure projects constructed in recent years have allowed Marcellus Shale producers to safely and efficiently transport natural gas both within

---

[8]  *Supra* n. 4 at 26-28.

[9]  FTI Consulting, "Economic and Fiscal Impact of Pennsylvania Shale Gas Development" (Aug. 2023) at 2, https://marcelluscoalition.org/wp-content/uploads/2023/09/Economic-and-Fiscal-Impact-of-Pennsylvania-Shale-Development.pdf.

[10]  *Id*.; *see also* Marcellus Shale Coalition, "Pennsylvania's Impact Fee," https://marcelluscoalition.org/wp-content/uploads/2018/06/2018-Impact-Fee-Fact-Sheet-062118.pdf.

[11]  *Supra* n.2.  Pennsylvania is one of the largest consumers of natural gas in the country.  More than 60% of electricity in Pennsylvania is generated from natural gas, and more than half of Pennsylvania households use natural gas to heat their homes. *Id.*

Pennsylvania and to other states.[12]  Importantly, and as addressed below, the Panel's decision impacts not only incremental capacity but also existing capacity, effectively taking offline an entire pipeline running through northeastern Pennsylvania.

        **2.**      ***The Project delivers additional pipeline infrastructure for Marcellus Shale producers***

Robust pipeline infrastructure is the key to maintaining low-cost natural gas supply to both direct purchasers of Marcellus Shale natural gas and end users in Pennsylvania and elsewhere.  However, Marcellus Shale producers have struggled for years with limited pipeline infrastructure.[13]  Due in part to these limitations, production—after growing rapidly for several years—stagnated beginning in 2021.[14] This has depressed prices for Marcellus Shale producers, resulting in decreased

---

[12]  *See* FERC, "Approved Major Pipeline Projects (1997-Present)" (Nov. 20, 2023), https://ferc.gov/industries-data/natural-gas/approved-major-pipeline-projects-1997-present; *see also supra* n.2.

[13]  *See*, *e.g.*, NERA Economic Consulting, "Analysis of U.S. Natural Gas Market Price Impacts from Increasing Natural Gas Supply Accessibility for Different Natural Gas Demand Outlooks" (Apr. 2023) at 3 ("The lack of new pipeline infrastructure has likely contributed to sub-optimal current natural gas market conditions and price formation. … Several pipeline projects in the Northeast have been cancelled since 2020 largely as a consequence of regulatory and permitting challenges."), https://accf.org/wp-content/uploads/2023/05/Final_NERA-LNG-Outlook-Report_4_13_2023.pdf.

[14]  *Supra* n.4 at 12 (showing increased production each year to 7.57 trillion cubic feet in 2021, but then decreasing slightly to 7.45 trillion cubic feet in 2022 and 7.53 trillion cubic feet in 2023); *supra* n.2 (citing "a plateauing of natural gas takeaway capacity" as one reason for decreasing natural gas production in Pennsylvania).

employment across the industry.[15]  Continued investment in pipeline infrastructure is a high priority for producers, for Pennsylvania's local communities depending on Marcellus Shale production, and for Pennsylvania's economy.

The Project represents a significant investment.  The Project's purpose is to deliver "an incremental 829,400 Dth/d of year-round firm transportation capacity from the Marcellus Shale production area in northeastern Pennsylvania to delivery points in Pennsylvania, New Jersey, and Maryland."[16]  The Project added 22.3 miles of 30-inch diameter lateral pipeline and 13.8 miles of 42-inch diameter loop pipeline in Pennsylvania, modified three existing compressor stations in Pennsylvania, and modified other facilities.[17]  The Project supplemented Transco's existing pipeline infrastructure in Pennsylvania which, in turn, connects with existing pipelines that supply Marcellus Shale natural gas to markets up and down the Eastern seaboard.[18]

---

[15]  New York Times, "Big Energy Issue in Pennsylvania Is Low Natural Gas Prices. Not Fracking." (Sept. 16, 2024) (stating that oil and gas employment in Pennsylvania has decreased from nearly 35,000 in 2014 to fewer than 20,000 in 2023), https://www.nytimes.com/2024/09/16/business/energy-environment/pennsylvania-fracking-natural-gas-trump-harris.html?searchResultPosition=2.

[16]  FERC, "Regional Energy Access Expansion Project:  Final Environmental Impact Statement" (July 2022) at 1.

[17]   FERC, "Order Issuing Certificate and Approving Abandonment," 182 FERC ¶ 61,006 (Jan. 11, 2023) at 2.

[18]  *Id*. at 2-3.

The Project began operations in October 2023 and has been operating at full capacity since July 2024.[19]  In addition to providing incremental capacity of 829,400 Dth/d, the Project facilitates existing capacity of 1,235,000 Dth/d due to infrastructure modifications and upgrades.[20]  Vacatur thereby threatens a reduction in transportation capacity of 2,064,400 Dth/d—an amount of natural gas sufficient to heat 10.6 million homes.[21]  This reduction in capacity—as the winter season is approaching—has "the potential to result in catastrophic events. … The adverse operational impact would cascade across Pennsylvania and New Jersey to New York" and potentially beyond.[22]

### 3. *Vacatur will have disruptive near-term consequences for Marcellus Shale producers, direct purchasers, and end users*

Vacatur will result in negative consequences that reverberate through the entire supply chain, from producers to direct purchasers and ultimately consumers. For Marcellus Shale producers, limited pipeline infrastructure has resulted in depressed natural gas prices, causing producers to either throttle back production or unload supply at deep discounts, affecting jobs and depriving Pennsylvania of other

---

[19]  *See* Application of Transco for a Temporary Emergency Certificate (Sept. 6, 2024) at 9-11.

[20]  *Id*. at 5-6; *supra* n.17 at 8, 21, 23.

[21]  *Supra* n.19 at 20.

[22]  *Supra* n.19, Exh. Z-1 (Levitan-Molin Decl.) at ¶ 4.

economic benefits.[23]  Vacatur also will immediately impact the direct purchasers under contract for the full amount of affected firm capacity, *i.e.*, the Project's 829,400 Dth/d in incremental capacity and the 1,235,000 Dth/d of existing capacity that depends on Project facilities.  "[T]he loss of approximately 2.0 Bcf/d of pipeline capacity equates to an approximate 22 percent reduction in Transco's deliverability to the REA Impact Zone for which there would be no practical mitigation in winter 2024-2025," and "[e]ffective mitigation strategies would take … many years to engineer."[24]

One such direct purchaser is PECO Energy Company ("PECO"), which contracted for 100,000 Dth/d of the Project's incremental capacity—an amount of natural gas sufficient to heat approximately half a million homes.[25]  PECO is Pennsylvania's largest electric and natural gas utility, providing electricity to nearly 1.7 million customers and natural gas to more than 545,000 customers.[26]  Without the Marcellus Shale natural gas PECO has contracted to receive and *is currently*

---

[23] *See supra* n.15 ("Natural gas prices in southwest Pennsylvania have plunged some 80 percent in the past two years, after surging to $9 per million British thermal units in August 2022, after Russia invaded Ukraine, according to S&P Global Commodity Insights.  Gas has traded around $1.50 this month.").

[24] *Supra* n.19, Exh. Z-1 (Levitan-Molin Decl.) at ¶ 26.

[25] *Supra* n.19 at 6 n.8

[26] PECO, "Company Information," https://www.peco.com/about-us/company-information.

*receiving* (not just from incremental capacity but also from existing capacity), PECO will need to secure alternative sources to maintain service to its Philadelphia-area customers through the winter and beyond.

Even if utilities are able to avoid service disruptions similar to those experienced by Pennsylvanians during Winter Storm Elliott in December 2022,[27] limited pipeline infrastructure will continue to result in Pennsylvanians paying increased prices for natural gas[28] and electricity. "Abandonment of the REA facilities will lessen shipper access to lower-cost gas from Marcellus and Utica, thereby sustaining upward pressure on gas utility bills and wholesale electric prices in the Mid-Atlantic Area Council ('MAAC') portion of PJM,"[29] which encompasses most of Pennsylvania, including PECO's service area as well as the areas served by PPL Electric Utilities, Met-Ed, and Pennsylvania Electric Co.[30] The loss of such

---

[27]  *See, e.g.,* FERC/NERC, "Inquiry into Bulk-Power System Operations During December 2022 Winter Storm Elliot" (Oct. 2023) https://www.ferc.gov/media/winter-storm-elliott-report-inquiry-bulk-power-system-operations-during-december-2022.

[28]  *See*, *e.g.*, *supra* n.13 at 3 ("In the absence of these infrastructure pipeline cancellations, natural gas consumers would likely face less upward price pressure and have access to lower cost natural gas supplies which in turn would ultimately lead to lower domestic natural gas prices.").

[29]  *Supra* n.19, Exh. Z-3 (Morris Decl.) at ¶ 20.

[30]  *See* PJM, "Map of PJM Territory Served," https://www.pjm.com/-/media/about-pjm/pjm-zones.ashx; PJM Inside Lines, "PJM Capacity Auction Secures Electricity Supplies at Competitive Prices" (June 21, 2022), https://insidelines.pjm.com/pjm-capacity-auction-secures-electricity-supplies-at-competitive-

capacity this winter also will likely "heighten gas price volatility," "cause more frequent and longer price spikes," and "impose much higher wholesale power prices in PJM when scarcity conditions cause power prices to skyrocket for brief periods."[31]

### 4. Vacatur will have disruptive longer-term consequences for Pennsylvania's economy and environment

Natural gas has been a boon to Pennsylvania's economy, particularly the rural communities that have come to rely upon the jobs, economic activity, royalties, and tax revenues due to development of the Marcellus Shale. The Project itself represents an $800 million economic investment, projected to generate $23.6 million in state and local tax revenues each year.[32] Vacatur will significantly reduce these economic benefits to the impacted Pennsylvania communities.

Vacatur also will exacerbate challenges obtaining greater investment in both developing the Marcellus Shale and ensuring adequate pipeline infrastructure to transport Pennsylvania's natural gas resources to markets in other states. Companies will spend the capital to build pipeline infrastructure only if they believe the projects will be completed and enter operation. Indeed, regulatory challenges have led to a

---

prices/#:~:text=In%20the%20MAAC%20region%2C%20the,of%20the%20Chesap eake%20&%20Delaware%20Canal.

[31] *Supra* n.19, Exh. Z-1 (Levitan-Molin Decl.) at ¶ 29.

[32] PA DEP, "Comment/Response Document" at 49-51, https://files.dep.state.pa.us/ProgramIntegration/PA%20Pipeline%20Portal/REAEP/ Regional_Energy_Access_Expansion_Comment_Response_document–Part_1.pdf.

dramatic decline in new pipeline capacity entering operation, with 2022 setting a record low for new pipeline infrastructure.[33]   The Panel's expansive application of the legal standard for vacatur will prompt legal challenges to pending and future projects.

Ultimately, vacatur will impact Pennsylvania's developing energy market and energy goals as well.  The reduced ability to access natural gas resources may impact utilities planning to switch to or develop natural gas burning power plants. Pennsylvania has been a model for decarbonizing its economy, primarily due to switching to natural gas as a means of generating electricity.[34]   This has led to tangible benefits for Pennsylvanians; between 2012 and 2022, emissions of sulfur oxides, nitrogen oxides, and carbon dioxide from power generation declined by 85%, 83% and 27%, respectively.[35]   And this transition has enabled Pennsylvania to move towards satisfying its ambitious climate goals, including reductions of greenhouse gas emissions from 2005 levels by 26% in 2025 and 80% in 2050.[36]

---

[33]   *Supra* n.4 at 18; *see also supra* n.15 ("Companies have all but given up on the prospect of laying new long-haul pipelines in the Northeast after earlier projects got bogged down in permitting and legal challenges.").

[34]   In 2012, natural gas accounted for 24% of Pennsylvania's electricity net generation; by 2022, this had increased to more than 54%.  *Supra* n.2.

[35]   PA DEP, "25 Year Site Level Emission Inventory Report," https://www.dep.pa.gov/DataandTools/Reports/Pages/Air-Quality-Reports.aspx.

[36]   PA DEP, "Pennsylvania Climate Action Plan," https://www.dep.pa.gov/Citizens/climate/Pages/PA-Climate-Action-Plan.aspx.

\*          \*          \*          \*

The Panel's vacatur decision sets a troubling precedent.  Over the long-term, failure to apply consistent standards regarding this Court's review of FERC orders will have significant economic and environmental consequences and threaten critically needed investment in pipeline infrastructure, both in Pennsylvania and beyond.

## CONCLUSION

For the foregoing reasons, the Pennsylvania Chamber urges the Court to grant Transco's Petition.

Dated:  September 20, 2024

                                        */s/ Jason R. Parish*

                                        Jason R. Parish
                                        BUCHANAN INGERSOLL & ROONEY P.C.
                                        1700 K Street, N.W.
                                        Washington, DC 20006
                                        Telephone:  (202) 452-7900
                                        Email:  jason.parish@bipc.com

                                        *Counsel for Amicus Curiae*
                                        *Pennsylvania Chamber of Business and*
                                        *Industry*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,590 words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionately-spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  September 20, 2024

                                              */s/ Jason R. Parish*

                                              Jason R. Parish
                                              BUCHANAN INGERSOLL & ROONEY P.C.
                                              1700 K Street, N.W.
                                              Washington, DC 20006
                                              Telephone:  (202) 452-7900
                                              Email:  jason.parish@bipc.com

                                              *Counsel for Amicus Curiae*
                                              *Pennsylvania Chamber of Business and*
                                              *Industry*

14

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedures 25(d) and D.C. Circuit Rule

25(d), I certify that the foregoing document was electronically filed with the Court

via its CM/ECF system, which will cause notification of such filing to all registered

CM/ECF users.

Dated:  September 20, 2024

*/s/ Jason R. Parish*

Jason R. Parish
BUCHANAN INGERSOLL & ROONEY P.C.
1700 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 452-7900
Email:  jason.parish@bipc.com

*Counsel for Amicus Curiae*
*Pennsylvania Chamber of Business and*
*Industry*