No. 23-1064
(consolidated with 23-1074, 23-1077, 23-1129, 23-1130, 23-1137)

# In the United States Court of Appeals
# For the District of Columbia Circuit

_____

NEW JERSEY CONSERVATION FOUNDATION, *ET AL.*,
*Petitioners,*
v.
FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent.*

TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC,
*Intervenor-Respondent.*

_____

On Petition for Review of Orders of the Federal Energy Regulatory Commission

_____

**BRIEF OF KINDER MORGAN, INC. AS *AMICUS CURIAE*
IN SUPPORT OF INTERVENOR-RESPONDENT
TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC's PETITION FOR
PANEL REHEARING OR REHEARING *EN BANC***

David A. Super (DC Bar #429359)
Kevin A. Ewing (DC Bar #440444)
Britt Cass Steckman (DC Bar #1003389)
BRACEWELL LLP
2001 M Street, NW, Suite 900
Washington, D.C. 20036
Telephone: (202) 828-5800
Facsimile: (800) 404-3970
Email: david.super@bracewell.com
        kevin.ewing@bracewell.com
        britt.steckman@bracewell.com

*COUNSEL FOR AMICUS CURIAE KINDER MORGAN, INC.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, Amicus Kinder Morgan, Inc. makes the following disclosures:

Kinder Morgan, Inc. is a publicly held corporation.  Kinder Morgan, Inc. does not have a parent corporation, and no publicly held corporation holds 10% or more of Kinder Morgan, Inc.'s stock.

Kinder Morgan is an energy infrastructure company that operates natural gas pipelines across North America.

Date:   September 20, 2024

_/s/ David A. Super_
David A. Super (DC Bar #429359)
BRACEWELL LLP
2001 M Street NW, Suite 900
Washington, DC  20036
Telephone:  (202) 828-5852
Facsimile:   (800) 404-3970
Email: david.super@bracewell.com

***Counsel for Amicus Curiae***
***Kinder Morgan, Inc.***

## <u>STATEMENT AS TO AUTHORSHIP AND FUNDING OF THE BRIEF</u>

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), undersigned counsel hereby certifies that:

(i)     No party's counsel authored this proposed *amicus* brief in whole or in part;

(ii)    No party's counsel contributed money that was intended to fund the preparation or submittal of this proposed *amicus* brief; and

(iii)   No person – other than Kinder Morgan, Inc. or its counsel – contributed money that was intended to fund the preparation or submittal of this proposed *amicus* brief.

Date:   September 20, 2024

   */s/ David A. Super*
David A. Super (DC Bar #429359)
BRACEWELL LLP
2001 M Street NW, Suite 900
Washington, DC  20036
Telephone:  (202) 828-5852
Facsimile:   (800) 404-3970
Email: david.super@bracewell.com

***Counsel for Amicus Curiae***
***Kinder Morgan, Inc.***

**CERTIFICATE REGARDING SEPARATE BRIEFING**

Pursuant to D.C. Circuit Rule 29(d), counsel for proposed *amicus* Kinder Morgan, Inc. ("Kinder Morgan") certifies that, to their knowledge, no other *amicus* brief focuses on the same precise issues as Kinder Morgan's brief or from the same perspective that Kinder Morgan provides as a leading developer of natural gas pipelines in the United States.  Kinder Morgan's proposed *amicus* brief discusses how *New Jersey Conservation Foundation v. FERC*, 111 F.4th 42 (D.C. Cir. 2024), conflicts with multiple decisions of this Court confirming that, in the absence of evidence of self-dealing, the Federal Energy Regulatory Commission ("FERC") may properly rely on precedent agreements as sufficient evidence of market need under Section 7 of the NGA.  The proposed *amicus* also discusses *New Jersey's* conflict with this Court's explicit holding in *Food & Water Watch*, 104 F.4th 336 (D.C. Cir. 2024), that FERC is not obligated to determine the "significance" of greenhouse gas ("GHG") emissions in assessing natural gas pipeline projects under the National Environmental Policy Act, and that the U.S. Supreme Court's decision in *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502 (2009), supports the sufficiency of FERC's action regarding GHG significance.

Kinder Morgan submits that, as an owner, operator, and leading developer of natural gas pipelines across the United States, it provides a unique perspective on these issues, the need for natural gas industry participants to rely on uniform and

predictable body of case law governing FERC's issuance of certifications for such

projects, and the enormous market confusion and disruption caused by conflicting

Court precedent, like *New Jersey*.


Date:   September 20, 2024          */s/ David A. Super*
                                    David A. Super (DC Bar #429359)
                                    BRACEWELL LLP
                                    2001 M Street NW, Suite 900
                                    Washington, DC  20036
                                    Telephone:  (202) 828-5852
                                    Facsimile:   (800) 404-3970
                                    Email: david.super@bracewell.com

                                    ***Counsel for Amicus Curiae***
                                    ***Kinder Morgan, Inc.***

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ......................................................... ii

STATEMENT AS TO AUTHORSHIP AND FUNDING OF THE BRIEF ........... iii

CERTIFICATE REGARDING SEPARATE BRIEFING ....................................... iv

TABLE OF CONTENTS ......................................................................................... vi

TABLE OF AUTHORITIES ................................................................................... vii

    I.      INTRODUCTION ......................................................................... 1

    II.    ARGUMENT ................................................................................. 2

         A.    *New Jersey* Upends Fundamental Regulatory And Market Expectations By Misapprehending The Probative Value Of Precedent Agreements In FERC's Analysis Of Market Need. ..................................................................................... 2

         B.    *New Jersey* Contradicts Precedent In Rejecting FERC's Position On Determining The Significance Of Greenhouse Gas Emissions. ............................................................................ 7

              1.    *New Jersey* Errs In Disregarding FERC's Position On NEPA Significance Determinations For GHG Emissions. ....................................................................... 7

              2.    *FCC v. Fox Television Stations* Supports Rehearing .......... 9

         C.    *Vacatur* Of The Certificate Order Conflicts With Court Precedent. ..................................................................................... 11

    III.    CONCLUSION ............................................................................. 12

CERTIFICATE OF COMPLIANCE ...................................................................... 13

CERTIFICATE OF SERVICE ............................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ala. Mun. Distribs. Grp. v. FERC,*
   100 F.4th 207 (D.C. Cir. 2024).................................................................7, 10

*Appalachian Voices v. FERC,*
   No. 17-1271, 2019 WL 847199 (D.C. Cir. Feb. 19, 2019) .............................3, 6

*City of Oberlin, Ohio v. FERC,*
   39 F.4th 719 (D.C. Cir. 2022)...................................................................3, 6

*City of Oberlin, Ohio v. FERC,*
   937 F.3d 599 (D.C. Cir. 2019)................................................................3, 6, 11

*Ctr. for Biological Diversity v. FERC,*
   67 F.4th 1176 (D.C. Cir. 2023).................................................................7, 10

*Del. Riverkeeper Network v. FERC,*
   45 F.4th 104 (D.C. Cir. 2022)................................................................2, 3, 5

*Envtl. Def. Fund v. FERC,*
   2 F.4th 953 (D.C. Cir. 2021)......................................................................2, 3

*FCC v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009).................................................................................9, 10

*Food & Water Watch v. FERC,*
   104 F.4th 336 (D.C. Cir. 2024)...................................1, 2, 3, 7, 8, 10

*Food & Water Watch v. FERC,*
   28 F.4th 277 (D.C. Cir. 2022)........................................................................11

*Healthy Gulf v. FERC,*
   107 F.4th 1033 (D.C. Cir. 2024)................................................................7, 11

*Minisink Residents for Env't Pres. & Safety v. FERC,*
   762 F.3d 97 (D.C. Cir. 2014)................................................................3, 4, 5

*Myersville Citizens for a Rural Cmty., Inc. v. FERC,*
   783 F.3d 1301 (D.C. Cir. 2015)................................................................3, 5

*NAACP v. Fed. Power Comm'n,*
   425 U.S. 662 (1976)..........................................................................2

*New Jersey Conservation Foundation v. FERC,*
   111 F.4th 42 (D.C. Cir. 2024).......................................1, 2, 8, 9

*Sierra Club v. FERC,*
   867 F.3d 1357 (D.C. Cir. 2017).......................................................3, 6

*Twp. of Bordentown, New Jersey v. FERC,*
   903 F.3d 234 (3d Cir. 2018) .........................................................5

*Vecinos para el Bienestar de la Comunidad Costera v. FERC,*
   6 F.4th 1321 (D.C. Cir. 2021)......................................................11

*XO Energy MA, LP v. FERC,*
   77 F.4th 710 (D.C. Cir. 2023).....................................................11

## Statutes

Administrative Procedure Act..................................................................9

National Environmental Policy Act.......................................1, 7, 8, 9, 11

Natural Gas Act § 7.....................................................1, 2, 10, 11

## FERC Authorities

*Certification of New Interstate Nat. Gas Pipeline Facilities,*
   88 FERC ¶ 61,227 (1999)..........................................................4

*Northern Natural Gas Co.,*
   174 FERC ¶ 61,189 (2021).........................................................8

Order on Draft Policy Statements,
   178 FERC ¶ 61,197 (Mar. 24, 2022) ............................................8

## I.    INTRODUCTION

*Amicus* Kinder Morgan, Inc. ("Kinder Morgan"), an owner, operator, and developer of natural gas pipelines across the United States, submits this amicus brief in support of Transcontinental Gas Pipe Line Company, LLC's petition for panel rehearing and rehearing *en banc* of this Court's opinion in *New Jersey Conservation Foundation v. FERC*, 111 F.4th 42 (D.C. Cir. 2024) ("*New Jersey*").

First, *New Jersey* conflicts with multiple decisions of this Court, including *Food & Water Watch v. FERC*, 104 F.4th 336 (D.C. Cir. 2024), issued three months ago, confirming that—in the absence of *evidence* of self-dealing—the Federal Energy Regulatory Commission ("FERC") may properly rely on precedent agreements as sufficient evidence of market need under Section 7 of the Natural Gas Act ("NGA").

Second, *New Jersey* conflicts with this Court's explicit holding in *Food & Water Watch* that FERC is *not* obligated to determine the "significance" of greenhouse gas ("GHG") emissions in assessing natural gas pipeline projects under the National Environmental Policy Act ("NEPA").

These critical holdings in *New Jersey* are causing massive uncertainty in and disruption to the Nation's natural gas industry.  Kinder Morgan submits that rehearing is necessary to ensure uniformity of the Court's decisions, avoid such uncertainty, and honor Congress' mandate in the NGA that the Nation continue to

benefit from "the orderly development of plentiful supplies of … natural gas at reasonable prices." *NAACP v. Fed. Power Comm'n*, 425 U.S. 662, 669–70 (1976).

## II.    ARGUMENT

### A.    *New Jersey* Upends Fundamental Regulatory And Market Expectations By Misapprehending The Probative Value Of Precedent Agreements In FERC's Analysis Of Market Need.

Never before has this Court, or any other, faulted FERC in its assessment of market need under the NGA, where FERC relied on *100% subscription* of pipeline project capacity pursuant to *arm's-length precedent agreements* with *unaffiliated entities*.  Having now done so, *New Jersey* upends longstanding, uniform Court precedent, creating material legal and market confusion and disruption where none is warranted.

Until *New Jersey*, this Court has consistently *and recently* found that precedent agreements are sufficient evidence of market need that all stakeholders can rely upon.  *Food & Water Watch*, 104 F.4th at 347.  This Court has never required FERC to look behind a precedent agreement to prove that it "reflect[s] genuine market need," *New Jersey*, 111 F.4th at 61, other than in a single case where there was "plausible evidence of self-dealing" between corporate affiliates.  *Envtl. Def. Fund v. FERC*, 2 F.4th 953, 975 (D.C. Cir. 2021) ("*Spire*"); *see also Food & Water Watch*, 104 F.4th at 347 (distinguishing *Spire* as "involv[ing] an agreement between corporate affiliates"); *Del. Riverkeeper Network v. FERC*, 45 F.4th 104,

114 (D.C. Cir. 2022) (distinguishing *Spire* where "petitioners had identified plausible evidence of self-dealing").

Rather, this Court has "repeatedly ... held that such contracts—especially between unaffiliated entities—are 'good evidence' of such demand." *Food & Water Watch*, 104 F.4th at 347. *Accord Del. Riverkeeper,* 45 F.4th at 114 (precedent agreements "were better evidence of market need" than speculative market reports); *City of Oberlin, Ohio v. FERC*, 937 F.3d 599, 605 (D.C. Cir. 2019) (precedent agreements, including with pipeline's affiliates, adequately showed public need); *City of Oberlin, Ohio v. FERC*, 39 F.4th 719, 729 (D.C. Cir. 2022) (same); *Appalachian Voices v. FERC*, No. 17-1271, 2019 WL 847199, at *1 (D.C. Cir. Feb. 19, 2019) ("FERC's conclusion that there was a market need for the Project was reasonable and supported by substantial evidence in the form of long-term precedent agreements [with corporate affiliates] for 100 percent of the Project's capacity."); *Sierra Club v. FERC*, 867 F.3d 1357, 1379 (D.C. Cir. 2017) ("The criterion is 'market need'—whether the pipelines will be self-supporting—which the applicants here satisfied by showing that 93% of their capacity has already been contracted for."); *Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1311 (D.C. Cir. 2015) ("It is Commission policy to not look behind precedent or service agreements to make judgements about the needs of individual shippers.") (quotations omitted); *Minisink Residents for Env't Pres. & Safety v. FERC*, 762 F.3d

-3-

97, 111 n.10 (D.C. Cir. 2014) (nothing requires FERC "to assess a project's benefits by looking beyond the market need reflected by the applicant's existing contracts with shippers").

These cases affirm FERC's application of its Certificate Policy Statement, *see, e.g., Minisink*, 762 F.3d at 1311 n.10, which provides that "contracts or precedent agreements always will be important evidence of demand for a project." *Certification of New Interstate Nat. Gas Pipeline Facilities*, 88 FERC ¶ 61,227, 61,748 (1999). This sensible policy recognizes that both pipeline sponsors and shippers do not execute binding precedent agreements lightly. Pipeline sponsors must engage in extensive development activities to assess project viability, including meeting with prospective customers; analyzing basis differentials (or "spreads"); assessing project alternatives; gauging short and long-term supply and demand fundamentals; evaluating route impacts; forecasting construction, operating and maintenance costs; and estimating the cost of obtaining capital. The project sponsor then conducts a rigorous economic analysis to ensure that the project will be viable before negotiating and finalizing binding precedent agreements and committing often billions of dollars to project development. Shippers engage in a parallel process. Thus, "[a] contract for a pipeline's capacity is a useful indicator of need because it reflects a 'business decision' that such a need exists. … If there were no objective market demand for the additional gas, no rational company would spend

money to secure the excess capacity." *Twp. of Bordentown, New Jersey v. FERC*, 903 F.3d 234, 262–63 (3d Cir. 2018).

Affirming this FERC policy, this Court held in 2014 that FERC is not required to go beyond contracts with shippers in assessing need. *Minisink*, 762 F.3d at 111 n.10 ("Petitioners identify nothing in the policy statement or in any precedent construing it to suggest that it requires, rather than permits, the Commission to assess a project's benefits by looking beyond the market need reflected by the applicant's existing contracts with shippers. To the contrary, the policy statement specifically recognizes that such agreements 'always will be important evidence of demand for a project.'") (quoting Certificate Policy Statement, 88 FERC at ¶ 61,748).

That holding has been consistently affirmed and applied over the last decade. Building on *Minisink,* the Court in *Meyersville* rejected arguments that FERC's reliance on precedent agreements was insufficient in the face of "a market study showing declining demand for natural gas," finding that FERC reasonably applied "Commission policy to not look behind precedent or service agreements to make judgments about the needs of individual shippers" and reasonably found the market study to be unpersuasive because it gave only "general overviews," rather than data about demand in the particular markets to be served by the project at issue. 783 F.3d at 1311. This Court similarly declined to require FERC to explore whether there was "genuine" need behind precedent agreements in *Delaware Riverkeeper,* 45 F.4th

at 114, *Oberlin*, 937 F.3d at 605, *Appalachian Voices*, 2019 WL 847199, at *1, and *Sierra Club*, 867 F.3d at 1379.

This Court has applied this policy even when the project's subscription level is lower than 100% of its capacity and where some of the precedent agreements were with the pipeline sponsor's affiliates. *See Oberlin*, 937 F.3d at 605; *Oberlin*, 38 F.4th at 729. Indeed, this Court has confirmed that "[t]here is no floor on the subscription rate needed for FERC to find a pipeline is or will be in the public convenience and necessity." *Oberlin*, 39 F.4th at 730. This case, of course, involves precedent agreements with non-affiliates for 100% of the project's capacity and therefore presents a more compelling showing of market need than this Court found was sufficient in these prior cases.

In sum, *New Jersey* conflicts with clear and consistent precedent because it requires FERC to conduct an additional level of inquiry—*i.e.*, to look behind precedent agreements to determine if they "reflect genuine market need"—that has never been previously required when there is no plausible evidence of self-dealing between affiliates. The contradictory ruling in *New Jersey* attempts to brush aside a decade of precedent in one fell swoop, thereby creating material uncertainty for pipeline developers and shippers and the natural gas industry as a whole.

-6-

**B.** ***New Jersey* Contradicts Precedent In Rejecting FERC's Position On Determining The Significance Of Greenhouse Gas Emissions.**

The Court furthers an unsustainable conflict between its decisions, and a conflict with U.S. Supreme Court precedent, by faulting FERC's reasoned decision to abstain from making a case-specific determination about the significance of greenhouse gas ("GHG") emissions associated with FERC's action.

**1.** ***New Jersey* Errs In Disregarding FERC's Position On NEPA Significance Determinations For GHG Emissions.**

In requiring FERC to supplement its stated reasons for not making a "significance" determination on the impacts of GHG emissions, this Court broke with precedent, including its holding three months ago in *Food & Water Watch*, that FERC is not required to "attach… a label of 'significant' or 'insignificant' [to] a project's carbon emissions." 104 F.4th at 346. *Accord Ala. Mun. Distribs. Grp. v. FERC*, 100 F.4th 207, 215 (D.C. Cir. 2024); *Ctr. for Biological Diversity v. FERC*, 67 F.4th 1176, 1184 (D.C. Cir. 2023). In doing so, *New Jersey* furthers a growing intra-circuit conflict. *Compare Healthy Gulf v. FERC*, 107 F.4th 1033, 1042-43 (D.C. Cir. 2024) (additional explanation required for lack of significance determination) *with Food & Water Watch*, 104 F.4th at 346 (no additional explanation required).

The Court based its ruling in *New Jersey* on a premise it explicitly rejected in *Food & Water Watch*, namely that FERC previously determined the significance

(actually, the *in*significance) of emissions in a prior case, *Northern Natural Gas Co.*, 174 FERC ¶ 61,189 (2021), and therefore must explain why it would not do so again. Yet in *Food & Water Watch*, the Court addressed *Northern Natural* and found that FERC, in a subsequent 2022 order, had reasonably explained its reasons for changing course from this practice and withdrawn a draft policy statement on making such significance determinations.  104 F.4th at 347 (citing Order on Draft Policy Statements, 178 FERC ¶ 61,197, P 2 (Mar. 24, 2022)).  Based on this reasonable change in FERC policy, this Court in *Food & Water Watch* affirmed that NEPA did not require FERC to decide whether impacts assessed in an environmental impact statement are "significant."  104 F.4th at 347.

Having adequately explained its change in position from *Northern Natural* in its policy docket, FERC was not obligated to repeat in this proceeding its explanation of its standing policy position on GHG significance.  The Court here properly recognizes that FERC analyzed the GHG emissions associated with its action (including aggregate tons of $CO_{2e}$, comparison to state emissions budgets, and dollar-equivalent cost estimates).  *New Jersey*, 111 F.4th at 54-55.  This is the same analysis that the Court credited in *Food & Water Watch*.  104 F.4th at 346 (finding that FERC went "well beyond" NEPA requirements by "quantify[ing] downstream GHG emissions" and "compar[ing] those emissions to national and state totals").  *New Jersey* errs in faulting FERC for not explaining, in this docket, why it turned

-8-

away from an incipient policy position that did not originate in this docket and that FERC set aside in the proper policy docket years ago.

As FERC had no obligation to make a significance determination, the Court's observation that "FERC has not disputed the premise that it is generally obligated to make a significance determination for each category of emissions," *New Jersey*, 111 F.4th at 55-56, is based on an incorrect premise. Neither NEPA nor the Administrative Procedure Act ("APA") requires FERC to affirmatively raise legal points that are incorrect in order to debunk them. And neither NEPA nor the APA imposes (or allows a court to impose) an obligation that does not otherwise exist if an agency fails to "dispute" the existence of the ostensible obligation at the outset. *New Jersey* invites confusion and misuse of judicial and agency resources as it misconstrues FERC's obligations under NEPA and the sufficiency of FERC's justification for not determining the significance of GHG emissions.

## 2. *FCC v. Fox Television Stations* Supports Rehearing.

Contrary to *New Jersey*, 111 F.4th at 54, the Supreme Court's decision in *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502 (2009), supports rather than undermines the sufficiency of FERC's action regarding GHG significance. In *Fox*, the Court reversed the lower court for applying a heightened standard when examining the sufficiency of the agency's explanation for a change in policy (relating to broadcasting indecent language). 556 U.S. at 514. The Court

specifically credited the agency's explanation of its new policy based on its statement in a separate proceeding and found "not tenable" the contention that the agency had to re-assert that explanation in the case at bar. *Id.* at 521. That is exactly what FERC did here—it explained the reasons for changing its policy in an earlier docket. *New Jersey's* criticism of FERC for failing to repeat the explanation here is likewise "not tenable."

Further, *Fox* recognized that an agency may not be in a position to make an empirical assessment of a harmful effect and may nevertheless take action based on the authority Congress granted to the agency's discretion. 556 U.S. at 519 ("There are some propositions for which scant empirical evidence can be marshaled, and the harmful effect of broadcast profanity on children is one of them … Congress has made the determination that indecent material is harmful to children, and has left enforcement of the ban to the Commission. If enforcement had to be supported by empirical data, the ban would effectively be a nullity."). The vexing challenge of assessing the magnitude of climate impacts from GHG emissions is no different, as FERC has explained and this Court has previously accepted. *Food & Water Watch*, 104 F.4th at 347; *Mun. Distribs. Grp.*, 100 F.4th at 215; *Ctr. for Biological Diversity*, 67 F.4th at 1184. Pending FERC's resolution of the challenge of empirical assessment of climate impacts, FERC is entitled to continue to act under the NGA.

-10-

**C.    *Vacatur* Of The Certificate Order Conflicts With Court Precedent.**

The Court's *vacatur* of the certificate order here conflicts with multiple decisions of this Court involving authorizations for natural gas infrastructure where the Court remanded without *vacatur*. *See, e.g., Healthy Gulf*, 107 F.4th at 1047-48; *Food & Water Watch v. FERC*, 28 F.4th 277, 292 (D.C. Cir. 2022); *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1331-32 (D.C. Cir. 2021); *Oberlin*, 937 F.3d at 611.  Kinder Morgan submits that FERC's failures in analysis identified by the Court in those cases were equal to or more complex than those identified in *New Jersey* and, like those cases, FERC should be given an opportunity to address those points on remand *without vacatur*.

The Court's imposition of *vacatur* magnifies the consequences of imposing a duty on the basis of mistaken legal premises under the NGA and NEPA.  Absent correction, the ruling invites mischievous use of the courts to re-test previously rejected claims.  It also imposes a severe burden on the public served by agencies forced to contend with issues beyond their legal responsibility.

Further, the disruption of energy markets ordinarily weighs against *vacatur*, *see, e.g.*, *XO Energy MA, LP v. FERC*, 77 F.4th 710, 719 (D.C. Cir. 2023) (remanding rule without vacatur where "vacatur of the order approving the 2021 Rule would unduly disrupt PJM's markets…"), and the disruption to the natural gas industry caused by *New Jersey* is unparalleled.

## III.    CONCLUSION

For the foregoing reasons, Kinder Morgan respectfully requests that this Court reconsider its ruling in *New Jersey*.

Date:   September 20, 2024          Respectfully submitted,

                                     */s/ David A. Super*
                                     David A. Super (DC Bar #429359)
                                     Kevin A. Ewing (DC Bar #440444)
                                     Britt Cass Steckman (DC Bar #1003389)
                                     BRACEWELL LLP
                                     2001 M Street, NW, Suite 900
                                     Washington, D.C. 20036
                                     Telephone: (202) 828-5800
                                     Facsimile: (800) 404-3970
                                     Email: david.super@bracewell.com
                                              kevin.ewing@bracewell.com
                                              britt.steckman@bracewell.com

                                     ***Counsel for Amicus Curiae***
                                     ***Kinder Morgan, Inc.***

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    Pursuant to Fed. R. App. P. 29(a)(5), counsel hereby certifies that this brief complies with the type-volume limitations because it contains 2,597 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief  has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.


Date:   September 20, 2024          */s/ David A. Super*
David A. Super (DC Bar #429359)
BRACEWELL LLP
2001 M Street NW, Suite 900
Washington, DC  20036
Telephone:  (202) 828-5852
Facsimile:   (800) 404-3970
Email: david.super@bracewell.com

***Counsel for Amicus Curiae***
***Kinder Morgan, Inc.***

-13-

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 20th day of September 2024, I electronically filed the foregoing *BRIEF OF KINDER MORGAN, INC. AS AMICUS CURIAE IN SUPPORT OF INTERVENOR-RESPONDENT TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC* with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date:   September 20, 2024          /s/ David A. Super
                                    David A. Super (DC Bar #429359)
                                    BRACEWELL LLP
                                    2001 M Street NW, Suite 900
                                    Washington, DC  20036
                                    Telephone:  (202) 828-5852
                                    Facsimile:   (800) 404-3970
                                    Email: david.super@bracewell.com

                                    *Counsel for Amicus Curiae*
                                    *Kinder Morgan, Inc.*