ORAL ARGUMENT HELD ON MARCH 15, 2024

Nos. 23-1064, 23-1074, 23-1077, 23-1129, 23-1130, 23-1137 (consolidated)
─────────────────────────────────────────
IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
─────────────────────────────────────────

NEW JERSEY CONSERVATION FOUNDATION, *et al.*,

*Petitioners,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent,*

NEW JERSEY DIVISION OF RATE COUNSEL, *et al.*,

*Intervenors.*
─────────────────────
On Petitions for Review of Orders of the Federal Energy Regulatory Commission
─────────────────────

**BRIEF OF *AMICI CURIAE* INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA, MARCELLUS SHALE COALITION, GPA MIDSTREAM ASSOCIATION, NEW JERSEY CHAMBER OF COMMERCE, AND CHEMISTRY COUNCIL OF NEW JERSEY IN SUPPORT OF INTERVENOR TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

Joan Dreskin
Christopher Smith
INTERSTATE NATURAL GAS
   ASSOCIATION OF AMERICA
25 Massachusetts Avenue, NW
Suite 500N
Washington, DC 20001
Phone: 202.216.5900
Email: jdreskin@ingaa.org
Email: csmith@ingaa.org

*Counsel for Interstate Natural
Gas Association of America*

Matthew X. Etchemendy
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6740
Email: metchemendy@velaw.com

*Counsel for* Amici Curiae

September 20, 2024

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), *amici curiae* submit this certificate as to parties, rulings, and related cases.

**A.      PARTIES AND *AMICI***

All parties, intervenors, and *amici* appearing in this Court are listed in Intervenor Transcontinental Gas Pipe Line Company, LLC's ("Transco") Petition for Panel Rehearing and Rehearing En Banc.

**B.      RULINGS UNDER REVIEW**

References to the rulings at issue appear in the Brief for Respondent Federal Energy Regulatory Commission.

**C.      RELATED CASES**

The case on review has not previously been before this Court. Counsel is unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

Date: September 20, 2024                    Respectfully submitted,


                                           */s/ Matthew X. Etchemendy*
Joan Dreskin                               Matthew X. Etchemendy
Christopher Smith                          VINSON & ELKINS LLP
INTERSTATE NATURAL GAS                     2200 Pennsylvania Avenue, NW
    ASSOCIATION OF AMERICA                 Suite 500 West
25 Massachusetts Avenue, NW                Washington, DC 20037
Suite 500N                                 Phone: 202.639.6740
Washington, DC 20001                       Email: metchemendy@velaw.com
Phone: 202.216.5900
Email: jdreskin@ingaa.org
Email: csmith@ingaa.org                    *Counsel for* Amici Curiae

*Counsel for Interstate Natural Gas*
*Association of America*

ii

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29, and D.C. Circuit Rule 26.1, the Interstate Natural Gas Association of America ("INGAA"), the Marcellus Shale Coalition ("MSC"), GPA Midstream Association ("GPA Midstream"), the New Jersey Chamber of Commerce ("NJCC"), and the Chemistry Council of New Jersey ("CCNJ") make the following disclosures:

1.      INGAA is an incorporated, not-for-profit trade association representing most interstate natural gas pipeline companies operating in the United States. INGAA has no parent corporation, and no publicly held company has a 10% or greater ownership interest in INGAA.

2.      MSC is an incorporated, not-for-profit trade association representing natural gas producers, midstream, and local supply-chain companies that promote the safe and responsible development of natural gas from the Marcellus and Utica geological formations. MSC has no parent corporation, and no publicly held company has a 10% or greater ownership interest in MSC.

3.      GPA Midstream is an incorporated, not-for-profit trade association that has represented companies engaged in the gathering, transportation, processing, treating, storage, and marketing of natural gas, natural gas liquids, crude oil and refined products since 1921. GPA Midstream has no parent corporation, and no publicly held company has a 10% or greater ownership interest in GPA Midstream.

4.    NJCC is an incorporated, not-for-profit business advocacy association that actively supports legislation and regulation that will lead to economic growth and job creation. NJCC has no parent corporation, and no publicly held company has a 10% or greater ownership interest in NJCC.

5.    CCNJ is a trade association that serves as the leading trade and advocacy organization representing the interests of over 67 manufacturers and 45 firms in New Jersey's diverse chemical sector. CCNJ has no parent corporation, and no publicly held company has a 10% or greater ownership interest in CCNJ.

Date: September 20, 2024

Respectfully submitted,

/s/ Matthew X. Etchemendy

Joan Dreskin
Christopher Smith
INTERSTATE NATURAL GAS
    ASSOCIATION OF AMERICA
25 Massachusetts Avenue, NW
Suite 500N
Washington, DC 20001
Phone: 202.216.5900
Email: jdreskin@ingaa.org
Email: csmith@ingaa.org

*Counsel for Interstate Natural Gas*
*Association of America*

Matthew X. Etchemendy
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6740
Email: metchemendy@velaw.com

*Counsel for Amici Curiae*

iv

## CERTIFICATE OF COUNSEL REGARDING SEPARATE BRIEFING[*]

Pursuant to D.C. Circuit Rule 29(d), counsel for *amici curiae* certify that, to their knowledge, no other non-government *amicus* brief of which they are aware focuses on the precise topics addressed in this brief—namely, the broad harms to interstate natural gas transportation infrastructure development that would arise from the panel's reasoning and decision with respect to market need and remedy, the ways in which those aspects of the panel's opinion deviate from circuit precedent, and the panel decision's implications regarding the limitations Congress placed on federal regulatory authority under the Natural Gas Act. As leading trade organizations intimately familiar with the midstream natural gas transportation sector and the importance of reliable and affordable natural gas to New Jersey's economy, *amici* are well-suited to provide the Court important context and a unique perspective on these subjects that will assist it in resolving this case. In particular, although *amici* understand that individual pipeline companies may seek to file *amicus* briefs in support of rehearing, those companies have their own specific business perspectives, projects, and customers, in contrast to the broader perspectives and interests of

---

[*] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), no counsel for any party authored this brief in whole or in part, and no party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No person other than *amici curiae*, their members, or their counsel contributed money intended to fund the brief's preparation or submission.

*amici*. During the preparation of this brief, *amici* endeavored to coordinate with Transco and other prospective *amici* to avoid duplicative briefing.

Date: September 20, 2024                Respectfully submitted,

<br>

*/s/ Matthew X. Etchemendy*

Joan Dreskin                             Matthew X. Etchemendy
Christopher Smith                        VINSON & ELKINS LLP
INTERSTATE NATURAL GAS                   2200 Pennsylvania Avenue, NW
   ASSOCIATION OF AMERICA            Suite 500 West
25 Massachusetts Avenue, NW              Washington, DC 20037
Suite 500N                               Phone: 202.639.6740
Washington, DC 20001                     Email: metchemendy@velaw.com
Phone: 202.216.5900
Email: jdreskin@ingaa.org                *Counsel for* Amici Curiae
Email: csmith@ingaa.org

*Counsel for Interstate Natural Gas*
*Association of America*

# TABLE OF CONTENTS

Page

Certificate as to Parties, Rulings, and Related Cases ................................................i

Corporate Disclosure Statement ............................................................ iii

Certificate of Counsel Regarding Separate Briefing ................................................v

Table of Authorities ........................................................................ viii

Glossary ....................................................................................x

Identity and Interest of *Amici Curiae* .......................................................1

Introduction and Summary of Argument.........................................................1

Argument ...................................................................................3

    I.    The Panel's Decision on Market Need Conflicts with Circuit Precedent and Threatens to Undermine the Natural Gas Act's Division of Federal and State Authority........................................3

        A.    The Panel's Treatment of Precedent Agreements with LDCs Departs from Longstanding Caselaw and FERC Policy.................3

        B.    The Panel Decision Undermines the Natural Gas Act's Division of State and Federal Authority. ........................................7

    II.    The Panel's Remedial Decision Was Wrong, and Rehearing Is Needed to Clarify the *Allied-Signal* Test. .................................................9

Conclusion ................................................................................12

Certificate of Compliance ....................................................................13

Certificate of Service ........................................................................14

# TABLE OF AUTHORITIES

**Cases:**                                                    **Page(s)**

\* *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993)................................................................ 9, 10, 12

*City of Oberlin, Ohio v. FERC*,
  937 F.3d 599 (D.C. Cir. 2019)...............................................................4, 10

*Env't Def. Fund v. FERC*,
  2 F.4th 953 (D.C. Cir. 2021)...................................................................4

*Food & Water Watch v. FERC*,
  104 F.4th 336 (D.C. Cir. 2024)..............................................................3

*Food & Water Watch v. FERC*,
  28 F.4th 277 (D.C. Cir. 2022).................................................................10

*Healthy Gulf v. FERC*,
  107 F.4th 1033 (D.C. Cir. 2024)...........................................................9, 10

\* *Myersville Citizens for a Rural Cmty., Inc. v. FERC*,
  783 F.3d 1301 (D.C. Cir. 2015).............................................................3, 4

*NAACP v. FPC*,
  425 U.S. 662 (1976)................................................................................7

\* *North Carolina v. EPA*,
  550 F.3d 1176 (D.C. Cir. 2008).............................................................10

*ONEOK, Inc. v. Learjet, Inc.*,
  575 U.S. 373 (2015)................................................................................7

*Twp. of Bordentown, N.J. v. FERC*,
  903 F.3d 234 (3d Cir. 2018) ..................................................................3, 4

**Administrative Cases:**

*In re Kansas Pipe Line & Gas Co.*,
  2 FPC 29 (1939).....................................................................................3

*NEXUS Gas Transmission, LLC*,
  164 FERC ¶ 61,054 (2018)....................................................................4

*Transcontinental Gas Pipe Line Co.*,
  182 FERC ¶ 61,148 (2023).....................................................................6

**\*Authorities upon which we chiefly rely are marked with asterisks.**

**Statutes:** Page(s)

15 U.S.C. § 717(b) ................................................................................7

15 U.S.C. § 717r(c) ..............................................................................11

**Other Authorities:**

INGAA Comments, *Technical Conference on Greenhouse Gas Mitigation*,
      FERC Docket No. PL21-3-000 (Jan. 7, 2022),
      https://tinyurl.com/2yezrcna ...............................................................5

## GLOSSARY

As used herein,

**FERC** means Federal Energy Regulatory Commission;

**INGAA** means Interstate Natural Gas Association of America;

**LDC** means local gas distribution company;

**NGA** means the Natural Gas Act, 15 U.S.C. § 717 *et seq.*;

**the Project** means Transcontinental Gas Pipe Line Company, LLC's Regional Energy Access Expansion;

**Rehearing Order** means Order on Rehearing, Granting Clarification, Denying Stay, and Dismissing Waiver, *Transcontinental Gas Pipe Line Co.*, 182 FERC ¶ 61,148 (2023);

**Transco** means Transcontinental Gas Pipe Line Company, LLC;

**Transco Reh'g Pet.** means Intervenor Transcontinental Gas Pipe Line Company, LLC's Petition for Panel Rehearing and Rehearing En Banc (Doc. 2074528) (Sept. 13, 2024).

## IDENTITY AND INTEREST OF *AMICI CURIAE*

*Amici curiae* are trade associations intimately familiar with, and directly interested in, the midstream natural gas sector, and its importance to New Jersey's economy.

The Interstate Natural Gas Association of America ("INGAA") represents and advocates on behalf of most interstate natural gas transmission pipeline companies in the United States. The Marcellus Shale Coalition represents producers, midstream, and local supply-chain companies promoting development of natural gas from the Marcellus and Utica geological formations. GPA Midstream represents companies engaged in the gathering, transportation, processing, treating, storage, and marketing of natural gas and other energy products. The New Jersey Chamber of Commerce represents businesses and advocates for policies supporting economic growth in the state. The Chemistry Council of New Jersey represents the interests of New Jersey's chemical sector, for which reliable and affordable energy is a critical input. *Amici* thus have a significant interest in, and can offer a unique perspective on, the issues presented by Intervenor Transcontinental Gas Pipe Line Company, LLC's ("Transco") rehearing petition.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The panel decision vacating the Federal Energy Regulatory Commission's ("FERC") certificate for Transco's Regional Energy Access Expansion Project

("Project") is profoundly wrong—and profoundly consequential. This brief focuses on two of its critical errors.

*First*, the panel's decision on market need disregarded longstanding FERC policy, and departed from consistent circuit precedent upholding that policy, by casting doubt on the probative value of precedent agreements between Transco and local gas distribution companies ("LDCs"). As FERC has long held—and basic economics dictates—precedent agreements are the best evidence of market need because they reflect market actors' actual investment-backed decisions. That reasoning applies as much to LDCs as other shippers. The panel's contrary decision is legally wrong and practically unworkable.

*Second*, the panel's decision on remedy at best departs starkly from, and at worst seems to rewrite, this Circuit's remedial jurisprudence. The panel oversold the extent of FERC's purported explanatory errors, which very likely will be cured on remand. It simultaneously undersold the disruptive consequences of vacating the certificate for an operational pipeline on which customers already rely. In so doing, the panel left circuit law in disarray. And if its decision stands, litigants can only conclude that this Court's remedial decisionmaking is little more predictable than a dice roll.

2

Either of these errors alone warrants rehearing. But in combination—and along with the panel's numerous other errors—the basis for rehearing is overwhelming.

## ARGUMENT

### I.    The Panel's Decision on Market Need Conflicts with Circuit Precedent and Threatens to Undermine the Natural Gas Act's Division of Federal and State Authority.

#### A.    The Panel's Treatment of Precedent Agreements with LDCs Departs from Longstanding Caselaw and FERC Policy.

FERC has long treated contracts for pipeline capacity as principal indicators of market need. *See In re Kansas Pipe Line & Gas Co.*, 2 FPC 29, 40-41 (1939). That approach wisely recognizes that the best evidence of *market need* is actual, binding decisions of *market actors* to purchase pipeline capacity on a long-term basis. After all, "[i]f there were no objective market demand for the additional gas, no rational company would spend money to secure the excess capacity." *Twp. of Bordentown, N.J. v. FERC*, 903 F.3d 234, 262-63 (3d Cir. 2018). Consistent with this common-sense and longstanding approach, this Court has repeatedly affirmed market need determinations where most or all of a pipeline's capacity is subscribed under precedent agreements. *See, e.g.*, *Food & Water Watch v. FERC*, 104 F.4th 336, 347 (D.C. Cir. 2024).

Moreover, "it is Commission policy to not look behind precedent or service agreements to make judgments about the needs of individual shippers." *Myersville*

3

*Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1311 (D.C. Cir. 2015) (citation omitted). That makes eminent sense because market participants are generally best positioned to judge their own needs, and their actions (here, binding financial commitments) speak louder than words (e.g., market studies, which can be subjective and biased). *Accord NEXUS Gas Transmission, LLC*, 164 FERC ¶ 61,054, P 34 (2018) (concluding same), *pets. for review granted in part on other grounds*, *City of Oberlin, Ohio v. FERC*, 937 F.3d 599 (D.C. Cir. 2019). This Court and others have repeatedly affirmed FERC's policy against second-guessing market actors' financial-commitment-backed judgments. *See, e.g.*, *Myersville*, 783 F.3d at 1311; *Twp. of Bordentown*, 903 F.3d at 262-63.[2]

But in stark deviation from this well-established understanding, the panel decision cast doubt on whether precedent agreements with LDCs are "probative of market need." Slip Op. 26 n.9. It is difficult to overstate how dramatically that skepticism conflicts with decades of practice, and profoundly misunderstands the natural gas supply chain.

Serving LDCs is a core function of interstate natural gas pipelines, and LDC agreements account for an enormous percentage of their contracted capacity. *See*

---

[2] *Environmental Defense Fund v. FERC*, 2 F.4th 953 (D.C. Cir. 2021), is not to the contrary. That case dealt with concerns about "self-dealing" that may sometimes arise with precedent agreements between affiliates. *Id.* at 975. Such concerns are not present with the LDC contracts here.

4

*generally* INGAA Comments, Ex. A at 4-5, *Technical Conference on Greenhouse Gas Mitigation*, FERC Docket No. PL21-3-000 (Jan. 7, 2022), https://tinyurl.com/2yezrcna. Moreover, because LDCs need the utmost assurances to maintain reliable service for homes and businesses, they generally purchase firm rather than interruptible transportation, and thus represent "anchor" shippers upon which projects rely to secure financing. *Id.* at 4. LDCs, moreover, are the servers of "last resort" in their service territories and must stand ready to distribute natural gas even during winter's coldest days, when heating demand peaks. *See id.* To question the probative value of LDC precedent agreements would essentially call into doubt the vast majority of precedent agreements on a capacity-weighted basis, hollowing out FERC's longstanding reliance on such agreements as the best evidence of need.

The panel's skepticism toward the precedent agreements here was motivated by the observation that LDCs (like many utilities) have "captive ratepayers." Slip Op. 25-26. The panel, however, failed to recognize that the regulatory system—in New Jersey, as elsewhere—already safeguards against potential abuses of market power by LDCs through prudency reviews by state utility regulators. If an LDC incurs imprudent costs (e.g., purchasing pipeline capacity in an irresponsible or self-serving manner), its state regulator would deny cost recovery through the LDC's rates. No costs of the pipeline will be passed on to the LDC's customers if the state regulator (here, the New Jersey Board of Public Utilities) finds that the service

contract was imprudent. Indeed, FERC granted clarification on precisely this point below. Rehearing Order at PP 27-28, JA809.

Prudency reviews align utilities' incentives with those of their customers, so utilities ultimately bear the cost of imprudent business judgments. While that does not mean an LDC can *never* make a mistake in its purchasing decisions, the same is true of any business, no matter how competitive the market. The dispositive point, with respect to precedent agreements' evidentiary value, is that regulated utilities have the same incentive as businesses in competitive markets to buy only capacity they need—because if they make an unsound judgment, shareholders bear the loss.

If perpetuated, the panel's skepticism toward precedent agreements would grossly undermine regulatory stability and chill investment. Pipelines could not be confident that long-term, binding precedent agreements would be sufficient to avoid rejection or reversal for lack of demonstrated market need. Instead, every case would become a "battle of experts" before FERC—i.e., a duel between subjective, likely biased market studies—that would then be repeated *again* on appeal. The predictability inherent in a system based on objective assessment of clear market signals (rather than speculative studies) would be lost. That, in turn, would deprive pipelines of the regulatory certainty needed to reliably secure financing—and thus undermine FERC's ability to carry out its paramount statutory charge to ensure the

6

"orderly development of plentiful supplies of . . . natural gas at reasonable prices." *NAACP v. FPC*, 425 U.S. 662, 669-70 (1976).

**B.    The Panel Decision Undermines the Natural Gas Act's Division of State and Federal Authority.**

The panel's disregard for longstanding caselaw on the value of precedent agreements is bad enough. But its decision, if taken to its logical conclusion, could have more profound consequences still—effectively scrambling the Natural Gas Act's ("NGA") careful division of federal-state authority.

The NGA is "drawn with meticulous regard for the continued exercise of state power." *ONEOK, Inc. v. Learjet, Inc.*, 575 U.S. 373, 384-85 (2015) (citation omitted). It thus expressly excludes from FERC's authority "the local distribution of natural gas." 15 U.S.C. § 717(b). In short, FERC is not responsible for retail rates or policies on how (or how much) natural gas should be used in local markets. Rather, it is responsible for ensuring a healthy interstate market that provides downstream entities, such as LDCs, with access to reliable, reasonably priced supplies.

The panel's opinion at best ignores the NGA's division of federal-state responsibility, and at worst implicitly asks FERC to exceed its jurisdiction. The panel's treatment of New Jersey legislation on natural gas usage is the clearest example. Slip Op. 26-27. While New Jersey law calls for reductions in use of natural gas, it is the responsibility of LDCs and the New Jersey Board of Public Utilities to develop specific reduction plans. Transco Reh'g Pet. 7-8. Here, FERC was

7

confronted with demonstrable demand for additional transportation capacity from New Jersey LDCs, as evidenced by precedent agreements. If usage of that capacity later proves inconsistent with implementation of New Jersey law—by no means an obvious or expected outcome—that is for state authorities to resolve. Were FERC to decide otherwise by effectively vetoing LDCs' ability to access additional natural gas from interstate pipelines (like the Project), it would essentially be donning the mantle of a local-distribution regulator by deciding the preferred pathway for New Jersey LDCs to achieve state-law targets—something Congress clearly forbade.

The panel's discussion of market studies threatens the same effacement of Congress' division between federal and state authority. The panel decision appears to contemplate FERC relying on subjective market studies to second-guess New Jersey LDCs' judgments that they need more firm capacity to ensure reliability. Slip Op. 21-24. That would effectively ask FERC to look behind LDCs' demonstrated demand for capacity and assess for itself whether LDCs "really need" the capacity. But that endeavor is already captured through state prudency reviews. Moreover, such judgment calls necessarily entail, among other things, deciding how to balance cost concerns for ratepayers against the risk of catastrophic outages or other adverse consequences from capacity crunches during peak-demand situations. Under Congress' express design, those are business and policy judgments for LDCs and their state regulators—not FERC.

8

## II.    The Panel's Remedial Decision Was Wrong, and Rehearing Is Needed to Clarify the *Allied-Signal* Test.

In vacating the Project's certificate, the panel decision at best departed starkly from, and at worst seems to rewrite, this Circuit's remedial jurisprudence. True, the panel accurately cited the two-part test under *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). Slip Op. 30-31. But it misapplied both prongs of that test, thereby reaching an incorrect outcome and leaving circuit law in disarray.

As to the likelihood that FERC can reach the same conclusion on remand, the panel simply noted that FERC's purported errors relate to its application of the NGA's public-interest standard. Slip Op. 31. But even assuming such errors, it is not credible that FERC, on remand, would not find market need for the Project. As Transco explains, allowing the Project's certificate to lapse would threaten to shut down significant capacity already serving current needs, including the needs of customers being served *before the Project was even built*—going into a winter season when gas demand in the Northeast is at its highest. Transco Reh'g Pet. 15.

Disregarding these realities, the panel found vacatur warranted because it was "[un]clear" whether "FERC's failure . . . is only one of explanation." Slip Op. 31. But the lack of an *absolutely clear* outcome on remand is not the standard. Rather, even a significant likelihood of substantiation on remand cuts *against* vacatur. *See Healthy Gulf v. FERC*, 107 F.4th 1033, 1047-48 (D.C. Cir. 2024) (remanding

9

without vacatur where "reasonably likely" NEPA errors "can" be corrected) (citation omitted); *Food & Water Watch v. FERC*, 28 F.4th 277, 292 (D.C. Cir. 2022) (similar); *City of Oberlin*, 937 F.3d at 611 (similar). By treating even the possibility of a different bottom-line decision on remand sufficient for vacatur, the panel effectively stacked the deck in a manner unprecedented under this Court's caselaw.

The panel's analysis of vacatur's disruptive consequences is even worse. The panel asserted that remand without vacatur is warranted in the face of purportedly "pervasive[]" agency errors "only in rare instances." Slip Op. 32. But the sole authority cited for that proposition—*North Carolina v. EPA*, 550 F.3d 1176 (D.C. Cir. 2008) (per curiam)—stands for the *opposite* conclusion. In *North Carolina*, the panel found "more than several fatal flaws" in the challenged rule, yet decided (on rehearing) to remand *without* vacatur due to the gravity of potential disruptive consequences. *Id.* at 1177-78 (citation omitted). The panel here flipped *North Carolina* on its head, while purporting to follow that binding precedent—a textbook basis for rehearing. The panel, moreover, did not acknowledge that this Court often remands without vacatur when reviewing authorizations for projects that are *not* yet operational, and where disruptive consequences would thus generally be less severe than here. *See, e.g.*, *Healthy Gulf*, 107 F.4th at 1047-48. The panel's remedial analysis cannot rationally be reconciled with such decisions—and the only inference parties can reasonably draw is that the *Allied-Signal* test has been reduced to the

10

equivalent of a dice roll. Rehearing is needed to correct the panel's error and the disorder it has created in this area of law.

Finally, the panel's observation that "this Court's review of Certificate Orders for pipeline projects often occurs at least one year after the pipeline's construction has begun" warrants comment. Slip Op. 32. Respectfully, insofar as the opinion expresses frustration that construction generally moves forward during post-permitting appellate review—rather than, say, waiting for judicial "preclearance"—that is a disagreement with Congressional design. The NGA's text explicitly makes certificates effective when issued—absent an interim stay—notwithstanding any post-issuance review. *See* 15 U.S.C. § 717r(c). That wise design reflects the realities of infrastructure development (e.g., contracting, financing, additional permitting). Simply put, projects cannot routinely wait on multi-year post-permitting review processes before pressing forward, at least not without grinding energy infrastructure development to an ineffective crawl.

Regardless, there simply is no need to undermine this Court's long-established remand-without-vacatur jurisprudence to ensure an opportunity for effective and timely review. Among other things, parties can, and routinely do, seek stays pending review. True, standards for a stay are demanding, and stays are appropriately rare. But the availability of such interim measures cautions against weakening this Court's remedial jurisprudence. In fact, a stay was sought *in this very case*, less than

11

one week after FERC authorized pre-construction tree-felling. Pet'rs' Emergency Motion for Stay, No. 23-1064 (Doc. 1991174) (D.C. Cir. Mar. 21, 2023). A motions panel, which included two of the three judges on the merits panel, denied a stay. Order, No. 23-1064 (Doc. 1992981) (D.C. Cir. Apr. 3, 2023). The panel's observations about the length of appellate review thus provide no basis to warp *Allied-Signal* or place a thumb on the scale against pipelines.

## CONCLUSION

Transco's petition should be granted.

Date: September 20, 2024

Respectfully submitted,

/s/ Matthew X. Etchemendy

Joan Dreskin
Christopher Smith
INTERSTATE NATURAL GAS
     ASSOCIATION OF AMERICA
25 Massachusetts Avenue, NW
Suite 500N
Washington, DC 20001
Phone: 202.216.5900
Email: jdreskin@ingaa.org
Email: csmith@ingaa.org

*Counsel for Interstate Natural Gas Association of America*

Matthew X. Etchemendy
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6740
Email: metchemendy@velaw.com

*Counsel for* Amici Curiae

12

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because this brief contains 2,580 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), as determined by the word-counting feature of Microsoft Word.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

 Date: September 20, 2024                    Respectfully submitted,


                                            */s/ Matthew X. Etchemendy*
                                            Matthew X. Etchemendy
                                            VINSON & ELKINS LLP
                                            2200 Pennsylvania Avenue, NW
                                            Suite 500 West
                                            Washington, DC 20037
                                            Phone: 202.639.6740
                                            Email: metchemendy@velaw.com

                                            *Counsel for* Amici Curiae

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that, on September 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

Date: September 20, 2024                          Respectfully submitted,


                                                  */s/ Matthew X. Etchemendy*
                                                  Matthew X. Etchemendy
                                                  VINSON & ELKINS LLP
                                                  2200 Pennsylvania Avenue, NW
                                                  Suite 500 West
                                                  Washington, DC 20037
                                                  Phone: 202.639.6740
                                                  Email: metchemendy@velaw.com

                                                  *Counsel for* Amici Curiae

14