**ORAL ARGUMENT HELD ON MARCH 15, 2024**

Nos. 23-1064, 23-1074, 23-1077, 23-1129, 23-1130, 23-1137 (consolidated)
—————————————————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
—————————————————————————

NEW JERSEY CONSERVATION FOUNDATION, *et al.*,

*Petitioners,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent,*

NEW JERSEY DIVISION OF RATE COUNSEL, *et al.*,

*Intervenors.*
—————————————

On Petitions for Review of Orders of the Federal Energy Regulatory Commission
—————————————

**BRIEF OF *AMICUS CURIAE* ENBRIDGE (U.S.) INC. IN SUPPORT OF INTERVENOR TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

> Jeremy C. Marwell
> Nathan Campbell
> VINSON & ELKINS LLP
> 2200 Pennsylvania Avenue, NW
> Suite 500 West
> Washington, DC 20037
> Phone: 202.639.6507
> Email: jmarwell@velaw.com
> Email: ncampbell@velaw.com
>
> *Counsel for* Amicus Curiae
> *Enbridge (U.S.) Inc.*

September 20, 2024

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *amicus curiae* submits this certificate as to parties, rulings, and related cases:

### A.      PARTIES AND *AMICI*

All parties, intervenors, and *amici* appearing in this Court are listed in the Petition for Panel Rehearing and Rehearing En Banc of Intervenor Transcontinental Gas Pipe Line Company, LLC ("Transco").

### B.      RULINGS UNDER REVIEW

References to the rulings at issue appear in the Brief for Respondent Federal Energy Regulatory Commission.

### C.      RELATED CASES

The case on review has not previously been before this Court. Counsel is unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

Date: September 20, 2024                    Respectfully submitted,


                                           */s/ Jeremy C. Marwell*
                                           Jeremy C. Marwell
                                           VINSON & ELKINS LLP
                                           2200 Pennsylvania Avenue, NW
                                           Suite 500 West
                                           Washington, DC 20037
                                           Phone: 202.639.6507
                                           Email: jmarwell@velaw.com

                                           *Counsel for* Amicus Curiae
                                           *Enbridge (U.S.) Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29, and D.C. Circuit Rule 26.1, Enbridge (U.S.) Inc. makes the following disclosures:

1.      Enbridge (U.S.) Inc. is Delaware corporation. It is a direct, wholly owned subsidiary of Enbridge US Holdings, Inc., which is a direct, wholly owned subsidiary of Enbridge Inc., which is a diversified energy company headquartered in Calgary, Canada. Enbridge (U.S.) Inc.'s holdings include natural gas pipelines regulated by the Federal Energy Regulatory Commission.

2.      Enbridge Inc. is a publicly traded company that trades on the New York and Toronto stock exchanges. Enbridge Inc. has no parent companies, and no publicly held company owns a 10 percent or greater interest in Enbridge Inc.

Date: September 20, 2024

Respectfully submitted,

*/s/ Jeremy C. Marwell*
Jeremy C. Marwell
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6507
Email: jmarwell@velaw.com

*Counsel for* Amicus Curiae
*Enbridge (U.S.) Inc.*

## CERTIFICATE OF COUNSEL REGARDING SEPARATE BRIEFING[*]

Pursuant to D.C. Circuit Rule 29(d), counsel for *amicus curiae* certify that, to their knowledge, no other non-government *amicus* brief of which they are aware focuses on the precise topics addressed in this brief: (1) the cascading disruption to the interstate natural gas pipeline network that would result from vacatur and loss of Federal Energy Regulatory Commission ("FERC") authorization for upgraded pipeline facilities that have been incorporated into the operating grid, and (2) how the panel split from prior precedent and disrupted norms of horizontal stare decisis by holding that FERC "violated NEPA by failing to assess significance regarding [greenhouse gas] emissions." As a leading midstream pipeline company that owns or operates more than 23,500 miles of gas transmission pipelines in the United States and Canada, and that transports about 20% of all natural gas consumed in the United States, Enbridge is well-situated to provide the Court broader context and a unique perspective on the issues presented in this case. *Amicus* has endeavored to coordinate with other prospective *amici* and with Intervenor Transcontinental Gas Pipe Line Company, LLC to avoid duplicative briefing.

---

[*] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), no counsel for any party authored this brief in whole or in part, and no party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No person other than *amici curiae*, their members, or their counsel contributed money intended to fund the brief's preparation or submission.

Date: September 20, 2024                    Respectfully submitted,


                                           */s/ Jeremy C. Marwell*
                                           Jeremy C. Marwell
                                           Nathan Campbell
                                           VINSON & ELKINS LLP
                                           2200 Pennsylvania Avenue, NW
                                           Suite 500 West
                                           Washington, DC 20037
                                           Phone: 202.639.6507
                                           Email: jmarwell@velaw.com

                                           *Counsel for* Amicus Curiae
                                           *Enbridge (U.S.) Inc.*

## **TABLE OF CONTENTS**

**Page**

Certificate as to Parties, Rulings, and Related Cases ................................................i

Corporate Disclosure Statement ............................................................. iii

Certificate of Counsel Regarding Separate Briefing ................................iv

Table of Authorities .......................................................................... vii

Glossary ...........................................................................................ix

Interest of *Amicus Curiae* .....................................................................1

Introduction........................................................................................1

Argument ...........................................................................................2

    I.    The panel fundamentally misjudged the severe disruptive consequences of vacating the operating license for pipeline upgrades that have been integrated into the pipeline grid. .......................................2

        A.    Vacatur's disruptive impacts will sweep far beyond the specific upgrades challenged here..........................................3

        B.    The panel decision will chill a broad range of beneficial pipeline improvement projects.........................................5

        C.    The panel decision ignores vacatur's grave consequences for human health and welfare. .............................................6

    II.    The panel's NEPA "significance" holding deepens an intra-circuit split and reflects a destabilizing view of horizontal stare decisis. .............7

        A.    The panel's holding conflicts with prior Circuit precedent and destabilizes review of agency action..............................7

        B.    The panel's significance holding sweeps far beyond what was required to decide the case. ..........................................11

Conclusion ......................................................................................12

Certificate of Compliance...................................................................13

Certificate of Service ........................................................................14

# TABLE OF AUTHORITIES

**Cases:**                                                                                      **Page(s)**

\* *Ala. Mun. Distribs. Grp. v. FERC*,
    100 F.4th 207 (D.C. Cir. 2024)..................................................................7, 8

*Allied-Signal v. U.S. Nuclear Regul. Comm'n*,
    988 F.2d 146 (D.C. Cir. 1993) .................................................................2

\* *Food & Water Watch v. FERC*,
    104 F.4th 336 (D.C. Cir. 2024) ........................................... 7, 8, 12

*Healthy Gulf v. FERC*,
    107 F.4th 1033 (D.C. Cir. 2024) ............................................ 8, 9, 12

*North Carolina v. EPA*,
    550 F.3d 1176 (D.C. Cir. 2008) .........................................................2, 3

*Sierra Club v. FERC*,
    827 F.3d 36 (D.C. Cir. 2016) ...............................................................10

*Town of Weymouth v. FERC*,
    No. 17-1135, 2018 WL 6921213 (D.C. Cir. Dec. 27, 2018) ...............5

*UC Health v. NLRB*,
    803 F.3d 669 (D.C. Cir. 2015) ...............................................................9

**Administrative Cases:**

*Algonquin Gas Transmission, LLC*,
    158 FERC ¶ 61,061 (2017) ...................................................................5

*N. Nat. Gas Co.*,
    174 FERC ¶ 61,189 (2021) ...................................................................8

*Texas E. Transmission, LP*,
    139 FERC ¶ 61,138 (2012) ...................................................................6

**Statutes:**

15 U.S.C. § 717f(b) ...................................................................................4

**Other Authorities:**

B.A. Wells & K.L. Wells, *Big Inch Pipelines of WWII*, Am. Oil & Gas Hist.
    Soc'y, https://perma.cc/K788-4522 (last updated July 26, 2024) .......6

**\*Authorities upon which we chiefly rely are marked with asteriks.**

**Other Authorities:** **Page(s)**

FERC et al., *Inquiry into Bulk-Power System Operations During December 2022 Winter Storm Elliott* (2023), https://perma.cc/FGB4-6S43 ........................7

Opening Br. for Pet'rs Sierra Club and Healthy Gulf, *Ala. Mun. Distribs. Grp. v. FERC*, 100 F.4th 207 (D.C. Cir. 2023) (No. 22-1101), Doc. 1996634 ...................................................................................................8

## GLOSSARY

As used herein,

**Dth/day** means dekatherms per day;

**Enbridge** means Enbridge (U.S.) Inc.;

**FERC** means the Federal Energy Regulatory Commission;

**GHG** means greenhouse gas;

**INGAA Br.** means Brief of *Amici Curiae* Interstate Natural Gas Association of America, Marcellus Shale Coalition, GPA Midstream Association, New Jersey Chamber of Commerce, and Chemistry Council of New Jersey in Support of Intervenor Transcontinental Gas Pipe Line Company, LLC's Petition for Panel Rehearing and Rehearing En Banc (Sept. 20, 2024);

**NEPA** means the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*;

**Transco** means Transcontinental Gas Pipe Line Company, LLC;

**Reh'g Pet.** means Intervenor Transcontinental Gas Pipe Line Company, LLC's Petition for Panel Rehearing and Rehearing En Banc (Doc. 2074528) (Sept. 13, 2024).

## INTEREST OF *AMICUS CURIAE*

Enbridge (U.S.) Inc. ("Enbridge") is one of North America's leading transporters of natural gas, and its holdings include numerous natural gas pipelines regulated by the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act. With more than 23,500 miles of gas transmission pipelines in the United States and Canada, and transporting nearly a fifth of all natural gas consumed in the United States, Enbridge has extensive, first-hand experience with the development and operation of FERC-jurisdictional interstate natural gas transportation projects, and can offer a unique perspective on the issues presented for rehearing.

## INTRODUCTION

The panel's decision to vacate the operating license for key components of a critical natural gas artery into major population centers has sent shockwaves through the industry. Rehearing is urgently warranted, as Transcontinental Gas Pipe Line Company ("Transco") explains. Enbridge adds two key points: *First,* the panel seriously misjudged the system-wide disruptive impacts of vacating a FERC certificate for pipeline expansion components that have been fully integrated into the operating pipeline grid. *Second*, the panel decision widens a sharp intra-Circuit split regarding FERC's obligation to make a binary (i.e., yes/no) judgment about

1

whether greenhouse gas ("GHG") emissions associated with a project are "significant" under the National Environmental Policy Act ("NEPA").[1]

## ARGUMENT

**I.      The panel fundamentally misjudged the severe disruptive consequences of vacating the operating license for pipeline upgrades that have been integrated into the pipeline grid.**

Rehearing is necessary to correct the panel's misapplication and distortion of the remedial framework from *Allied-Signal v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993). The panel invoked a new standard for remand without vacatur that is all but impossible to meet, and seemingly unmoored from any meaningful effort to engage with the disruptive consequences stemming from vacatur. *Compare* Slip Op. 32, *with North Carolina v. EPA*, 550 F.3d 1176, 1177-78 (D.C. Cir. 2008) (per curiam). This hair-trigger vacatur standard is untenable given the number of federal agency-issued permits and authorizations subject to this Court's review. *See generally* INGAA Br. 9-12.

Critically, the panel misapprehended, and severely underestimated, the practical and operational disruptions that would arise from vacatur and loss of FERC authorization for pipeline-network improvements that have already been constructed and placed into service. This Court has granted rehearing and changed its remedy to

---

[1] Enbridge also joins in the arguments of the Interstate Natural Gas Association of America *et al.* as *amici curiae* on rehearing.

remand *without* vacatur where a panel's initial "remedy analysis … did not adequately take into account" the "serious [disruptive] implications" that were drawn to the Court's attention on rehearing. *North Carolina*, 550 F.3d at 1178 (Rogers, J., concurring in granting rehearing in part). It should do so again here.

A.    **Vacatur's disruptive impacts will sweep far beyond the specific upgrades challenged here.**

The challenged orders authorized certain incremental improvements and expansions to Transco's existing pipeline network: the removal and abandonment of 13 obsolete compressor units, and their replacement with four new compressor units offering greater compression power, with decreased air emissions and fuel consumption. FERC also authorized improvements to other existing equipment and construction of 35 miles of pipeline "loops"—i.e., segments of pipe constructed in parallel to, and then tied into, existing lines. *See* JA542, 563-64.

As a matter of engineering and fluid dynamics, the project is not a discrete, isolated unit (like a spur serving a single customer) that might be "turned off and on" without affecting the broader pipeline network. To suggest otherwise ignores the integrated nature of pipeline networks and the interdependence of their component parts, as well as the flexibilities and synergies created by incremental improvements.

As Transco explains, *see* Reh'g Pet. 4-5, 15-16, if it loses authorization to operate the project facilities, and is forced to take them offline, the disruption would negatively affect the system's broader reliability and integrity, harming customers

3

who have nothing to do with the incremental expansions challenged here. This is because some preexisting facilities (i.e., obsolete compressor units) no longer exist, while other facilities have been physically modified and no longer exist in their pre-project state. If Transco attempted to remove those incremental improvements from service, the inevitable effect would be to degrade service far below the pre-project baseline: although the challenged improvements created only an additional 829,400 dekatherms per day ("Dth/day") of capacity, their removal now would reduce capacity by over 2,000,000 Dth/day. Reh'g Pet. 4. Simply put, gas cannot flow through pipeline "facilities" that no longer exist in pre-authorization form.

The panel's seemingly instinctive resort to vacatur also ignores Congress's judgment about how best to address delicate considerations associated with the removal and abandonment of operating pipeline facilities. Congress charged FERC with that task, requiring that "[n]o natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission … and a finding by the Commission that … the present or future public convenience or necessity permit such abandonment." 15 U.S.C. § 717f(b). A too-quick resort to judicial vacatur undercuts FERC's ability to maintain the integrity of the pipeline grid by controlling the addition *and subtraction* of facilities.

4

**B.    The panel decision will chill a broad range of beneficial pipeline improvement projects.**

These concerns are not unique to this case. Incremental improvement projects are commonplace in the midstream pipeline industry, which seeks to respond to increasing demand while, where possible, avoiding impacts to the environment and landowners. Incremental improvements to existing systems can in some cases have fewer effects on landowners and the environment, and can be more readily permitted and built, than "greenfield" projects. Yet the panel decision increases the risk and costs of incremental projects, with the specter of after-the-fact vacatur jeopardizing not only improvements, but also baseline service conditions. The panel's dismissive approach to the serious disruptive consequences of vacatur sets a dangerous precedent that will chill financing and development of other incremental expansion projects. That is why Enbridge, a competitor of Transco, submits this brief.

To illustrate, one Enbridge pipeline undertook the "Atlantic Bridge" Project to meet the Northeast's growing demand for natural gas. The project entailed targeted upgrades and replacements along the existing pipeline system, including removal and replacement of existing pipeline segments, and upgrades and improvements to existing compressor units. *Town of Weymouth v. FERC*, No. 17-1135, 2018 WL 6921213, at *1 (D.C. Cir. Dec. 27, 2018) (per curiam); *Algonquin Gas Transmission, LLC*, 158 FERC ¶ 61,061, at PP 5-6 (2017). Like here, where Transco abandoned and replaced older compressors, significant disruption would

have resulted if a court had vacated the FERC authorization after the pipeline had already removed and replaced segments of pipe and constructed other system elements.

So too with Texas Eastern Transmission, LP's New Jersey-New York expansion project, which involved construction of a critical pipeline segment under the Hudson River diversifying gas supply into Manhattan. That project also required the abandonment and replacement of pre-existing segments of pipe and appurtenant facilities in New Jersey and New York, *Texas E. Transmission, LP*, 139 FERC ¶ 61,138, at P 7 (2012), meaning that vacatur could have posed serious disruptions.[2]

### C.      The panel decision ignores vacatur's grave consequences for human health and welfare.

Even putting aside impacts on infrastructure companies and their direct customers (e.g., gas and electric utilities), the panel's suggestion that vacatur might cause only "some disruption," Slip Op. 32, blinks reality. Particularly so in highly capacity-constrained regions such as the Mid-Atlantic and Northeast, where taking over 2,000,000 Dth/day of pipeline capacity offline threatens the availability of natural gas supply on which millions rely for heating, cooking, and electricity. This

---

[2] Because Texas Eastern's system originated as the "Big Inch" petroleum pipeline constructed in 1942-43 and central to Allied victory in World War II, the number of incremental improvements since then are myriad. *See* B.A. Wells & K.L. Wells, *Big Inch Pipelines of WWII*, Am. Oil & Gas Hist. Soc'y, https://perma.cc/K788-4522 (last updated July 26, 2024).

Court should give the most serious consideration to the potentially calamitous effects of crippling one of the nation's largest natural gas arteries serving major population centers, heading into peak winter demand season. The risks to human welfare and life when electricity and natural gas supplies are interrupted during periods of extreme weather, especially winter weather, cannot be ignored. *See* FERC et al., *Inquiry into Bulk-Power System Operations During December 2022 Winter Storm Elliott* 5-6, 9-11 (2023), https://perma.cc/FGB4-6S43 (describing prolonged, widespread power outages during Winter Storms Elliott and Uri, attributed in part to unavailability of natural gas due to "freeze-off" production declines; Winter Storm Uri resulted in 200 to 800 deaths).

## II.    The panel's NEPA "significance" holding deepens an intra-circuit split and reflects a destabilizing view of horizontal stare decisis.

### A.    The panel's holding conflicts with prior Circuit precedent and destabilizes review of agency action.

Prior to this case, this Court had repeatedly rejected arguments that NEPA requires FERC to make a binary (i.e., yes/no) significance determination on GHG emissions. *See Ala. Mun. Distribs. Grp. v. FERC*, 100 F.4th 207, 214-15 (D.C. Cir. 2024); *Food & Water Watch v. FERC*, 104 F.4th 336, 346-47 (D.C. Cir. 2024). In *Alabama Municipal*, petitioners' arguments on significance closely tracked those here: (1) "FERC's refusal to pass judgment on the significance of greenhouse gas emissions was arbitrary," and (2) FERC erred in not making "an ad hoc

7

[significance] determination," as in *Northern Natural Gas Co.*, 174 FERC ¶ 61,189 (2021). *See* Opening Br. for Pet'rs Sierra Club and Healthy Gulf at 55-57, 59, *Ala. Mun. Distribs. Grp. v. FERC*, 100 F.4th 207 (D.C. Cir. 2024) (No. 22-1101), Doc. 1996634 (capitalization omitted). The *Alabama Municipal* panel unanimously rejected those arguments, holding that "[a]ll of FERC's decisions"—necessarily including on significance—were "reasonable and reasonably explained." 100 F.4th at 215.

*Food & Water* unanimously followed suit and provided a more detailed supporting rationale, where FERC's orders took virtually the same approach as those challenged here: quantifying GHG emissions, placing them in context, and providing social cost of carbon estimates. 104 F.4th at 346. The panel emphasized that FERC's analysis went "well beyond" NEPA's requirements, and that FERC need not "label" GHG emissions as "either significant or insignificant." *Id.* The panel so held after explicitly recognizing that FERC had proposed (but subsequently withdrawn) a "policy statement" suggesting a significance threshold of 100,000 metric tons of GHG emissions per year, and in full recognition of FERC's *Northern Natural* precedent—holding that FERC's current approach "was . . . not arbitrary." *Id.* at 346-47.

Yet in *Healthy Gulf v. FERC*, 107 F.4th 1033 (D.C. Cir. 2024), and now here, different panels of this Court attempted to distinguish those precedents to reach a

diametrically opposed outcome. The distinguishing grounds, however, are illusory and rest on principles that depart from Circuit law. The panel here sidestepped *Food & Water*'s holding because FERC supposedly did not "dispute[]" in this case that NEPA *requires* a binary significance determination. Slip Op. 14-15; *see Healthy Gulf*, 107 F.4th at 1040 (same). That conclusion, however, is wrong by its own terms; FERC's orders stated that it had

> met its NEPA obligations and appropriately declined to label the emissions as significant or insignificant because it (1) fully disclosed the reasonably foreseeable GHG emissions associated with the project's construction, operation, and downstream emissions; (2) placed them in context; (3) identified climate impacts in the region; and (4) is actively conducting a generic proceeding to determine whether and how the Commission will conduct significance determinations going forward.

JA855. FERC's contemporaneous statement expresses a clear belief that it had no NEPA obligation to make a binary significance determination.

But the concern goes beyond the record of this case, because the panel's distinguishing rationale raises concerns about the Court's approach to precedent and stare decisis. Neither the panel here, nor in *Healthy Gulf*, cited authority establishing that an agency must affirmatively invoke generally applicable Circuit law to be afforded the benefit of a background legal rule in litigation. Indeed, Circuit law is to the contrary. *See UC Health v. NLRB*, 803 F.3d 669, 679 n.5 (D.C. Cir. 2015) ("[O]f course, parties cannot waive the correct interpretation of the law by failing to invoke it." (cleaned up)).

9

The *Chenery* doctrine precludes this Court from upholding agency action on grounds other than those upon which the agency contemporaneously relied. That proposition, however, neither extends to impose legal obligations under a statute that the agency is not specifically entrusted to administer (e.g., NEPA, which is addressed to all federal agencies), nor justifies setting aside agency action on a basis that goes beyond (and indeed, contradicts) Circuit law. *Chenery* applies only to "determinations specifically entrusted to an agency's expertise, not legal principles of the sort that a court usually makes." *Sierra Club v. FERC*, 827 F.3d 36, 49 (D.C. Cir. 2016) (internal quotation marks and citation omitted). Here, a decision upholding FERC's choice not to make a binary significance determination would "follow[] not from *de novo* factual findings or independent policy judgments, but from [this Court's] interpretation of NEPA," e.g., *Food & Water*, and does not "trench[] upon a determination specially entrusted to [FERC's] expertise." *Id.* (internal quotation marks and citation omitted).

Taken to its logical conclusion, the rationale here and in *Healthy Gulf* reflects a cramped, unworkable view of horizontal stare decisis, and invites panels to disregard Circuit precedent merely because an agency did not explicitly voice entitlement to a proposition of law. That notion will invite a proliferation of intra-Circuit splits, undermining the predictability and coherence of this Court's precedent. Practically speaking, it would mean that virtually identical challenges to

virtually identical agency decisions succeed or fail based on fine-grained parsing of parties' appellate briefs, and the composition of a particular panel. That does not yield a stable or rational regime for reviewing agency action, especially where billions of dollars in capital investment and the public's access to reliable, affordable energy resources are at stake.

### B. The panel's significance holding sweeps far beyond what was required to decide the case.

The panel began its analysis on a relatively narrow ground: FERC did not acknowledge a change in position from *Northern Natural*. Slip Op. 13. That proposition is factually dubious; FERC acknowledged parties' reliance on *Northern Natural* and explained why it was not making a significance determination. *See* JA854-55. Regardless, even if this Court does not revisit the failure-to-explain issue, it should amend its opinion to remove dicta that are unnecessary to the decision and could be understood to conflict with precedent.

To begin, the panel asserted that this project "will spur *enormous* GHG emissions," Slip Op. 13 (emphasis added), appearing to prejudge the "significance" question it nominally remanded for the agency to address; the panel gave no standard or threshold to support its apparent view about how to judge one project's relative contribution to global climate change. Also, the panel suggested that "it is established" that even where an agency prepares an environmental impact statement, "it is 'essential' under NEPA that FERC make a significance determination [for

11

GHG emissions].” Slip Op. 15 (quoting *Food & Water*, 104 F.4th at 346). But *Food & Water* says just the opposite: a “finding of no significant impact … is immaterial where the agency simply prepares the EIS,” and NEPA regulations do not “require an agency to classify every environmental impact as significant or insignificant.” *Food & Water*, 104 F.4th at 346. The panel’s dictum on FERC’s supposed obligation to make a freestanding “significance” determination is wrong and irreconcilable with controlling prior precedent.

## CONCLUSION

Transco’s petition should be granted.

Date: September 20, 2024                    Respectfully submitted,

                                            */s/ Jeremy C. Marwell*
                                            Jeremy C. Marwell
                                            Nathan Campbell
                                            VINSON & ELKINS LLP
                                            2200 Pennsylvania Avenue, NW
                                            Suite 500 West
                                            Washington, DC 20037
                                            Phone: 202.639.6507
                                            Email: jmarwell@velaw.com
                                            Email:  ncampbell@velaw.com

                                            *Counsel for* Amicus Curiae
                                            *Enbridge (U.S.) Inc.*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because this brief contains 2,590 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), as determined by the word-counting feature of Microsoft Word.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

Date: September 20, 2024            Respectfully submitted,


                                   */s/ Jeremy C. Marwell*
                                   Jeremy C. Marwell
                                   VINSON & ELKINS LLP
                                   2200 Pennsylvania Avenue, NW
                                   Suite 500 West
                                   Washington, DC 20037
                                   Phone: 202.639.6507
                                   Email: jmarwell@velaw.com

                                   *Counsel for* Amicus Curiae
                                   *Enbridge (U.S.) Inc.*

13

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that, on September 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

Date: September 20, 2024                    Respectfully submitted,


*/s/ Jeremy C. Marwell*
Jeremy C. Marwell
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6507
Email: jmarwell@velaw.com

*Counsel for* Amicus Curiae
*Enbridge (U.S.) Inc.*

14