CASE DECIDED JULY 30, 2024

# In the United States Court of Appeals for the District of Columbia Circuit

### Nos. 23-1064, *et al.* (consolidated)

_____

NEW JERSEY CONSERVATION FOUNDATION, *ET AL.*,
*Petitioners*,

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

_____

ON PETITIONS FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION

_____

## RESPONSE OF RESPONDENT FEDERAL ENERGY REGULATORY COMMISSION IN SUPPORT OF PETITION FOR REHEARING *EN BANC*

_____

Matthew R. Christiansen
 General Counsel

Robert H. Solomon
 Solicitor

Lona T. Perry
 Deputy Solicitor
For Respondent
Federal Energy Regulatory
 Commission
Washington, D.C. 20426

November 1, 2024

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........................................................................ 1

ARGUMENT……… ...................................................................... 3

I.    The Panel's Rejection Of FERC's Finding Of Market Need Conflicts With Circuit And Supreme Court Precedent And Is Unsupported By The Record ............................................................ 3

    A.    The Commission's Reliance On Precedent Agreements ........ 3

    B.    The Commission's Evaluation Of Market Studies ................ 7

    C.    The Commission's Consideration Of New Jersey Climate Laws .......................................................................... 12

II.    The Panel's Finding That FERC Erred In Failing To Label Greenhouse Gas Emissions As Significant Conflicts With Circuit Precedent And Is Unsupported By The Record ............................ 14

III.    The Panel's Vacatur Of The Project Certificate Misapplied This Court's *Allied Signal* Precedent .................................................... 18

CONCLUSION……………… ................................................ 22

# TABLE OF AUTHORITIES

## <u>COURT CASES:</u>                                                    <u>PAGE</u>

*Alabama Municipal Distributors Group v. FERC,*
    100 F.4th 207 (D.C. Cir. 2024) .................................................. 15, 18

*Allied Signal, Inc. v. NRC,*
    988 F.2d 146 (D.C. Cir. 1993) ......................................................... 18

*Appalachian Voices v. FERC,*
    2019 WL 847199 (D.C. Cir. Feb. 19, 2019)....................................... 3

*Black Oak Energy v. FERC,*
    725 F.3d 230 (D.C. Cir. 2013) ........................................................ 20

*Center for Biological Diversity v. FERC,*
    67 F.4th 1176 (D.C. Cir. 2023)....................................................... 15

*City of Oberlin v. FERC,*
    937 F.3d 599 (D.C. Cir. 2019) .................................................... 3, 19

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ......................................................................... 8

*Delaware Riverkeeper Network v. FERC,*
    45 F.4th 104 (D.C. Cir. 2022)........................................................... 3

*Environmental Action, Inc. v. FERC,*
    939 F.2d 1057 (D.C. Cir. 1991) ...................................................... 12

*Environmental Defense Fund v. FERC,*
    2 F.4th 953 (D.C. Cir. 2021)............................................................. 6

*FERC v. Elec. Power Supply Ass'n,*
    577 U.S. 260 (2016) ......................................................................... 9

# TABLE OF AUTHORITIES

**<u>COURT CASES:</u>**                                                              **<u>PAGE</u>**

*Food & Water Watch v. FERC,*
    104 F.4th 336 (D.C. Cir. 2024) ................................ 3-4, 13-15, 17-18

*Food & Water Watch v. FERC,*
    28 F.4th 277 (D.C. Cir. 2022) ......................................................... 20

*Healthy Gulf v. FERC,*
    107 F.4th 1033 (D.C. Cir. 2024) ............................................ 15, 18-20

*Minisink Residents for Environmental Preservation
& Safety v. FERC,*
    762 F.3d 97 (D.C. Cir. 2014) ...................................................... 3, 8

*Myersville Citizens for a Rural Community, Inc. v. FERC,*
    783 F.3d 1301 (D.C. Cir. 2015) ...................................................... 3

*New Jersey Conservation Foundation v. FERC,*
    111 F.4th 42 (D.C. Cir. 2024) .......... 1, 3-4, 6-8, 10-13, 15, 17-18, 20

*Sierra Club v. FERC,*
    867 F.3d 1357 (D.C. Cir. 2017) ...................................................... 3

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474 (1951) ...................................................................... 8

*Vecinos para el Bienestar de la Comunidad Costera v. FERC,*
    6 F.4th 1321 (D.C. Cir. 2021) ....................................................... 20

*XO Energy MA, LP v. FERC,*
    77 F.4th 710 (D.C. Cir. 2023) ....................................................... 20

# TABLE OF AUTHORITIES

**ADMINISTRATIVE CASES:**                                    **PAGE**

*Consideration of Greenhouse Gas Emissions in Natural Gas
Infrastructure Project Reviews,*
    178 FERC ¶ 61,108, *converted to draft status,*
    178 FERC ¶ 61,197 (2022) ............................................................ 17

*Northern Natural Gas,*
    174 FERC ¶ 61,189 (2021) ............................................................ 17

*Transcontinental Gas Pipe Line Co., LLC,*
    182 FERC ¶ 61,006 (2023) ..........................................1, 4, 7-8, 11-14

*Transcontinental Gas Pipe Line Co., LLC,*
    182 FERC ¶ 61,148 (2023) ...........................................1, 4-14, 16-17

# GLOSSARY

| | |
|---|---|
| Certificate Order | *Transcontinental Gas Pipe Line Co., LLC,* 182 FERC ¶ 61,006 (2023) |
| Commission or FERC | Respondent Federal Energy Regulatory Commission |
| Decision | *New Jersey Conservation Foundation v. FERC*, 111 F.4th 42 (D.C. Cir. 2024) |
| GHGs | greenhouse gas emissions |
| LDC | local distribution company |
| NEPA | National Environmental Policy Act |
| Petition | Transcontinental Gas Pipe Line Company, LLC's Petition for Panel Rehearing and Rehearing *En Banc* |
| Project | Transco's Regional Energy Access Expansion |
| Rehearing Order | *Transcontinental Gas Pipe Line Co., LLC,* 182 FERC ¶ 61,148 (2023) |
| Transco | Intervenor Transcontinental Gas Pipe Line, LLC |

# In the United States Court of Appeals for the District of Columbia Circuit

Nos. 23-1064, *et al.* (consolidated)

————

NEW JERSEY CONSERVATION FOUNDATION, *ET AL.*,
*Petitioners*,

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

————

ON PETITIONS FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION

————

## RESPONSE OF RESPONDENT FEDERAL ENERGY REGULATORY COMMISSION IN SUPPORT OF PETITION FOR REHEARING *EN BANC*

————

## INTRODUCTION

Respondent Federal Energy Regulatory Commission (Commission or FERC) submits this response in compliance with the Court's Order of September 17, 2024, directing it to respond to the Petition for Rehearing *En Banc* (Petition) of Intervenor Transcontinental Gas Pipeline Line Company, LLC (Transco).

Transco's Petition seeks rehearing of *New Jersey Conservation Foundation v. FERC*, 111 F.4th 42 (D.C. Cir. 2024) (Decision), vacating

and remanding Commission orders granting a certificate of public

convenience and necessity for Transco's Regional Energy Access

Expansion project (Project).  *See Transcontinental Gas Pipe Line Co.,*

*LLC*, 182 FERC ¶ 61,006 (Certificate Order), *reh'g denied*, 182 FERC

¶ 61,148 (2023) (Rehearing Order).  As discussed below, the

Commission supports Transco's argument that the panel erred in

rejecting the Commission's finding of market need for the Project where

the Project is fully subscribed, largely by unaffiliated, state-regulated

gas utilities, and the Commission fully considered and discussed

competing market studies addressing market demand.  *See* Petition at

5-10.  The Commission supports Transco's argument that the panel's

rejection of the Commission's National Environmental Policy Act

(NEPA) analysis of greenhouse gas emissions (GHGs) was contrary to

circuit precedent and was premised on a purported distinction not based

in fact.  *Id*. at 11-12.  The Commission further supports Transco's

argument that, in ordering vacatur, the panel overstated the orders'

deficiencies and underestimated the disruptive consequences of vacatur

on both expansion shippers and on Transco's existing customers.  *Id*. at

14-15.

## ARGUMENT

I.  **The Panel's Rejection Of FERC's Finding Of Market Need Conflicts With Circuit And Supreme Court Precedent And Is Unsupported By The Record.**

### A.   The Commission's Reliance On Precedent Agreements

Under this circuit's precedent, as the panel acknowledged, precedent agreements for a project's capacity are always "'important evidence of demand for a project.'"  Decision at 60 (quoting *Minisink Residents for Env't Pres. & Safety v. FERC*, 762 F.3d 97, 111 n.10 (D.C. Cir. 2014)).  This Court has repeatedly upheld Commission orders finding market need based on precedent agreements.  *See, e.g.*, *Food & Water Watch v. FERC*, 104 F.4th 336, 347 (D.C. Cir. 2024); *Del. Riverkeeper Network v. FERC*, 45 F.4th 104, 114 (D.C. Cir. 2022); *City of Oberlin v. FERC*, 937 F.3d 599, 605-606 (D.C. Cir. 2019); *Appalachian Voices v. FERC*, 2019 WL 847199 at *1 (D.C. Cir. Feb. 19, 2019); *Sierra Club v. FERC*, 867 F.3d 1357, 1379 (D.C. Cir. 2017); *Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1311 (D.C. Cir. 2015); *Minisink*, 762 F.3d at 111 n.10.  This Court recently reiterated that precedent agreements "especially between

3

unaffiliated entities" are good evidence of market demand. *Food & Water Watch*, 104 F.4th at 347. *See* Petition at 7.

Following this precedent, the Commission reasonably concluded that Transco's execution of long-term precedent agreements with eight shippers—only one of which (a gas marketer) was a Transco affiliate—for 100 percent of Project capacity demonstrated market need for the Project. Certificate Order P 21, JA550; Rehearing Order P 30, JA810.

The panel rejected this determination, finding that FERC failed to "explain how precedent agreements with local gas distribution companies ("LDCs") provide assurance of market need if those same companies can pass on fixed pipeline construction costs to existing captive ratepayers while profitably selling any excess capacity to others, perhaps even at below-market prices." Decision at 59. But the Commission reasonably reached a different conclusion, finding that "generalized assertions of self-dealing" in the record did not undercut the probative value of the precedent agreements where there was no evidence of inappropriate LDC self-dealing, enriching shareholders at ratepayers' expense, or affiliate abuse. Rehearing Order PP 20, 67, JA805, 830. Petitioners' Opening Brief (at 63-67) relied on the Skipping

4

Stone market study at 3-4, 19-20, JA518-19, 534-35.  *See also* Reply at 7-8 (citing Skipping Stone study).  But the Skipping Stone study concluded only that "it is *conceivable* that the desire to generate shareholder revenues from subscribed capacity that was not needed, but nevertheless paid for by ratepayers, *could be* a significant factor driving an LDC to add to its capacity holdings beyond realistic need to meet ratepayer demand."  Study at 20, JA535 (emphasis added).  *See also id.* at 3-4, JA518-19 (stating that New Jersey LDCs are "potentially motivated" by Skipping Stone's "possible rationale").

As the Commission explained, the mere fact that unaffiliated LDCs serve captive ratepayers is not a basis to question the *bona fides* of their Project contracts.  States have jurisdiction over LDC contracts and can prevent LDCs from passing imprudent contract charges through to captive ratepayers.  Rehearing Order PP 27-28, 71, JA809, 832.  Indeed, here, the New Jersey Board of Public Utilities warned it might review the prudency of the New Jersey LDC Project contracts.  Opening Brief of New Jersey Rate Counsel at 28.  Thus, state regulation limits LDC's ability to pass on the costs of unneeded capacity to captive ratepayers.

Further, LDCs' ability to profit from capacity sales are likewise regulated. As the Commission noted, retail regulators tend to require that LDCs share the proceeds of secondary market sales with captive customers, which "further undercuts [petitioners'] assertion that profiteering on behalf of shareholders is the motive for the LDCs to contract for this capacity." Rehearing Order P 65 n.191, JA829. *See also* Brief of *Amici Curiae* Interstate Natural Gas Association of America, *et al.*, at 5-6.

This case therefore is not comparable to *Environmental Defense Fund v. FERC*, 2 F.4th 953 (D.C. Cir. 2021) (cited Decision at 60). There FERC failed to address "plausible evidence of self-dealing"— where "there is no new load demand, no Commission finding that a new pipeline would reduce costs, only a single precedent agreement in which the pipeline and shipper are corporate affiliates, the affiliated precedent agreement was entered into privately after no shipper subscribed during an open season, and the agreement is not for the full capacity of the pipeline." *Env't Def. Fund*, 2 F.4th at 973, 975. *See* Rehearing Order n.433, JA874 (distinguishing *Environmental Defense Fund*).

6

In contrast, here, the Project was 100 percent subscribed by eight shippers, seven of which (including six contracting LDCs) were unaffiliated (contracting for 82 percent of Project capacity). Rehearing Order n.433, JA874. In addition, the Commission identified other benefits of the Project, including that it would increase reliability and also provide cost savings by increasing supply diversity, findings which were supported by Transco's market study. Rehearing Order P 59, JA825. *See* Petition at 6.

## B.    The Commission's Evaluation Of Market Studies

The panel also held that, in finding market need for the Project, the Commission arbitrarily discredited the findings of the New Jersey and Skipping Stone market studies that current capacity is sufficient to meet New Jersey ratepayers' natural gas demands. Decision at 58. But the Commission's orders thoroughly considered the competing market studies submitted by the parties. Certificate Order PP 26-34, JA553-558; Rehearing Order PP 32-65, JA811-829. *See* Petition at 8. After weighing the relative strengths and weaknesses of the New Jersey, Skipping Stone and Transco studies, the Commission ultimately concluded that the Transco study was the most persuasive study in the

record with the fewest methodological deficiencies.  Rehearing Order
PP 36-41, JA813-817; Certificate Order P 34, JA558.  The panel's
disagreement with the Commission's weighing of the competing
studies—which the panel recognizes is entitled to "great deference,"
Decision at 59—is inconsistent with the well-settled bounds of the
substantial evidence standard and is contrary to the record.  *See*
Petition at 9-10.

FERC's factual findings are "conclusive" if "supported by
substantial evidence."  15 U.S.C. § 717r(b).  This standard "requires
more than a scintilla, but can be satisfied by something less than a
preponderance of the evidence."  *Minisink*, 762 F.3d at 108.  As this
standard requires "something less than the weight of the evidence," "the
possibility of drawing two inconsistent conclusions from the evidence
does not prevent an administrative agency's finding from being
supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383
U.S. 607, 620 (1966).  Under this standard, therefore, the panel may not
"displace [the agency's] choice between two fairly conflicting views, even
though the court would justifiably have made a different choice had the
matter been before it *de novo*."  *Universal Camera Corp. v. NLRB*, 340

8

U.S. 474, 488 (1951).  *See also FERC v. Elec. Power Supply Ass'n*, 577

U.S. 260, 292 (2016) (reviewing court "may not substitute [its] own

judgment for that of the Commission").

The panel's specific criticisms of the Commission's analysis reflect

the panel's failure to appreciate the nature of LDCs' required design

day planning.  LDCs structure their portfolios of gas supply and

transportation to assure they can meet customer needs under design

day conditions, which are the maximum expected demands under the

most severe weather assumptions.  Rehearing Order P 25 n.79, JA808.

LDC design day planning practices were developed under the

supervision of state regulators nationwide, to appropriately balance

"just and reasonable" rates with the need for LDCs to provide reliable

service to the homes, schools, hospitals and businesses that they supply.

Rehearing Order P 41, JA816.

Importantly—*by definition*—design days are extreme events

during which an LDC cannot assume that interruptible transmission

and capacity release will be available.  Rehearing Order P 25 n.79,

JA808.  This explains the Commission's rejection of the Skipping Stone

study, which "assumed that firm capacity held by downstream

9

customers would nevertheless be available to New Jersey LDCs" on a design day. Decision at 60. This assumption ignores that LDCs access such capacity through secondary market capacity release or interruptible transportation arrangements, which would be unavailable if downstream firm capacity customers exercise their superior rights to the capacity during a time of high demand, such as a design day, when the system is constrained. Rehearing Order P 45, JA818. On a day of extremely high demand and constrained supply, the LDCs are not assured of obtaining needed capacity if it is not reserved in advance; they would have to compete with other demand sectors for any capacity they do not hold themselves. *Id.* P 48, JA820.

Similarly, the New Jersey study assumed—again for design day planning—the continued availability far into the future of *all* of the New Jersey LDCs' current 619,000 dekatherms per day of short-term peaking contracts for third-party capacity. Decision at 59. The Commission reasonably found the long-term future availability of all such short-term contracts uncertain because they are dependent on the capacity being currently available year-to-year and the New Jersey LDCs successfully competing with other users to obtain this capacity.

Rehearing Order PP 38, 65, JA814, 829; Certificate Order P 29, JA555. Consequently, the Commission reasonably determined that the Transco study's more conservative assumptions regarding the future availability of short-term peaking contracts (*see* Decision at 59) were more consistent with accepted, traditional LDC design day supply planning practices and, thus, the Commission credited the Transco study as the better evidence regarding the need for the Project.  Rehearing Order P 41, JA816; Certificate Order PP 27, 34, JA553, 558.

In fact, as the panel recognized, New Jersey Natural Gas projected that its current 230,000 dekatherms per day of short-term peaking contracts would decline to zero from 2022 forward.  Decision at 60 (citing Rehearing Order PP 64-65, JA828-829).  The New Jersey study dismissed this projection as merely reflecting "the short-term nature of the contracts."  *Id*. (quoting New Jersey study at 98, JA350).  But, because the ability to obtain sufficient off-system peaking resources in the future is uncertain, the Commission reasonably concluded that New Jersey Natural Gas' future projection regarding short-term peaking contracts, based on its experience and statutory reliability

responsibilities, was more reliable than a projection based solely on historical contracting.  Rehearing Order P 65, JA829.

Fundamentally, the panel faults the Commission for failing to provide evidence that third-party capacity has been unavailable to the New Jersey LDCs in the past.  Decision at 59-60.  But that is not the relevant standard.  The Commission reasonably concluded that the past and current availability of third-party capacity—on non-design days—does not speak to the availability of that capacity on a design day and, therefore, that the Project is needed *notwithstanding* the past availability of that third-party capacity.  Rehearing Order PP 38, 45, JA814, 818; Certificate Order PP 29, 32, JA555, 557.  It is within the Commission's expertise to make predictions about the market it regulates, and its reasonable predictions are entitled to deference even if there might also be another reasonable view.  Rehearing Order P 65 n.193, JA829 (citing *Env't Action, Inc. v. FERC*, 939 F.2d 1057, 1064 (D.C. Cir. 1991)).

## C.    The Commission's Consideration Of New Jersey Climate Laws

The panel found that the Commission "arbitrarily discount[ed] the effect of [New Jersey's] energy laws in assessing market need for the

Project." Decision at 62. The panel distinguished *Food & Water Watch*, 104 F.4th at 347-48—which affirmed the Commission's refusal to find a project unneeded based on a climate statute—finding the statute there "set GHG emission-reduction goals without specifying how to meet them or necessarily mandating reductions in natural gas use." Decision at 61 n.10. But the Commission reasonably reached the very same conclusion here, observing that, while the New Jersey statute mandates annual reductions in natural gas use of 0.75 percent, at the time of the challenged orders there were not yet mandated mechanisms to implement those goals. Rehearing Order PP 26, 70, JA805, 832. *See* Petition at 7-8.

As the Commission found, the issue is not recognition of New Jersey climate goals but rather whether the record supports the conclusion that New Jersey climate measures will necessarily eliminate the need for the Project to provide design day supply. Certificate Order P 31, JA556; Rehearing Order P 70, JA832. Reductions in overall annual consumption would not ensure that sufficient supply would be available to meet maximum demand on a system-constrained design day. Rehearing Order P 70, JA832. New Jersey assumed peak gas

13

demand during supply constraints could be met using non-pipeline alternatives and best practices, but the Commission found that the record did not support the conclusion that these practices would ensure sufficient design day supply.  Certificate Order PP 30-31, JA556.  In *Food & Water Watch*, this Court found that the New York statute did not undermine the finding of need where state law still required the contracting LDC to provide reliable natural gas service upon demand and the LDC needed the additional supply to provide that service.  104 F.4th at 348.  Similarly, here, the New Jersey legislation does not undermine the Commission's finding of an immediate need for Project capacity to allow the contracting LDCs to ensure reliable supply to the multi-state region on a design day.  Certificate Order P 31, JA557; Rehearing Order P 70, JA832.

## II. The Panel's Finding That FERC Erred In Failing To Label Greenhouse Gas Emissions As Significant Conflicts With Circuit Precedent And Is Unsupported By The Record.

The panel found that the Commission erred in failing "to make a case-specific determination about the significance of the Project's anticipated GHG emissions."  Decision at 54.  But this Court's recent decision in *Food & Water Watch* held that neither NEPA, NEPA

14

regulations, nor circuit precedent requires that FERC formally label a
project's downstream emissions as "significant or insignificant."  104
F.4th at 346.  Rather, this Court held that "FERC amply discussed the
'significance' of . . . emissions—by estimating the amount of increased
emissions, comparing them to national and statewide totals, setting
forth downstream harms in qualitative terms, and even giving
monetary, present-value estimates of the harms."  *Id*.; s*ee also Ala.
Mun. Distribs. Grp. v. FERC*, 100 F.4th 207, 214 (D.C. Cir. 2024); *Ctr.
for Biological Diversity v. FERC*, 67 F.4th 1176, 1183-84 (D.C. Cir.
2023) (both affirming use of this analysis).  *See* Petition at 11-12.

The panel distinguished *Food & Water Watch* by asserting that,
here, "FERC has not disputed the premise that it is generally obligated
to make a significance determination for each category of emissions."
Decision at 55-56.  But—as the Commission explained in its July 18,
2024, Rule 28(j) response letter following this Court's similar
determination in *Healthy Gulf v. FERC*, 107 F.4th 1033 (D.C. Cir.
2024)—the Commission in fact did dispute that premise here.  The
Commission found that it "met its NEPA obligations and appropriately
declined to label the emissions as significant or insignificant" where it

15

disclosed the reasonably foreseeable GHG emissions associated with the Project's construction, operation and downstream emissions, placed them in context, and identified climate impacts in the region—the same analysis found to satisfy NEPA in *Food & Water Watch*, *Alabama Municipal*, and *Center for Biological Diversity*. *See* Rehearing Order P 106, JA855.

The Commission moreover rejected the argument that it had to make a significance determination and observed that petitioners cited no authority requiring the Commission to make a formal significance finding. "We also note that [petitioner] fails to cite any authority for the proposition that the Commission's analysis is incomplete for lack of a significance determination despite Commission staff having completed an EIS that discloses the project's reasonably foreseeable GHG emissions." Rehearing Order P 114, JA859. *See also id*. P 107, JA856 (finding that the EIS analysis satisfied the Commission's NEPA obligations and "[petitioner] points to no authority requiring anything more"). Thus, here, FERC appropriately found its EIS NEPA analysis complete without a significance finding. *See* Petition at 12.

16

The panel went on to hold that, "[e]ven if FERC is not *required* to make a significance determination, choosing not to do so on the basis of an arbitrary and capricious explanation is nevertheless a violation of the APA." Decision at 56 (emphasis in original). The panel held that, in finding it was *unable* to assess significance here, FERC failed to explain its departure from its 2021 decision in *Northern Natural Gas*, 174 FERC ¶ 61,189 P 33 (2021), finding project greenhouse gas emissions insignificant. Decision at 54, 56.

But the Commission did explain that, in 2022, it had established and then withdrawn a threshold for significance and was conducting a generic proceeding to determine "whether and how the Commission will conduct significance determinations going forward." Rehearing Order P 106, JA855 (citing *Consideration of Greenhouse Gas Emissions in Natural Gas Infrastructure Project Reviews*, 178 FERC ¶ 61,108, *converted to draft status*, 178 FERC ¶ 61,197 (2022)). *Food & Water Watch*—citing 2021 *Northern Natural*—recognized that the Commission's 2022 retraction of its significance threshold evidences the Commission's reasonable determination that "further study" was required about "what level or kind of threshold might warrant such a

17

classification." 104 F.4th at 347. The Court held "FERC's change in course was therefore not arbitrary." *Id.* (citing *Ala. Mun.*, 100 F.4th at 215). *See* Petition at 12.

In any event, as this Court recognized in *Healthy Gulf*, on remand the Commission can distinguish *Northern Natural*: "[p]erhaps the Commission would distinguish between insignificance determinations like the one made in *Northern Natural*, for which there is a logical lower bound of comparison (zero) and significance determinations, for which no comparable upper bound of comparison exists." 107 F.4th at 1042.

## III. The Panel's Vacatur Of The Project Certificate Misapplied This Court's *Allied Signal* Precedent.

In its Decision, the panel addressed this Court's vacatur analysis in *Allied Signal, Inc. v. NRC*, 988 F.2d 146, 150 (D.C. Cir. 1993), balancing the likelihood order deficiencies can be addressed on remand with the disruptive consequences of vacatur. *See* Decision at 64. The panel found the acknowledged disruptive consequences of de-certifying a partially operational pipeline to be "significantly outweighed by the core deficiencies in FERC's orders." *Id.* at 64-65. The "core" deficiencies were the Commission's purported failure to adequately consider the New Jersey study and New Jersey climate laws in assessing market

need. *Id*. at 64. But, as discussed in Section I *supra*, the Commission did in fact fully consider both the study and New Jersey law in finding market need for the Project. Accordingly, the panel's decision as to market need should be reversed on rehearing, but at a minimum the court should find that the Commission is likely to be able to substantiate the market need finding on remand. Similarly, as discussed in Section II *supra*, under circuit precedent the Commission has no obligation to label the significance of project greenhouse gas emissions, and in any event, this Court in *Healthy Gulf* did not vacate challenged orders that similarly failed to distinguish *Northern Natural*, finding it "reasonably likely" that the Commission could redress the error on remand and still authorize the project. 107 F.4th at 1047.

As a result, the panel's balancing should have resulted in remand without vacatur, if these issues were remanded at all. Because the panel at a minimum overstated the deficiencies of the Commission's orders, these orders do not constitute the sort of "pervasively deficient agency action" that would outweigh the disruption vacatur would cause. Decision at 64. For example, vacatur has not been ordered where this Court has found: that it was "plausible" that the Commission could

19

reach the same result on remand, *Oberlin*, 937 F.3d at 611; *Black Oak Energy v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013); that the Commission "could" arrive at the same result, *Food & Water Watch v. FERC*, 28 F.4th 277, 292 (D.C. Cir. 2022); that there was a "significant possibility" the Commission could reach the same result, *XO Energy MA, LP v. FERC*, 77 F.4th 710, 719 (D.C. Cir. 2023); or that it was "reasonably likely" that the Commission could reach the same result. *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1332 (D.C. Cir. 2021). *See also Healthy Gulf*, 107 F.4th at 1047 (same). The Commission orders here clear that bar, so vacatur should be denied to avoid the disruptive consequences that the panel acknowledged. Decision at 64 (discussing disruptive consequences of vacating certificate of partially operational pipeline). *See* Petition at 14-16.

Moreover, the disruptive consequences appear to be more severe than those recognized by the panel. Transco now reports that the Project is fully operational, and that Project facilities support not only the 829,400 dekatherms per day of service to shippers contracting for Project capacity, but also support facilities providing 1,235,000

dekatherms per day of service to existing system customers.  Petition at 4.  Transco states that loss of Project facilities would necessarily cause an outage to the full 2,064,400 dekatherms of firm capacity that these facilities support (*id*.)—an amount sufficient to heat 10.6 million homes.  *See* Application of Transcontinental Gas Pipe Line Co., LLC for a Temporary Emergency Certificate, FERC Docket No. CP21-94 at 20 (Sept. 6, 2024).  *See also, e.g.*, Brief of *Amicus Curiae* New Jersey Business and Industry Association at 7-10; Brief of the Pennsylvania Chamber of Business and Industry as *Amicus Curiae* at 4-12; and Brief of *Amicus Curiae* American Gas Association at 9-11 (describing detrimental impacts of vacatur).  The severity of these consequences cuts strongly against vacatur of the Commission's orders that, even if deficient, can be readily augmented and remedied on remand.

## CONCLUSION

For the foregoing reasons, the Court should grant Transco's

Petition.

Respectfully submitted,

Matthew R. Christiansen
General Counsel

Robert H. Solomon
Solicitor

*/s/ Lona T. Perry*
Lona T. Perry
Deputy Solicitor

Federal Energy Regulatory
  Commission
888 First Street, N.E.
Washington, D.C. 20426
Phone:  202-502-8334
E-mail:  lona.perry@ferc.gov

November 1, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Circuit Rule 32(e), I certify that this response complies with the type-volume limitation of Federal Rules of Appellate Procedure 35(b)(2)(A), 35(e), and 40(b)(1), and this Court's September 17, 2024 Order because this response contains 3872 words, excluding the parts of the response exempted by Federal Rules of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

I further certify that this brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Century Schoolbook 14-point font using Microsoft Word.

*/s/ Lona T. Perry*
Lona T. Perry
Deputy Solicitor

Federal Energy Regulatory
  Commission
888 First Street, N.E.
Washington, D.C. 20426
Phone:  202-502-8334
E-mail:  lona.perry@ferc.gov

November 1, 2024

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), and the Court's Administrative Order Regarding Electronic Case Filing, I hereby certify that I have, this 1st day of November 2024, served the foregoing upon the counsel listed in the Service Preference Report via email through the Court's CM/ECF system.

.

*/s/ Lona Perry*
Lona Perry
Deputy Solicitor

Federal Energy Regulatory
  Commission
888 First Street, NE
Washington, DC 20426
Phone: (202) 502-8334
Email: lona.perry@ferc.gov