No. 23-1064
(Consolidated with 23-1074, 23-1077, 23-1129, 23-1130 and 23-1137)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

NEW JERSEY CONSERVATION FOUNDATION, ET AL.,

*PETITIONERS*,

V.

FEDERAL ENERGY REGULATORY COMMISSION

*RESPONDENT*

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

## RESPONSE OF THE NEW JERSEY DIVISION OF RATE COUNSEL AS INTERVENOR FOR PETITIONERS OPPOSING PETITON FOR PANEL REHEARING AND REHEARING *EN BANC*

Brian O. Lipman
Maura Caroselli
Megan Lupo
New Jersey Division of Rate Counsel
140 East Front St., 4th Floor,
P.O. Box 003
Trenton, NJ 08625
Phone: (609) 984-1460
Fax: (609) 292-2923
blipman@rpa.nj.gov
mcaroselli@rpa.nj.gov
mlupo@rpa.nj.gov

Scott H. Strauss
Jeffrey A. Schwarz
Anree G. Little
SPIEGEL & MCDIARMID LLP
1818 N Street, NW
8th Floor
Washington, DC  20036
(202) 879-4000
scott.strauss@spiegelmcd.com
jeff.schwarz@spiegelmcd.com
anree.little@spiegelmcd.com

*Attorneys for the New Jersey Division of Rate Counsel*

November 1, 2024

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.     Parties in This Court:

Except as stated below, all parties, intervenors, and amici appearing in this Court are listed in Intervenor Transcontinental Gas Pipe Line Company, LLC's (Transco's) Petition for Panel Rehearing and Rehearing *En Banc*.

Several amici sought invitations to file briefs supporting Transco's rehearing petition. They are: (1) American Gas Association (AGA); (2) American Petroleum Institute (API), American Exploration & Production Council (AXPC), and the National Association of Manufacturers (NAM); (3) EQT Corporation; (4) Enbridge (U.S.) Inc.; (5) Interstate Natural Gas Association of America (INGAA), the Marcellus Shale Coalition (MSC), GPA Midstream Association (GPA Midstream), the New Jersey Chamber of Commerce (NJCC), and the Chemistry Council of New Jersey (CCNJ); (6) Kinder Morgan, Inc.; (7) New Jersey Business and Industry Association (NJBIA); (8) Pennsylvania Chamber of Business and Industry (Pennsylvania Chamber); and (9) the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO (UA).

### B.     Rulings Under Review

The Federal Energy Regulatory Commission (FERC or Commission) rulings at issue are:

1. Order Issuing Certificate and Approving Abandonment, *Transcontinental Gas Pipe Line Co*., 182 FERC ¶ 61,006 (2023).

2. Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, *Transcontinental Gas Pipe Line Co.,* 182 FERC ¶ 62,146 (Mar. 13, 2023).

3. Order on Rehearing, Granting Clarification, Denying Stay, and Dismissing Waiver, *Transcontinental Gas Pipe Line Co*., 182 FERC ¶ 61,148 (2023).

4. Notice to Proceed with Construction – Tree Felling, *Transcontinental Gas Pipe Line Co*., FERC Docket No. CP21-94, Accession No. 20230316-3044 (Mar. 16, 2023).

5. Notice to Proceed with Construction and Approval of Mount Effort Contractor Yard, *Transcontinental Gas Pipe Line Co*., FERC Docket No. CP21-94, Accession No. 20230323-3094 (Mar. 23, 2023).

6. Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, *Transcontinental Gas Pipe Line Co*., 183 FERC ¶ 62,054 (2023).

7. Order on Rehearing and Stay Requests, *Transcontinental Gas Pipe Line Co*., 183 FERC ¶ 61,071 (2023).

The challenged panel opinion was reported at *New Jersey Conservation Foundation v. FERC*, 111 F.4th 42 (D.C. Cir. 2024), which is included as an addendum in Transco's Petition for Panel Rehearing and Rehearing *En Banc*.

## C.    Related Cases

The six consolidated cases have not previously been before this Court or any other court.

/s/ *Jeffrey A. Schwarz*
Jeffrey A. Schwarz

Law Offices of:
    Spiegel & McDiarmid LLP
    1818 N Street, NW
    8th Floor
    Washington, DC  20036
    (202) 879-4000

November 1, 2024

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

New Jersey Division of Rate Counsel (Rate Counsel) is an administrative agency of the State of New Jersey and does not issue any stock; thus, it is not subject to the corporate disclosure statement requirement of Rule 26.1 of the Federal Rules of Appellate Procedure.

*/s/ Jeffrey A. Schwarz*
Jeffrey A. Schwarz

Law Offices of:
    Spiegel & McDiarmid LLP
    1818 N Street, NW
    8th Floor
    Washington, DC  20036
    (202) 879-4000

November 1, 2024

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ................................... i

Rule 26.1 Corporate Disclosure Statement.................................................. iv

Table of Contents ...................................................................................... v

Glossary................................................................................................... viii

Statutory and Regulatory Authorities ......................................................... 1

Argument.................................................................................................... 1

    I.   Rehearing is unwarranted to review the holding that FERC's finding of project need was arbitrary............................................... 2

        A.  The panel holding on this unique record does not conflict with Circuit precedent. ............................................... 3

        B.  Contrary to Transco's claim, the panel did not misapprehend the record. ....................................... 7

    II.  The panel rulings on FERC's treatment of GHG emissions do not conflict with NEPA precedent and are unchallenged as to the NGA....................................................................... 9

    III.  Transco's arguments against vacatur are forfeited in part and unfounded. ..................................................................... 12

Conclusion ............................................................................................... 16

Certificate of Compliance ......................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL COURT CASES**

*Advanced Energy United Inc. v. FERC*, 82 F. 4th 1095 (D.C. Cir. 2023) ..............12

*Al-Hela v. Biden,* 66 F.4th 217 (D.C. Cir. 2023) ......................................................13

*Am. Clean Power Ass'n v.* FERC, 54 F.4th 722, 733 (D.C. Cir. 2022) ............12, 15

*Am. Great Lakes Ports Ass'n v. Schultz,* 962 F. 3d 510 (D.C. Cir. 2020)...............12

*Am. Pub. Gas Ass'n v. US Dep't of Energy*,
    72 F. 4th 1324 (D.C. Cir. 2023)........................................................................12

*Atl. Refin. Co. v. Pub. Serv. Comm'n of N.Y.*, 360 U.S. 378 (1959).................. 10-11

*City of Port Isabel v. FERC*, 111 F.4th 1198 (D.C. Cir. 2024) ......................... 12-13

*Eagle Cnty. v. Surface Transp. Bd.,* 82 F.4th 1152, 1180 (D.C. Cir. 2023), *pet. for
    writ of cert. granted in other part sub nom. Seven Cty. Infrastructure Coal. v.
    Eagle Cnty., Colorado,* 144 S.Ct. 2680 (Mem) (2024) ......................................11

*Env't Def. Fund v. FERC*, 2 F.4th 953 (D.C. Cir. 2021), *cert. denied sub nom.
    Spire Mo. Inc. v. Env't Def. Fund*, 142 S. Ct. 1668 (2022).......2-3, 10, 12, 14-15

*Fed. Power Comm'n v. Hope Nat. Gas Co.,* 320 U.S. 591 (1944)............................8

*Food & Water Watch v. FERC*, 104 F.4th 336 (D.C. Cir. 2024) ...................3, 5, 10

*Goland v. Cent. Intel. Agency,* 607 F.2d 339 (D.C. Cir. 1978) ...............................14

*Kentucky Mun. Energy Agency v. FERC,* 45 F.4th 162 (D.C. Cir. 2022) ...........2, 12

*Long Island Power Auth. v. FERC*, 27 F.4th 705 (D.C. Cir. 2022)........................12

*Mass. v. Envtl. Protection Agency*, 549 U.S. 497 (2007) .........................................9

*Myersville Citizens for a Rural Cmty., Inc. v. FERC*,
    783 F.3d 1301 (D.C. Cir. 2015)...........................................................................3

*New Jersey Conserv. Found. v. FERC,*
  111 F.4th 42 (D.C. Cir. 2024) (Op.) ...............................................................1, 4

*Standing Rock Sioux Tribe v. Army Corps of Eng'rs,*
  985 F.3d 1032 (D.C. Cir. 2021) ........................................................ 12-13, 15

*TransCanada Power Mktg. Ltd. v. FERC*, 811 F.3d 1 (D.C. Cir. 2015) .................6

*Transwestern Pipeline Co. v.* FERC, 904 F.2d 64 (D.C. Cir. 1990) ......................13

*U.S. v. Nofziger*, 878 F.2d 442 (D.C. Cir. 1989) .......................................................7

*Vecinos para el Bienestar de la Comunidad Costera v. FERC,*
  6 F.4th 1321 (D.C. Cir. 2021) ...........................................................................12

## FEDERAL STATUTES

15 U.S.C. § 717 ..........................................................................................................1

15 U.S.C. § 717f(e). ...............................................................................................10

15 U.S.C. § 717f(c)(1)(B) ....................................................................................2, 14

## STATE STATUTES

N.J. STAT. ANN. § 48:2-13(a) ....................................................................................4

N.J. STAT. ANN. § 48:2-13(d) ....................................................................................4

## OTHER AUTHORITIES

*Certification of New Interstate Natural Gas Pipeline Facilities*, 88 FERC ¶ 61,227
  (1999) (Policy Statement), *clarified*, 90 FERC ¶ 61,128, *further clarified*, 92
  FERC ¶ 61,094 (2000) .........................................................................................3

*N. Nat. Gas Co.*, 174 FERC ¶ 61,189 (2021) .........................................................10

*Spire STL Pipeline LLC*, 176 FERC ¶ 61,160 (2021)...............................................14

# GLOSSARY

| | |
|---|---|
| **APA** | Administrative Procedure Act |
| **Board** | New Jersey Board of Public Utilities |
| **Board Order** | Motion to Intervene Out of Time and Lodge of the New Jersey Parties (July 11, 2022) (R.916), Attach.: Decision and Order, *In the Matter of the Exploration of Gas Capacity and Related Issues*, Docket No. GO19070846 (N.J. Bd. Pub. Utils. June 29, 2022) |
| **Certificate Order** | *Transcontinental Gas Pipe Line Co.*, 182 FERC ¶ 61,006 (2023) (R.984) |
| **Dth/d** | dekatherm per day |
| **EIS** | Environmental Impact Statement |
| **FERC or the Commission** | Federal Energy Regulatory Commission |
| **GHG** | greenhouse gas |
| **LDC** | Local Distribution Companies or Gas Distribution Companies |
| **JA** | Joint Appendix |
| **MDth/d** | 1,000 dekatherms per day |
| **NGA** | Natural Gas Act |
| **NJ Study** | Motion to Intervene Out of Time and Lodge of the New Jersey Parties (July 11, 2022) (R.916), Attach.: London Econ. Int'l, *Final Report: Analysis of Natural Gas Capacity to Serve New Jersey Firm Customers* (Nov. 5, 2021) |
| **NJCF** | Petitioner New Jersey Conservation Foundation, *et al*. |

| | |
|---|---|
| **Op.** | *New Jersey Conserv. Found. v. FERC*, 111 F.4th 42 (D.C. Cir. 2024) |
| **P** | Denotes a paragraph number in a FERC order |
| **Policy Statement** | *Certification of New Interstate Natural Gas Pipeline Facilities*, 88 FERC ¶ 61,227 (1999) |
| **Project** | Regional Energy Access Expansion (or REAE) Project |
| **Rate Counsel** | New Jersey Division of Rate Counsel |
| **Rehearing Order** | *Transcontinental Gas Pipe Line Co., LLC*, 182 FERC ¶ 61,148 (2023) (R.1152) |
| **Transco** | Transcontinental Gas Pipe Line Company, LLC |
| **Transco Study** | Transco, Supplemental Information regarding Regional Energy Access Expansion Project, Attach. 1D: Resource Report 1 – Additional Information (Apr. 22, 2022) (R. 711) |

**STATUTORY AND REGULATORY AUTHORITIES**

All applicable statutory and regulatory authorities appear in the Opening Brief of Petitioners and the Opening Brief of Intervenor New Jersey Division of Rate Counsel.

**ARGUMENT**

A unanimous panel[1] held that FERC: (i) did not respond adequately to evidence that a proposed natural gas pipeline expansion, the Regional Energy Access Expansion Project, is unneeded;[2] (ii) fell short of its Natural Gas Act (NGA)[3] duty to weigh purported Project benefits against all Project harms, including reasonably foreseeable downstream greenhouse gas (GHG) emissions; and (iii) departed from precedent *sub silentio* in holding itself unable to assess the significance of those emissions under the National Environmental Policy Act (NEPA). The panel then

---

[1] *N.J. Conservation Found. v. FERC*, 111 F.4th 42 (D.C. Cir. 2024) (Op.).

[2] Transcontinental Gas Pipe Line Company, LLC (Transco) proposed the Project, involving roughly 36 miles of new pipeline and replacements and upgrades to several compressor stations and ancillary facilities, to add 829,400 dekatherms/day of capacity.

[3] 15 U.S.C. § 717 *et seq*.

exercised the "normal remedy"[4] for "pervasive[]"[5] or "serious"[6] agency errors: it vacated and remanded the decision.

The decision does not limit FERC's statutory authority or its ability to exercise technical expertise and make policy calls, nor has FERC sought rehearing. On remand, FERC will be able to consider the issues fully, take additional evidence if needed, and reach a more reasoned decision. And to prevent disruption while on remand, FERC may authorize temporary operation of facilities as needed to maintain adequate service.[7]

In short, the panel's vacatur and remand of an inadequately-reasoned Commission decision neither conflicts with Circuit or Supreme Court precedent nor presents a question of exceptional importance. Accordingly, Transco's petition should be denied.

## I.     REHEARING IS UNWARRANTED TO REVIEW THE HOLDING THAT FERC'S FINDING OF PROJECT NEED WAS ARBITRARY.

Transco claims that the panel rulings on Project need (1) conflict with Circuit precedent and (2) misapprehend the record. Pet. 5. Both claims are false, and the second is no basis for *en banc* rehearing.

---

[4] *E.g.*, *Ky. Mun. Energy Agency v. FERC*, 45 F.4th 162, 179 (D.C. Cir. 2022); *Env't. Def. Fund v. FERC*, 2 F.4th 953, 976 (D.C. Cir. 2021).

[5] Op. 64.

[6] *Id.*

[7] 15 U.S.C. § 717f(c)(1)(B).

### A.    The panel holding on this unique record does not conflict with Circuit precedent.

Transco alleges a conflict with Circuit precedent, but even if properly raised,[8] its arguments are unfounded. Transco argues that the panel decision conflicts with cases holding that precedent agreements "are 'good evidence' of [market] demand" for pipeline expansion.[9] But the panel acknowledged that precedent. Op. 60.[10] And "good" does not mean dispositive. To the extent Transco suggests otherwise, *see* Pet. 10, it misstates the law. *Env't Def. Fund v. FERC*, 2 F.4th 953, 972 (D.C. Cir. 2021) ("[T]here is a difference between saying that precedent agreements are always *important* versus saying that they are always *sufficient*.").[11]

---

[8] Transco's statement under Federal Rule of Appellate Procedure 35(b) neither identifies a conflict with Circuit precedent on review of FERC need determinations nor includes the issue as presenting a question of exceptional importance.

[9] Intervenor Transcontinental Gas Pipe Line Co., LLC's Pet. for Panel Rehearing and Rehearing *En Banc* at 7 (Sept. 13, 2024) (Pet.) (citing, e.g., *Food & Water Watch v. FERC,* 104 F.4th 336, 347 (D.C. Cir. 2024)).

[10] Indeed, Judge Pillard noted her authorship of one of the opinions that Transco cites. *See* Oral Arg. at 4:01 – 5:05; Pet. at 7 (citing *Myersville Citizens for a Rural Cmty.*, *Inc. v. FERC*, 783 F.3d 1301, 1311 (D.C. Cir. 2015)).

[11] *See also Certification of New Interstate Nat. Gas Pipeline Facilities*, 88 FERC ¶ 61,227, at 61,747-748 (Policy Statement) ("[T]he Commission will consider all relevant factors [on need]. . . includ[ing], but . . . not . . . limited to, precedent agreements, demand projections, potential cost savings to consumers, or a comparison of projected demand with the amount of capacity currently serving the market."), *corrected,* 89 FERC ¶ 61,040 (1999), *clarified*, 90 FERC ¶ 61,128 (2000), *further clarified*, 92 FERC ¶ 61,094 (2000); Policy Statement at 61,747-48 (The requisite evidence of need also "will depend on the potential adverse effects of the proposed project on the relevant interests.").

Indeed, the panel ruling on need could not conflict with Circuit precedent because this was the first time FERC had to weigh the probative value of precedent agreements against: (1) a state regulator's determination that counterparty local distribution companies (LDCs) do not need the additional capacity to which they subscribed; (2) a state law requiring "sizeable and continuous reductions to natural gas usage" (Op. 61); (3) two market studies showing that current capacity is sufficient to meet demand; and (4) expert testimony that LDCs are incentivized to buy and resell excess capacity, because captive retail ratepayers shoulder the cost while shareholders keep some of the revenue.[12]

The New Jersey Board of Public Utilities (Board) is charged with "general supervision and regulation" of the state's natural gas LDCs, which includes "assur[ing] the reliability of . . . gas supply to retail customers in the State." N.J. Stat. Ann. § 48:2-13(a), (d). Before Transco filed its FERC certificate application, the

---

[12] Contrary to Transco (Pet. at 9 n.8) and amici (Br. of *Amici Curiae* Interstate Natural Gas Association of America *et al*. at 5), the threat of an imprudence disallowance does not mean that precedent agreements are dispositive evidence of need. The LDCs signed the contracts while the Board was still investigating, an indication that they assigned low probability to a potential imprudence disallowance. *See* (Final) Reply Br. of Intervenor New Jersey Division of Rate Counsel (Rate Counsel Reply Br.) at 18. Imprudence disallowances are rare partly because they make the regulated company riskier and increase ratepayer-borne financing costs, thereby offsetting the disallowance's protective effect. Oral Arg. at 38:27 – 39:13; *Transcontinental Gas Pipe Line Co., LLC,* 182 FERC ¶ 61,148, P 5 n.11 (Rehearing Order) (R.1152), JA605 (Clements, Comm'r, concurring), *vacated, N.J. Conservation Found. v. FERC,* 111 F.4th 42 (2024).

Board opened an investigation to determine whether the LDCs had secured enough pipeline capacity to serve design day needs.[13] To resolve a conflict between competing expert reports, the Board commissioned an independent study by London Economics International, LLC, which produced a 154-page report finding that "through 2030, firm gas capacity can easily meet firm demand . . . in cases of colder-than-normal weather . . . and even in the case of a design day."[14] The Board published the study, took public comments, and, seven months later, adopted the study's major conclusions, finding that it "supports the argument against the need for additional interstate pipeline capacity." *Id.* at 7. Rate Counsel and the Board then lodged the study and Board Order with FERC.

To support a "need" finding, FERC was obliged to weigh all the record evidence thoroughly, including the New Jersey study and Board Order, and to explain why LDC contracting decisions made without the benefit of the Board's determination were entitled to more weight than the Board's contrary view.[15] But

---

[13] *See generally* (Final) Opening Br. of New Jersey. Division of Rate Counsel as Intervenor for Petitioners at 5-9 (Nov. 28, 2023) (Rate Counsel Br.) (describing chronology of Board investigation, precedent agreements, and Transco certificate application).

[14] Rate Counsel Br. 6 (quoting Transco, Supplemental Information regarding Regional Energy Access Expansion Project (R. 711), Attach. 1D: Resource Report 1—Additional Information (Apr. 22, 2022), FERC eLibrary No. 20220422-5150 (Study)).

[15] In *Food & Water Watch*, FERC found corroborating evidence of need beyond

---

instead of doing so, FERC arbitrarily discounted New Jersey's study and findings. Op. 50, 58-59.

Contrary to amici's overheated claims,[16] the panel ruling did not grant New Jersey a right to veto interstate pipeline expansion. Nor did it "establish a new standard for assessing market need" or "substitute the Court's judgment for that of the agency."[17] It simply required FERC to give more reasoned consideration, consistent with its own policy and Administrative Procedure Act (APA) requirements, to New Jersey's and other parties' evidence of need. *See TransCanada Power Mktg. Ltd. v. FERC*, 811 F.3d 1, 12 (D.C. Cir. 2015) (An agency "must respond meaningfully to the arguments raised before it.").

---

the precedent agreements: an acute gas shortage forcing the local utility to refuse service to new customers and bring in compressed gas by truck to meet peak winter demand. 104 F.4th at 347. There are no shortages here, and two of the three market studies in the record found that existing pipeline capacity was adequate—a conclusion endorsed by the state regulator charged with overseeing the sufficiency of LDC supply portfolios.

[16] *E.g., Amici Curiae* Br. of the American Petroleum Institute, *et al.* in Support of Resp't-Intervenor's Reh'g Request at 3; Br. of *Amici Curiae* Interstate Natural Gas Association of America, *et al*. at 8.

[17] Br. of *Amicus Curiae* American Gas Association in Support of the Intervenor Transcontinental Gas Pipe Line Company, LLC's Petition for Panel Reh'g and Reh'g *En Banc* at 2 (Sept. 24, 2024).

**B.    Contrary to Transco's claim, the panel did not misapprehend the record.**

Transco claims that the panel rulings on need "misapprehend the record," Pet. 5 (cleaned up), but that is not a basis for *en banc* hearing.[18] Nor is it accurate.

First, Transco suggests the panel erred in faulting FERC's interpretation of New Jersey law. But Transco makes the same mistake FERC did, confusing GHG-reduction targets (which can be achieved in different ways) with specific state-law requirements to reduce gas use—which impact directly the gas demands on which the claimed need is based. *See* Pet. 7-8.[19] And any suggestion that New Jersey lacks "prescribed methods for achieving" *gas use reductions*, *id.*, is incorrect. In 2021, New Jersey LDCs received Board approval and began implementing programs to reduce gas use, with utilities receiving performance incentives for achieving targets and penalties for missing them.[20] New Jersey has committed millions of dollars to

---

[18] Fed. R. App. P. 35(a), (a)(1), (a)(2) (En banc rehearing "is not favored and ordinarily will not be ordered unless . . . necessary to secure or maintain uniformity of the court's decisions" or resolve "question[s] of exceptional importance."); *U.S. v. Nofziger*, 878 F.2d 442, 460 (D.C. Cir. 1989) (Edwards, Wald, Mikva, and Ginsburg, JJ., concurring) ("[T]he majority opinion in this case is clearly wrong; however, this is not a basis for *en banc* consideration.").

[19] *See also* Rehearing Order P 70, JA832 ("Accordingly, the fact that Pennsylvania and New Jersey have GHG reduction commitments by 2050 does not change our conclusion that Transco has demonstrated significant evidence of project need.").

[20] Final Amicus Curiae Br. of New Jersey, Washington, Connecticut, Maryland, Massachusetts, New York, Oregon, and Vermont in Support of Pet'rs and Reversal at 11-12 (Nov. 28, 2023).

ensure the program's success. *Id.* FERC thus "failed to substantiate its claim" that there were no mandated mechanisms to reduce gas demand. Op. 61 & n.10.

Second, Transco faults the panel for questioning FERC's basis for favoring the Transco-sponsored study over New Jersey's. Pet. 8. FERC's analysis was arbitrary because it: (i) depended on false assumptions about how state law would affect natural gas demand and (ii) criticized *all* the studies' treatments of the availability of off-system peaking supplies, but decided without factual findings on that potentially dispositive issue. Op. 59-60, 61-62. Transco fails to show otherwise.

Third, Transco contends that the panel erred in requiring FERC to consider potential subsidization of pipeline expansion by subscribing LDCs' captive retail ratepayers. Pet. 9 & n.8. Transco suggests that retail customers—i.e., consumers—fall outside the Policy Statement's protection. *Id.* But "the overriding purpose of the NGA is "to protect consumers against exploitation at the hands of gas companies," *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 610 (1944). Moreover, Transco's position is sideways to the relevant factual question: whether LDC expectations that they would pass costs to captive ratepayers undermine the probative value of their precedent agreements. The record before FERC included expert testimony to that effect and FERC offered no non-arbitrary response. Op. 61.

## II.    THE PANEL RULINGS ON FERC'S TREATMENT OF GHG EMISSIONS DO NOT CONFLICT WITH NEPA PRECEDENT AND ARE UNCHALLENGED AS TO THE NGA.

FERC's Environmental Impact Statement (EIS) found that Project operations could increase downstream GHG emissions by up to 16 million metric tons per year—more than 0.32% of *all* U.S. GHG emissions.[21] FERC found that the increased emissions are "reasonably foreseeable and causally connected" to the Project (*see* Br. for Resp't FERC at 14 (Oct. 10, 2023) (FERC Br.)) and will exacerbate global climate change—making deadly and expensive extreme weather more likely,[22] and causing social costs between $4 billion and $46 billion.[23]

That climate-change harms are widespread "does not minimize [a] state's interest" in reducing them. *Mass. v. EPA*, 549 U.S. 497, 521-22 (2007). Accordingly, New Jersey requires GHG-emission reductions of 50% by 2030 and 80% by 2050.[24] Yet the EIS found that the Project would *increase* New Jersey GHG emissions by

---

[21] *Transcon. Gas Pipe Line Co.*, 182 FERC ¶ 61,006, PP 69, 70 (2023) (Certificate Order) (R. 984), JA578 (subsequent history omitted); Final Environmental Impact Statement for Transcontinental Gas Pipe Line Company, LLC's Regional Energy Access Expansion Project at 4-176 (July 29, 2022) (Final EIS) (R. 930), JA487.

[22] FERC's Final EIS acknowledged that the Project will "increase the atmospheric concentration of GHGs," which drive climate change and produce "a wide range of impacts across every region of the country and the globe," including "changes to water resources, agriculture, ecosystems, human health, and ocean systems." Final EIS (R. 930) at 4-173, 4-175, JA484, JA486.

[23] *Id.* at 4-180, JA491; Op. 55.

[24] Final EIS (R. 930) at 4-176, JA487.

9

12% in the near term and would account for 48% of *all* of New Jersey's allowable GHG emissions by 2050.[25]

FERC refused to label these impacts as "significant" under NEPA and failed to weigh them against Project benefits in the Commission's NGA public-interest analysis. The panel faulted FERC's orders in both respects. Op. 54-55, 62-63. But Transco seeks rehearing only of the first ruling (Pet. 11-12) and is silent about the second, which was a sufficient basis to vacate FERC's orders.[26]

Contrary to Transco's argument, the panel ruling concerning NEPA "significance" does not conflict with *Food & Water Watch*.[27] But even more critical is Transco's failure to challenge the panel's holding (Op. 63) that FERC "fail[ed] to conduct any meaningful balancing" of Project benefits against the harm of increased emissions. The NGA obligates FERC to deny a certificate unless it finds a proposed project to be required by the public convenience and necessity, 15 U.S.C. § 717f(e), after evaluating "all factors bearing on the public interest," *Atl. Refin. Co. v. Pub.*

---

[25] *Id.*

[26] *See* Section III, *infra*.

[27] The panel did not contradict *Food & Water Watch*'s holding that NEPA requires no labeling of emissions as significant or insignificant but merely requires an EIS when federal actions will significantly affect the environment. 104 F.4th at 346. The panel here addressed a different argument: FERC's claim that it was *unable* to assess significance, which the panel found to be an unacknowledged (let alone explained) change in position, violating the APA. Op. 54 (citing *N. Nat. Gas Co.*, 174 FERC ¶ 61,189, P 29 (2021)).

*Serv. Comm'n of N.Y.*, 360 U.S. 378, 391 (1959), including "environmental interests" and impacts on communities, Policy Statement at 61,747-48. FERC must determine whether a project's anticipated environmental and other costs outweigh its expected benefits. *Id.*; *Eagle Cnty., Colo. v. Surface Transp. Bd.*, 82 F.4th 1152, 1180 (D.C. Cir. 2023), *pet. for writ of cert. granted in other part sub nom. Seven Cty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 144 S.Ct. 2680 (Mem) (2024).[28]

Here, FERC "calculated anticipated GHG emissions, listed harms expected due to climate change generally," and compared Project emissions to state climate policy goals, but "then seemingly swept the issue under the rug in its balancing, stopping short of explaining how anticipated GHG emissions factored in" its weighing of Project benefits and harms. Op. 62-63. The panel held that the NGA requires more, and Transco has not challenged that ruling. FERC must conduct the requisite balancing on remand.

---

[28] The question in *Seven County* is "[w]hether [NEPA] requires an agency to study environmental impacts beyond the proximate effects of the action over which the agency has regulatory authority." Regardless of how that question is answered, FERC *did* study downstream GHG emissions here and found them to be "reasonably foreseeable" and "causally connected" to the Project, FERC Br. 14, so there would be no warrant to ignore them under the NGA. And the Commission's foreseeability and causation findings make sense. The anticipated emissions will result from combusting the gas transported by the Project and satisfying the very demand that is said to constitute the need for it.

## III.  TRANSCO'S ARGUMENTS AGAINST VACATUR ARE FORFEITED IN PART AND UNFOUNDED.

Transco says the panel erred in vacating FERC's orders because "severe" consequences will ensue, including "shutting down an operational pipeline." Pet. at 14. That argument is legally and factually unfounded. Vacatur is the "normal remedy" for unlawful agency action,[29] while remand without vacatur is an "exceptional remedy"[30] to be used "only in limited circumstances involving unusually disruptive consequences,"[31] which are not present here.

Vacatur is particularly appropriate because FERC did not merely fail to explain an analysis but, rather, failed to perform one or omitted a key consideration. *Compare Ky. Mun. Energy Agency*, 45 F.4th at 180 (FERC's "failure to consider an important public-interest factor . . . was a major shortcoming that went to the heart of the agency's decision, and so favors vacatur.") (cleaned up) *with* Op. 63 ("FERC's failure to conduct any meaningful balancing falls short of what is required by the

---

[29] *E.g., Ky. Mun. Energy Agency*, 45 F.4th at 179; *Env't Def. Fund*, 2 F.4th at 976; *City of Port Isabel v. FERC*, 111 F.4th 1198, 1218 (D.C. Cir. 2024) (vacating after prior remand without vacatur in *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321 (D.C. Cir. 2021); *Advanced Energy United Inc. v. FERC*, 82 F.4th 1095, 1117 (D.C. Cir. 2023); *Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*, 72 F.4th 1324, 1342 (D.C. Cir. 2023); *Long Island Power Auth. v. FERC*, 27 F.4th 705, 717 (D.C. Cir. 2022); *Standing Rock Sioux Tribe v. Army Corps of Eng'rs*, 985 F.3d 1032, 1050 (D.C. Cir. 2021).

[30] *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F. 3d 510, 519 (D.C. Cir. 2020).

[31] *Am. Clean Power Ass'n v. FERC*, 54 F.4th 722, 733 (D.C. Cir. 2022) (Rao, J., concurring) (quotations omitted).

NGA and this Court's precedent."). In such cases, the first *Allied-Signal* factor asks whether the agency is likely to be able to justify the omission, not whether it may reach the same outcome after performing the missing step. *City of Port Isabel*, 111 F.4th at 1218; *Standing Rock Sioux Tribe*, 985 F.3d at 1052. And that makes sense. Otherwise, the court's action would be premised on its own forecast of how the agency might resolve a question it has not yet considered.

Turning to the second *Allied-Signal* factor, predictions of severe disruption are both forfeited in part and overblown. Transco now claims that, because it abandoned and replaced existing facilities, vacatur of the certificate would cause the loss of not only the Project's additional capacity (829,400 dekatherms/day) but, also, an even greater amount of pre-existing capacity (1,235,000 dektatherms/day). Pet. at 4-5. But Transco did not make that argument to the panel,[32] and therefore forfeited it. *Al-Hela v. Biden*, 66 F.4th 217, 228 (D.C. Cir. 2023); *Transwestern Pipeline Co. v. FERC*, 904 F.2d 64, 65 (D.C. Cir. 1990).[33]

---

[32] *See* Final Br. of Intervenor for Resp't at 30 (Nov. 28, 2023) (Transco Br.) (arguing that customers relied on the roughly 450,000 dekatherms/day of new capacity it had placed in service on an interim basis). Similarly, Transco complains that the panel gave "no consideration [to] the significant number of abandoned facilities which had altered Transco's system," Pet. 7, but Transco's brief never mentioned such abandonments or alterations. *See* Transco Br. 3, 30.

[33] Transco relies (Pet. 4-5) on contested information that FERC has not yet considered and was first presented in Transco's September 6, 2024 Application for a Temporary Emergency Certificate, *infra* note 36. But "an appellate opinion is

In any case, Transco's current doomsaying is unfounded. Vacatur undoes not only FERC's certification of new facilities but, also, its authorization to abandon pre-existing ones. So, vacatur requires Transco to restore the abandoned facilities and maintain pre-expansion service. And if Transco cannot restore the old facilities, then FERC may issue a temporary certificate to enable the pipeline to operate the replacement facilities (as needed to maintain pre-expansion service) while the agency considers matters on remand.[34] The Commission used this authority to maintain service while it acted on remand after *Environmental Defense Fund v. FERC*.[35] And it is now considering a temporary certificate application filed by Transco.[36] FERC will decide if issuance of a temporary certificate is needed to "assure maintenance of adequate service"[37] and limit any potential disruption.

---

based on the record before it, and hence cannot be set aside on the basis of newly discovered facts outside the record." *Goland v. Cent. Intel. Agency*, 607 F.2d 339, 370 (D.C. Cir. 1978).

[34] 15 U.S.C. § 717f(c)(1)(B) ("[T]he Commission may issue a temporary certificate in cases of emergency, to assure maintenance of adequate service or to serve particular customers . . . pending the determination of an application for a certificate.").

[35] *See Spire STL Pipeline LLC*, 176 FERC ¶ 61,160, (*sua sponte* 90-day certificate), *modified,* 177 FERC ¶ 61,114 (2021); *Spire STL Pipeline LLC*, 177 FERC ¶ 61,147, P 62 (2021) (certificate effective "until the Commission issues its order on remand"), *modified,* 178 FERC ¶ 61,109 (2022).

[36] Application of Transcontinental Gas Pipe Line Company, LLC, for a Temporary Emergency Certificate (Regional Energy Access Expansion), Docket No. CP21-94-004 (Sep. 6, 2024), FERC eLibrary No. 20240906-5218.

[37] 15 U.S.C. § 717f(c)(1)(B).

At most, vacatur here could interrupt the use of the incremental expansion capacity. But the panel vacated FERC's orders partly because the agency acted arbitrarily in finding that additional capacity is needed. FERC must revisit the need question on remand, and the Court should not assume the answer. First, this court is not a fact finder, but sits in review of agency determinations. Second, questions of need do not arise in a vacuum; under the NGA, they must be balanced against other public-interest considerations. Avoiding one potential disruption (interruption of incremental service using newly-built capacity) necessarily incurs another (the financial and environmental costs of operating potentially unneeded pipeline capacity). It is FERC that must balance these interests.

Finally, vacatur is appropriate because the public is best served by incentivizing FERC to reason carefully *before* it allows construction of an expensive and disruptive new pipeline. That is best accomplished by vacating, not merely remanding, insufficiently reasoned decisions.[38] And going forward, certificate applicants and the agency can minimize potential disruption by delaying construction pending judicial review.

---

[38] Transco's alternative, remand without vacatur, is a "toothless remedy" that "rarely provokes any action from the agencies," *See Am. Clean Power Ass'n v. FERC*, 54 F.4th at 733 (Rao, J., concurring) (quotations omitted), and incentivizes agencies "to allow building first and conducting comprehensive reviews later,'" *Env't Def. Fund*, 2 F.4th at 976 (quoting *Standing Rock Sioux Tribe*, 985 F.3d at 1052) (cleaned up).

## CONCLUSION

The Court should therefore deny Transco's petition for rehearing.

Respectfully submitted,

/s/ Jeffrey A. Schwarz
Scott H. Strauss
Jeffrey A. Schwarz
Anree G. Little
SPIEGEL & MCDIARMID LLP

1818 N Street, NW, 8th Floor
Washington, D.C. 20036
(202) 879-4000

*Attorneys for the New Jersey Division of Rate Counsel*

November 1, 2024

## CERTIFICATE OF COMPLIANCE

1.    I certify that this document complies with the type-volume limitations of Fed. R. App. P. 35(b)(2)(A), 40(b)(1), excluding the items exempted by Fed. R. App. P. 32(f). The brief contains 3856 words.

2.    I certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in Microsoft Word using a proportionally spaced typeface, Times New Roman 14-point font.

*/s/ Jeffrey A. Schwarz*
Jeffrey A. Schwarz

Law Offices of:
Spiegel & McDiarmid LLP
1818 N Street, NW
8th Floor
Washington, DC  20036
(202) 879-4000

November 1, 2024

# CERTIFICATE OF SERVICE

I hereby certify that I have on this 1st day of November, 2024, caused this document to be served electronically through the Court's CM/ECF system.

*/s/ Jeffrey A. Schwarz*
Jeffrey A. Schwarz

Law Offices of:
Spiegel & McDiarmid LLP
1818 N Street, NW
8th Floor
Washington, DC  20036
(202) 879-4000