**No. 23-1064**
**(Consolidated with 23-1074, 23-1077, 23-1129, 23-1130, 23-1137)**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

NEW JERSEY CONSERVATION FOUNDATION, et al.,
*Petitioners*,

NEW JERSEY DIVISION OF RATE COUNSEL
*Intervenor for Petitioners,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent,*

TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC,
*Intervenor for Respondent.*

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

**PETITIONERS' RESPONSE IN OPPOSITION TO PETITION
FOR REHEARING AND REHEARING EN BANC**

MONEEN NASMITH
MARISSA LIEBERMAN-KLEIN
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
(212) 845-7384
mnasmith@earthjustice.org
mlieberman-klein@earthjustice.org

ANN JAWORSKI
Earthjustice
311 S. Wacker Drive, Suite 1400
Chicago IL 60606
(773) 245-0837
ajaworski@earthjustice.org

*Counsel for Petitioners Sierra Club, Food & Water Watch, New Jersey
Conservation Foundation, New Jersey League of Conservation Voters,
and Aquashicola Pohopoco Watershed Conservancy*

*Additional counsel listed inside front cover*

ZACHARY M. NORRIS
Niskanen Center
1201 New York Avenue NW, Suite 200B
Washington, DC 20005
(443) 850-8328
znorris@niskanencenter.org

*Counsel for Petitioner Catherine Folio*

KACY C. MANAHAN
Delaware Riverkeeper Network
925 Canal Street, Suite 3701
Bristol, PA 19007
Office: 215-369-1188 x115
kacy@delawareriverkeeper.org

*Counsel for Petitioners Delaware Riverkeeper Network and Maya K. van
Rossum, the Delaware Riverkeeper*

# RULE 26.1 DISCLOSURE STATEMENTS

New Jersey Conservation Foundation is a 501(c)(3) not-for-profit organization founded in New Jersey for the purpose of preserving land and natural resources throughout New Jersey. New Jersey Conservation Foundation has no parent companies, and there are no publicly owned corporations that have a ten percent or greater ownership interest in New Jersey Conservation Foundation.

New Jersey League of Conservation Voters Education Fund is a 501(c)(3) not-for-profit organization founded in New Jersey for the purpose of environmental advocacy and conservation. It is part of a family of organizations, including New Jersey League of Conservation Voters, Inc., which is a 501(c)(4); New Jersey League of Conservation Voters Political Action Committee, which is a political action committee; and New Jersey League of Conservation Voters Victory Fund, which is a super political action committee. New Jersey League of Conservation Voters has no parent companies, and there are no publicly held corporations that have a ten percent or greater ownership interest in New Jersey League of Conservation Voters.

Aquashicola Pohopoco Watershed Conservancy is a 501(c)(3) not-for-profit organization founded in Pennsylvania for the purpose of environmental advocacy and conservation. Aquashicola Pohopoco Watershed Conservancy has no parent companies, and there are no publicly held corporations that have a ten percent or greater ownership interest in Aquashicola Pohopoco Watershed Conservancy.

The Delaware Riverkeeper Network is a nonprofit 501(c)(3) membership organization that advocates for the protection of the Delaware River, its tributaries, and the communities of its watershed. Delaware Riverkeeper Network does not have any parent corporation, nor does it issue stock.

Sierra Club, a corporation organized and existing under the laws of the State of California, is a national nonprofit organization dedicated to the protection and enjoyment of the environment. Sierra Club has no parent corporation, and there are no publicly held corporations that have a ten percent or greater ownership in Sierra Club.

Food & Water Watch is a 501(c)(3) not-for-profit organization founded in 2005 to ensure access to clean drinking water, safe and sustainable food, and a livable climate. Food & Water Watch has no

parent companies, and there are no publicly held corporations that have

a ten percent or greater ownership interest in Food & Water Watch.

## TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENTS .............................................iii

TABLE OF CONTENTS ..........................................................vi

TABLE OF AUTHORITIES ......................................................vii

GLOSSARY .....................................................................x

INTRODUCTION ................................................................1

REASONS TO DENY THE PETITION ...........................................2

  I.  The Panel Correctly Applied NGA Precedent in Concluding That FERC's Need Finding Was Arbitrary..........................................2

  II.  The Panel Correctly Applied NEPA Precedent in Concluding That FERC's Findings on GHGs and Mitigation Were Arbitrary. .........7

    A. The Panel Reasonably Found That FERC Inadequately Explained Its Failure to Determine GHG Significance.................8

    B. The Panel Reasonably Found FERC Failed to Discuss GHG Mitigation. ...................................................................10

  III. The Panel's Remedy Decision Does Not Warrant Rehearing. ......12

    A. The Panel Correctly Applied *Allied-Signal*.................................12

    B. Transco's Allegations of Disruption to Pre-Existing Capacity Are Being Addressed in an Ongoing FERC Proceeding. ....................18

CONCLUSION ................................................................20

CERTIFICATE OF COMPLIANCE ........................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,*
   988 F.2d 146 (D.C. Cir. 1993) ............................................................. 12

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,*
   781 F.3d 1271 (11th Cir. 2015) .......................................................... 17

*Cali. Comtys. Against Toxics v. EPA,*
   688 F.3d 989 (9th Cir. 2012) .............................................................. 18

*City of Holyoke Gas & Elec. Dep't v. FERC,*
   954 F.2d 740 (D.C. Cir. 1992) ........................................................... 19

*City of Oberlin v. FERC,*
   937 F.3d 599 (D.C. Cir. 2019) ........................................................... 15

*City of Port Isabel v. FERC,*
   111 F.4th 1198 (D.C. Cir. 2024) ...................................................... 14

*Easley v. Reuss,*
   532 F.3d 592 (7th Cir. 2008) .............................................................. 19

*Env't Def. Fund v. FERC,*
   2 F.4th 953 (D.C. Cir. 2021) .................................................... 5, 6, 14

*Healthy Gulf v. FERC,*
   107 F.4th 1033 (D.C. Cir. 2024) .......................................... 9, 11, 15, 16

*Prometheus Radio Project v. Fed. Commc'ns Comm'n,*
   824 F.3d 33 (3d Cir. 2016) ................................................................. 18

*Sierra Club v. FERC,*
   867 F.3d 1357 (D.C. Cir. 2017) ........................................................ 14

*Sugar Cane Growers Co-op v. Veneman,*
   289 F.3d 89 (D.C. Cir. 2002) ............................................................. 15

*Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
  989 F.3d 368 (5th Cir. 2021) ................................................................ 17

*Vecinos para el Bienestar de la Comunidad Costerea v.*
  *FERC*,
  6 F.4th 1321 (D.C. Cir. 2021) ...................................................... 15, 16

*W. Watersheds Project v. Haaland*,
  69 F.4th 689 (10th Cir. 2023) .............................................................. 17

*XO Energy Ma, LP v. FERC*,
  77 F.4th 710 (D.C. Cir. 2023) .............................................................. 15

**Administrative Proceedings**

*Northern Natural Gas Co.*,
  174 FERC ¶ 61,189 (2021) .................................................................. 10

**Statutes**

15 U.S.C. § 717f(c)(1)(B) ...................................................................... 19

**Rules**

Fed. R. App. P.
  35(a) ........................................................................................................ 1
  35(b)(1)(B) ............................................................................................ 17
  40(a)(2) ............................................................................................... 1, 4

**Other Authorities**

Application of Transcontinental Gas Pipe Line Company,
  LLC for a Temporary Emergency Certificate, Docket
  CP21-94-004,
  https://elibrary.ferc.gov/eLibrary/filelist?accession_num=2
  0240906-5218 ...................................................................................... 20

*Env't Def. Fund v. FERC*, D.C. Cir. No. 20-1016:
  Order, Sept. 7, 2021, Document #1912949 ........................................ 14
  Order, Sept. 7, 2021, Document #1912952 ........................................ 14

viii

Protest of New Jersey Conservation Foundation, *et al.*,
    Docket CP21-94-004,
    https://elibrary.ferc.gov/eLibrary/filelist?accession_numbe
    r=20241008-5076..................................................................... 20

*Sierra Club v. FERC*, D.C. Cir. No. 16-1329:
    Order, Jan. 31, 2018, Document #1715801........................................ 14
    Order, Jan. 31, 2018, Document #1715804........................................ 14

*Spire Missouri Inc. v. Env't Def. Fund*, 142 S. Ct. 1668
    (2022): Pet. for a Writ of Cert., Dec. 3, 2021...................................... 15

*Spire Missouri Inc. v. Env't Def. Fund*, U.S. No. 21A56:
    Appl. for a Stay Pending the Filing and Disposition of a
    Pet. for a Writ of Cert., Oct. 4, 2021................................................. 15
    Denial, Oct. 15, 2021....................................................................... 15

# GLOSSARY

| | |
|---|---|
| FERC | Federal Energy Regulatory Commission |
| GHG | Greenhouse Gas(es) |
| NEPA | National Environmental Policy Act |
| NGA | Natural Gas Act |
| Transco | Transcontinental Gas Pipe Line Company, LLC |

## INTRODUCTION

Transcontinental Gas Pipeline Company's ("Transco") rehearing petition does not meet the criteria for panel rehearing or rehearing en banc. Transco neither identifies any point of fact or law that the panel "overlooked or misapprehended," nor shows that the panel opinion implicates any circuit "uniformity" or "question of exceptional importance." Fed. R. App. P. 35(a), 40(a)(2). Transco merely disagrees with how the panel applied settled standards to the administrative record before it. This Court should deny the petition.

Transco is wrong that the panel misapplied the deferential arbitrary and capricious standard in its Natural Gas Act (NGA) and National Environmental Policy Act (NEPA) holdings. Consistent with prior NGA holdings, the panel found that precedent agreements are important evidence of need for a project, but that the Federal Energy Regulatory Commission (FERC) may not ignore contrary evidence when assessing that need. Consistent with this Court's prior NEPA holdings, the panel found that FERC must offer a reasoned explanation for its assessment of the project's greenhouse gas (GHG) emissions and potential mitigation measures but failed to do so here.

1

Transco is also incorrect that the panel misapplied the familiar test from *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993). The panel made a case-specific determination that the seriousness of FERC's errors and the lack of significant disruption supported vacatur. Moreover, FERC has an administrative process to address any potential disruption caused by vacatur, which Transco has invoked by seeking a temporary certificate.

## REASONS TO DENY THE PETITION

### I.  The Panel Correctly Applied NGA Precedent in Concluding That FERC's Need Finding Was Arbitrary.

The panel held that FERC violated the NGA twice over: its finding of market need was arbitrary and capricious, and it failed to conduct the balancing that the Act requires. Op. 20-21, 28. Transco's petition challenges only the panel's market need holding and thus offers no basis to disturb the panel's ultimate disposition of the NGA claim. *See* Pet. 5-6; *see also* FERC Resp. 3-14. Transco challenges the panel's decision on market need in three ways. All three fail.

Transco first claims that because FERC "spent forty-two paragraphs" addressing market need, the panel was required to "defer to FERC." Pet. 6. While the panel started from the premise that this

Court "generally affords great deference to Commission determinations about the market it regulates," Op. 21, it recognized that deferential review still requires that FERC offer a rational explanation for its decision, consider all relevant factors, and respond to evidence in the record. *Id.* at 11-12. Here, FERC fell short of that arbitrary and capricious standard by failing to respond to "some of the material challenges to its finding of market need." *Id.* at 20-21. Specifically, FERC did not explain: (1) why it completely discredited two studies in the record concluding no new gas capacity is needed; (2) how precedent agreements with utilities provide sufficient assurance of market need if the utilities can profit from excess unneeded capacity;[1] and (3) why it failed to give weight to New Jersey's mandatory state law requirements for utilities to reduce natural gas usage. *Id.* at 21. The panel was not required to overlook these shortcomings in the name of deference.

--------

[1] Transco's claim that the panel decided an argument, not raised below, about subsidization by "existing customers" mischaracterizes the opinion. Pet. 9 & n.8. The opinion addresses the argument made below that utilities can profit by imposing costs for project capacity on ratepayers and reselling unneeded capacity. Op. 25 & n.8 (citing Rate Counsel Reply Br. 18).

In reality, Transco's deference argument is just an argument that the panel should have viewed the facts differently, as evidenced by the multiple pages of Transco's petition presenting the same record facts that the panel already considered and rejected as insufficient to support FERC's finding of market need. Pet. 8-9; *compare* Op. 21-27. FERC similarly, spends 11 pages relitigating what the panel already resolved. FERC Resp. 3-14. Neither Transco nor FERC has—or can—show that the panel "overlooked or misapprehended" any of the facts that were before it. Fed. R. App. P. 40(a)(2). The panel clearly engaged with the facts in the record and used those facts to guide its decision. *See* Op. 21-27. Transco and FERC's disagreement with how the panel addressed those facts is not sufficient cause for rehearing. Pet. 9-10; FERC Resp. 3-14.

Second, Transco contends that the panel was wrong to rely on the Court's holding in *Environmental Defense Fund v. FERC*, 2 F.4th 953, 976 (D.C. Cir. 2021) ("*Spire*"), because the "situation" in this case "could not be more different" from that case. Pet. 6. But the panel cited *Spire* only for the unremarkable proposition that "FERC must consider" and address evidence "showing a lack of market need for a project" before it

can make a reasoned decision. *See* Op. 24 (citing *Spire*, 2 F.4th at 972). The specific arguments and evidence undermining market need may differ between the two cases, but the panel reasonably read *Spire* to require FERC to explain its finding of market need in the face of contrary evidence—whatever that evidence is. *See id*. FERC must "consider *all relevant factors* reflecting on the need for the project" when determining need, and when "presented with strong arguments as to why the precedent agreement[s]" alone were "insufficiently probative of market need," must engage with those arguments. *See Spire*, 2 F.4th at 961, 973 (emphasis original) (internal quotations omitted).[2] The panel

---

[2] Transco is also wrong to suggest that the panel's holding rested "primarily" on *Spire*. Pet. 6. The panel relied on a long line of cases challenging FERC decisions, *see, e.g.* Op. 21 (citing *Minisink Residents for Env't Pres. and Safety v. FERC*, 762 F.3d 97, 111 (D.C. Cir. 2014)), Op. 26 n.9 (citing *City of Oberlin v. FERC*, 937 F.3d 599, 605-06 (D.C. Cir. 2019) and *Myersville Citizens for a Rural Cmty. v. FERC*, 783 F.3d 1301, 1311 (D.C. Cir. 2015)), Op. 28 (citing *Vecinos para el Bienestar de la Comunidad Costerea v. FERC*, 6 F.4th 1321, 1331 (D.C. Cir. 2021)), Op. 29 (citing *Am. Gas Ass'n v. FERC*, 593 F.3d 14, 19 (D.C. Cir. 2010) and *TransCanada Power Mktg. Ltd. v. FERC*, 811 F.3d 1, 12 (D.C. Cir. 2015)). The panel also relied on statutes and FERC's own decisions. *See, e.g.*, Op. 4 (citing Certificate of New Interstate Natural Gas Pipeline Facilities, 88 FERC ¶ 61,227 (Sept. 15, 1999)), Op. 25 (citing 15 U.S.C. § 717(e) and 88 FERC ¶ 61,746). Transco does not engage with any of these other authorities.

concluded that FERC did not sufficiently address the arguments and evidence undermining the claim that the project is needed.

Third, Transco contends that the panel decision conflicts with cases holding that precedent agreements are "good evidence" of market need. Pet. 7. But the panel began by recognizing that "[p]recedent agreements are 'always . . . important evidence of demand for a project.'" Op. 24. What the panel rejected is Transco's argument—repeated here—that "precedent agreements" are always "sufficient evidence of market need." Pet. 7. *Good* evidence is not the same as *conclusive* evidence that ends the inquiry into need. *See* Op. 24-25; *Spire*, 2 F.4th at 972. Here, precedent agreements thus did "not allow FERC to disregard contradictory evidence showing a lack of market need." Op. 24.

Transco cites no case holding that the mere existence of precedent agreements is always dispositive of need. Indeed, even Transco describes its lead case as one where "FERC also relied on 'much more than just the contract' . . . in analyzing need." Pet. 7 (quoting *Food & Water Watch v. FERC*, 104 F.4th 336, 347 (D.C. Cir. 2024)). Transco thus implicitly acknowledges that, when considering precedent

agreements, FERC must grapple with the entire record before it, yet

Transco nowhere acknowledges FERC's failure to do so on this record.

FERC's errors included providing "no source for its…hypothesis" that

extreme weather events would jeopardize utilities' access to alternative

sources of gas, Op. 21-22, and "no practical explanation for why it

believed the unprecedented scenario [of shortages that had not occurred

in decades] appropriately guided its discretion," *id.* at 23. These errors,

alongside *Spire*'s holding, justify the panel's finding that FERC's

analysis was arbitrary and capricious and did not warrant deference.

Transco's arguments amount to a disagreement with the panel's

conclusions, which does not rise to the standard for rehearing.

## II.   The Panel Correctly Applied NEPA Precedent in Concluding That FERC's Findings on GHGs and Mitigation Were Arbitrary.

Transco contends that two of the panel's NEPA holdings were

erroneous, but both flowed from a straightforward application of the

familiar arbitrary and capricious standard of review. Pet. 11-13. The

panel concluded FERC inadequately explained why it (1) could not

evaluate the significance of the project's contributions to climate

change, and (2) relied on Transco's failure to propose mitigation measures as the sole basis for not considering any. Op. 12-17.

### A. The Panel Reasonably Found That FERC Inadequately Explained Its Failure to Determine GHG Significance.

Though Transco disagrees, Pet. 11-12, the panel's holding that FERC failed to explain its decision not to determine whether the project's GHG emissions are significant is consistent with *Food & Water Watch*. The panel followed the ordinary rules of party presentation and assessed the basis on which FERC defended its decision, which was different from those presented in *Food & Water Watch*. Op. 14-16. Here, FERC did not claim that its failure to label the GHG emissions significant or insignificant was because NEPA and Council on Environmental Quality regulations did not require it to do so. "Instead, FERC argue[d] that it was *unable* to do so," but "provide[d] no justification" for that argument. *Id.* at 15. This was not "the same argument" that FERC advanced "in *Food & Water Watch*." *Id.* at 16. The panel, therefore, concluded that FERC's decision and subsequent defense of its decision meant that the panel could not "resolve the issue of significance determinations now before [it] on the basis of that case." *Id.* Its conclusion mirrored a prior case in which FERC "did not dispute

8

the premise that it must make a significance determination" unless it offered a reasoned basis for not doing so. *Healthy Gulf v. FERC*, 107 F.4th 1033, 1040 n.2 (D.C. Cir. 2024). Longstanding administrative law principles require a court to assess the agency's explanation for its decision, not to offer its own. *See id.* (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

The panel correctly addressed the arguments that FERC offered here. FERC's argument that "it was *unable* to" make a determination was not a "sufficient explanation" in light of the fact that FERC was able to make this same determination in a prior case, *Northern Natural Gas Co.*, 174 FERC ¶ 61,189 (2021). Op. 15-16; *see also* FERC Resp. Br. 11 (stating that FERC "was unable to assess the significance"). Transco claims that the panel held that FERC had to make a significance determination here merely because it had "previously made a significance determination in a different proceeding based on a since-withdrawn policy statement." Pet. 12. Not so. In that prior proceeding, which occurred *before* FERC proposed and then withdrew a policy statement with a presumptive significance threshold, FERC concluded that it "no longer believe[d] that" it was unable to determine the

9

significance of project GHG emissions. *N. Nat. Gas Co.*, 174 FERC ¶ 61,189, P 29. The panel found that FERC failed "to acknowledge a change in position" when it concluded here that it was "unable" to make that same determination, Op. 13, or to explain "how the pendency of [a] generic proceeding affects its ability in the meantime to make a case-specific determination here," *id.* at 14.

As the panel explained, the difference in the outcomes between this case and *Food & Water Watch* turns on the different explanations that FERC has offered in different cases. FERC has not, as Transco suggests, "consistently disputed . . . that it is required to make a significance determination." Pet. 12. Instead, FERC has sometimes—as the panel found that FERC did here—accepted that it is required to do so but claimed to be unable to meet that requirement. Where FERC declares itself unable to assess significance, it must not "do so on the basis of an arbitrary and capricious explanation." Op. 16.

## B. The Panel Reasonably Found FERC Failed to Discuss GHG Mitigation.

Transco's argument that the panel erred by requiring FERC to analyze mitigation of GHG emissions without finding those emissions foreseeable and within FERC's authority to regulate, Pet. 13,

completely misses the mark. The sole basis FERC offered for refusing to consider GHG mitigation was that "Transco [did] not indicate[] any mitigation for GHG emissions." Op. 16 (citing JA580). The panel found that lone justification to be "inconsistent with NEPA's regulations." *Id*.

Because FERC never invoked the foreseeability of any of the project's GHG emissions or FERC's authority to regulate them as bases for refusing to consider mitigation measures, Transco's argument was never before the panel. *Healthy Gulf*, 107 F.4th at 1040 n.2 (stating that a court "assess[es] the Commission's explanation—and only that explanation—for" its decisions). Because the panel's opinion straightforwardly applied NEPA to find that FERC gave an arbitrary reason for failing to consider any mitigation, even of the project's direct GHG emissions, *see* JA479-83, it therefore does not implicate holdings on indirect effects in *Department of Transportation v. Public Citizen*, 541 U.S. 752, 769 (2004), or any other Court of Appeals decision. Nor does it implicate the question for which certiorari was granted in *Seven County Infrastructure Coalition v. Eagle County*, 144 S. Ct. 2680 (2024).

**III.    The Panel's Remedy Decision Does Not Warrant Rehearing.**

Transco's argument, Pet. 14-16, that the panel applied an incorrect vacatur standard or overlooked disruptive consequences also fails. The panel correctly applied the longstanding two-factor *Allied-Signal* test. The panel considered the arguments on disruption Transco raised, and FERC has the authority and tools to address disruption through its emergency certificate process.

### A.  The Panel Correctly Applied *Allied-Signal.*

Everyone agrees that the *Allied-Signal* test governs. The panel correctly applied the test, which requires evaluation of: "(1) 'the likelihood that "deficiencies" in an order can be redressed on remand' and (2) 'the "disruptive consequences" of vacatur.'" Op. 30-31 (quoting *Black Oak Energy v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013)); *see Allied-Signal*, 988 F.2d at 150-51.

On the first factor, the panel stated that it was not "sufficiently likely that FERC 'will be able to substantiate its decision on remand.'" Op. 31 (quoting *Allied-Signal*, 988 F.2d at 151). Specifically, "[i]t [wa]s far from clear that FERC's failure here is only one of explanation," because FERC's order contained "deficiencies" going "to the core" of its

12

NGA decision. *Id.* On the second factor, the panel acknowledged vacatur's potential disruptive consequences but did not find them "dispositive." *Id.* at 31-32. This was not the "rare instance[]" in which "the disruptive consequences alone" warrant remand without vacatur in the face of "a pervasively deficient agency action." *Id.* at 32 (citing *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008)). The panel therefore concluded that "the disruption vacatur would cause to the pipeline's operations is significantly outweighed by the core deficiencies in FERC's orders." *Id.* at 32-33.

Transco offers two unavailing arguments. First, Transco claims that this Court "typically remands without vacatur where the consequences of vacatur would be severe …, even when the agency's errors are serious." Pet. 14. That view of the law, however, has no support in this Court's precedent and flips on its head the rule that remand without vacatur is an exception to the "normal remedy" of vacatur. Op. 30 (quoting *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 117 (D.C. Cir. 2020)).

The panel noted that, contrary to Transco's claim, this Court has previously vacated certificates for operational pipelines, including

13

certificates with significantly fewer legal deficiencies than in this case. Op. 32; *see also, e.g.*, *Spire*, 2 F.4th at 976 (vacating where FERC inadequately investigated whether a single contract with an affiliated entity established need); *Sierra Club v. FERC*, 867 F.3d 1357, 1373-75, 1379 (D.C. Cir. 2017) (vacating where FERC inadequately analyzed GHG emissions). This Court also recently vacated certificates for a pipeline and export facility, finding that the potential "significant" disruption "does not outweigh the seriousness of the Commission's procedural defects." *City of Port Isabel v. FERC*, 111 F.4th 1198, 1218 (D.C. Cir. 2024).

Transco has no response to these cases, several of which gave rise to unsuccessful rehearing petitions arguing in part that vacatur would cause serious disruption because the pipelines were operational.[3]

---

[3] *Env't Def. Fund v. FERC,* D.C. Cir. No. 20-1016: Order, Sept. 7, 2021, Document #1912949; Order, Sept. 7, 2021, Document #1912952. *Sierra Club v. FERC*, D.C. Cir. No. 16-1329: Order, Jan. 31, 2018, Document #1715801; Order, Jan. 31, 2018, Document #1715804.

Further, in *Spire*, the Supreme Court denied a motion to stay[4] and petition for certiorari raising arguments only about vacatur.[5]

Transco claims that severe consequences preclude vacatur, but the cases it cites, Pet. 14, say no such thing. Rather, those cases turned on the first *Allied-Signal* factor because, unlike here, the Court found that the decisions likely could be substantiated on remand. *See Healthy Gulf*, 107 F.4th at 1047 (holding "it 'reasonably likely' that, on remand, the Commission can redress the defects in its … analyses and still authorize the [p]roject"); *XO Energy Ma, LP v. FERC*, 77 F.4th 710, 719 (D.C. Cir. 2023) (finding that FERC "can redress the deficiency of its reasoning by providing a more fulsome explanation"); *Vecinos*, 6 F.4th at 1332 (finding it "reasonably likely that on remand the Commission can redress its failure of explanation"); *City of Oberlin*, 937 F.3d at 611 (finding it "plausible" that deficiencies affecting one portion of FERC's need determination could be cured on remand); *Sugar Cane Growers*

---

[4] *See Spire Missouri Inc. v. Env't Def. Fund*, U.S. No. 21A56: Appl. for a Stay Pending the Filing and Disposition of a Pet. for a Writ of Cert., Oct. 4, 2021; Denial, Oct. 15, 2021.

[5] *See Spire Missouri Inc. v. Env't Def. Fund*, 142 S. Ct. 1668 (2022): Pet. for a Writ of Cert., Dec. 3, 2021.

*Co-op v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002) (finding it "at least possible" the agency could establish good cause on remand for omitting notice and comment).

Second, Transco cherry-picks language from the opinion to argue that by describing FERC's errors as "potentially consequential," the panel applied a "stricter standard" for vacatur than other decisions of this Court and other Courts of Appeals. Pet. at 15 (citing Op. 31). Not so. In the same paragraph, the panel went on to find exactly what *Allied-Signal* requires: that there are "deficiencies go[ing] to the core" of FERC's decision and it is not "sufficiently likely" that FERC could remedy its errors on remand. Op. 31. Transco's arguments regarding the panel's remedy, therefore, are rooted in a fundamental mischaracterization of the opinion.

The cases Transco cites also do not demonstrate any inconsistency between the panel's decision and prior precedent. They all are merely examples of how the *Allied-Signal* test has been applied to different facts to reach different results. *See, e.g.*, *Healthy Gulf*, 107 F.4th at 1048 (concluding that it was "reasonably likely" that FERC's errors could be fixed on remand); *Vecinos*, 6 F.4th at 1332 (same).

16

The panel's decision likewise does not conflict with the decisions
Transco cites from sister circuits, which use the *Allied-Signal* test, and
do not create a "question of exceptional importance" justifying rehearing
en banc. Fed. R. App. P. 35(b)(1)(B). While Transco seeks to make much
of the fact that some cases describe their findings under the *Allied-
Signal* test using different words, those different descriptions are the
result of applying the test to each case's specific facts, not the
announcement of a new threshold or test. That different courts reached
different outcomes when finding it *likely* rather than *unlikely* that the
agency could sustain its decision upon remand, in fact, shows consistent
use of the *Allied-Signal* factors across circuits. *See, e.g.*, *Black Warrior
Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290-92
(11th Cir. 2015) (remanding to district court to determine vacatur's
appropriateness because "it is not at all clear that the agency's error
incurably tainted the agency's decisionmaking process" and it "may well
turn out to be inconsequential"); *W. Watersheds Project v. Haaland*, 69
F.4th 689, 722-23 (10th Cir. 2023) (finding "the deficiencies in the
[decisions] are curable upon remand"); *Texas Ass'n of Mfrs. v. U.S.
Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389-90 (5th Cir. 2021)

(finding a "serious possibility that the [agency] will be able to remedy its failures"); *Prometheus Radio Project v. Fed. Commc'ns Comm'n*, 824 F.3d 33, 52-53 (3d Cir. 2016) (finding "no reason to suspect that the Commission cannot justify at least some restrictions on broadcast ownership"); *Cali. Comtys. Against Toxics v. EPA*, 688 F.3d 989, 992-94 (9th Cir. 2012) (declining to vacate where EPA had already developed new reasoning to support its decision).[6] The panel reaching a different result than other courts did in the cited cases is not evidence of a departure from precedent, but the unsurprising result of applying the same legal analysis to different facts.

### B. Transco's Allegations of Disruption to Pre-Existing Capacity Are Being Addressed in an Ongoing FERC Proceeding.

Transco, along with amici, claims that the panel ignored disruption to its existing customers from vacatur. Pet. 4-5, 15. The vacated certificate authorized Transco to expand capacity by both installing new equipment and replacing or upgrading existing

---

[6] One cited case, *Natural Resources Defense Council v. EPA*, 808 F.3d 556, 584 (2d Cir. 2015), does not discuss its reasoning for remanding without vacatur.

equipment on the pipeline system. While the replaced/upgraded equipment now serves both pre-existing and expansion capacity, Transco's claim does not warrant rehearing, for two reasons.

First, Transco did not previously raise this existing customer argument. FERC appears to recognize this, stating that "the disruptive consequences appear to be more severe than those recognized by the panel" and citing only documents filed *after* the panel's decision. FERC Resp. 20. A rehearing petition is not the appropriate forum to raise new arguments. *See City of Holyoke Gas & Elec. Dep't v. FERC*, 954 F.2d 740, 745 (D.C. Cir. 1992); *Easley v. Reuss*, 532 F.3d 592, 593-94 (7th Cir. 2008).

Second, these factual allegations of disruption are best addressed by FERC, which may grant a temporary certificate "to assure maintenance of adequate service or to serve particular customers." 15 U.S.C. § 717f(c)(1)(B). Transco has already requested a temporary certificate authorizing continued operation of the pipeline's full capacity

while FERC proceeds on remand.[7] Although FERC's Response fails to recognize this, *see* FERC Resp. 20-21, the temporary certificate proceeding provides opportunity for all interested entities—including those not before this Court—to be heard on the question of how to implement the Court's mandate without curtailing needed gas capacity at the public's expense. No party opposes FERC granting a partial certificate necessary to ensure maintenance of adequate preexisting service.[8]

## CONCLUSION

For the reasons explained above, the petition for rehearing or rehearing en banc should be denied.

DATED: November 1, 2024

---

[7] *See* Application of Transcontinental Gas Pipe Line Company, LLC for a Temporary Emergency Certificate, Docket CP21-94-004, https://elibrary.ferc.gov/eLibrary/filelist?accession_num=20240906-5218.

[8] *See* Protest of New Jersey Conservation Foundation, *et al.*, Docket CP21-94-004, https://elibrary.ferc.gov/eLibrary/filelist?accession_number=20241008-5076.

Respectfully submitted,

*/s/ Moneen Nasmith*
Moneen Nasmith
Marissa Lieberman-Klein
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
(212) 845-7384
mnasmith@earthjustice.org
mlieberman-
klein@earthjustice.org

*/s/ Ann Jaworski*
Ann Jaworski
Earthjustice
311 S. Wacker Drive, Suite 1400
Chicago IL 60606
(773) 245-0837
ajaworski@earthjustice.org

*Counsel for Petitioners Sierra
Club, Food & Water Watch, New
Jersey Conservation Foundation,
New Jersey League of
Conservation Voters, and
Aquashicola Pohopoco Watershed
Conservancy*

*/s/ Zachary M. Norris*
Zachary M. Norris
Niskanen Center
1201 New York Avenue NW
Suite 200B
Washington, DC 20005
(443) 850-8328
znorris@niskanencenter.org

*Counsel for Petitioner Catherine
Folio*

*/s/ Kacy C. Manahan*
Kacy C. Manahan
Delaware Riverkeeper Network
925 Canal Street, Suite 3701
Bristol, PA 19007
Phone: (215) 369-1188 x115
kacy@delawareriverkeeper.org

*Counsel for Petitioners the
Delaware Riverkeeper Network
and Maya K. van Rossum, the
Delaware Riverkeeper*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of the Court's September 17, 2024 Order and Fed. R. App. P. 35(e) and D.C. Circuit Rule 35(d) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,896 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word for Windows Office 365 in 14-point Century Schoolbook.

*/s/ Moneen Nasmith*
Moneen Nasmith
Senior Attorney
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
(212) 845-7384
mnasmith@earthjustice.org

*Counsel for Petitioners Sierra Club, Food & Water Watch, New Jersey Conservation Foundation, New Jersey League of Conservation Voters, and Aquashicola Pohopoco Watershed Conservancy*

22